UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

AIR CHINA LIMITED,

                    Plaintiff,

       - against -

NELSON LI (a/k/a SHENG LI), JOHN A. VARACCHI
(a/k/a JOHN A. DAVIS), GEORGE F. DONOHUE,
JAY KOPF (a/k/a JACOB M. KOPF)
CHRISTIAN M. DEUTSCH,
WBM-JMK DEVELOPMENT LLC (d/b/a WBM
INTERNATIONAL DEVELOPMENT),
JMK CONSTRUTION GROUP LTD.,
TCC INTERIORS, LTD.,
GMAC REAL ESTATE LLC,
GMAC REAL ESTATE IPG NEW YORK,

                    Defendants.

------------------------------------------------------------------x

**Docket No.**

07__CV.__11128 (LTS) (DFE)

ECF CASE

**COMPLAINT
(JURY TRIAL DEMANDED)**

      Plaintiff, AIR CHINA LIMITED ("plaintiff"), through its undersigned counsel,

THE CATAFAGO LAW FIRM, P.C., as and for its complaint against defendants NELSON LI,

(a/k/a SHENG LI), JOHN A. VARACCHI (a/k/a JOHN A. DAVIS), GEORGE F. DONOHUE,

JAY KOPF (a/k/a JACOB M. KOPF), CHRISTIAN M. DEUTSCH, WBM-JMK

DEVELOPMENT LLC (d/b/a WBM INTERNATIONAL DEVELOPMENT), JMK

CONSTRUTION GROUP LTD., TCC INTERIORS, LTD., GMAC REAL ESTATE LLC and

GMAC REAL ESTATE IPG NEW YORK, respectfully alleges as follows upon information and

belief:

**Preliminary Statement**

1.    This action arises from an ongoing fraudulent scheme carried out by defendants who

have been engaged in an ongoing conspiracy to, amongst other things, convert and

misappropriate over $4 million dollars belonging to plaintiff by fraudulently deceiving plaintiff

and the general public into believing defendants are part of the long esteemed William B. May Real Estate Company.

2.      As conspirators, defendants were aware of one another's actions and intentions in connection with a sophisticated plan to deprive plaintiff of its money contrary to established law. Defendants also attempted to and continue to assert certain sham legal positions as part of an effort to retain those converted funds, to intimidate plaintiff and to obtain additional funds from plaintiff.

3.      This case arises specifically out of defendants' violation of § 1962(c) of The Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, et seq., as well as their violations of established common law principles of fraud in the inducement to contract, conversion, breach of fiduciary duty, unjust enrichment, failure to account, negligence and violation of NY General Business Law § 349.

4.      The scheme continues to be carried out through the use of the U.S. mails and wires and involves a pattern of brazen criminal predicate acts committed in this district, as well as outside of the United States. As a result of defendants' unlawful actions, plaintiff has lost more than $4 million stolen by defendants.

## The Plaintiff

5.      Plaintiff formerly was a corporation duly organized and existing under the laws of The People's Republic of China with its principal place of business in Beijing, China.

6.      The majority of plaintiff's capital shares previously were owned by a foreign state, namely The People's Republic of China. Air China Limited is a provider of air passenger service, air cargo service and airline related services in China, with headquarters in Beijing. The company was incorporated on September 30, 2004 in The People's Republic of China as a joint stock company as part of the restructuring of China National Aviation Holding Company from a

2

government owned enterprise into an international company. As of December 15, 2004, Air China became an international public company whose stocks are traded on the Hong Kong and London stock exchange.

7.    Plaintiff is not a citizen of the United States as defined in 28 U.S.C., § 1332(c) and (d), nor has it been created under the laws of any third country.

### The Defendants

8.    At all relevant times, defendant Nelson Li (a/k/a Sheng Li) was and is a resident of the State of New Jersey. At various times he has claimed to be "managing director" or real estate "sales agent" of defunct, non-existent and/or inoperative companies including, "WBM International Development LLC", "Sunels International (N.A.) Inc." "WBMI", "WBMID" and "GMAC Real Estate IPG New York", although he is not a New York State licensed real estate broker or salesperson and has never been employed by any such company and has used only one office – 505 8th Avenue, New York, NY (the GMAC office in New York which lists him as amongst GMAC's "sales agents") to engage in his fraud upon the public in general and plaintiff in particular.

9.    At all relevant times, defendant John A. Varacchi was and is a resident of the State, City and County of New York. Although he is actually in the furniture business, he has represented himself to be an officer of "WBM International Development LLC," an entity falsely holding itself out to be a licensed, experienced general contractor with the backing of William B. May Real Estate Company.

10.    At all relevant times, defendant George F. Donohue was and is a resident of the State of New York. Although he has been enjoined by this Court from using the "William B. May" name for commercial purposes, defendant George F. Donohue continues to use that name in connection with a New York State real estate broker's license which he holds.

3

11.    At all relevant times, defendant Jay Kopf (a/ka Jacob M. Kopf) was and is a

resident of the State of New York. Defendant Jay Kopf, through the companies he owns

(defendant TCC Interiors, Ltd. and defendant JMK Construction Group, Ltd.), is the only

defendant with any general contractor experience. In connection with their multi-million dollar

criminal scheme against plaintiff, Jay Kopf, together with defendants Nelson Li, John A.

Varacchi, George F. Donohue, Christian M. Deutsch and WBM-JMK Development LLC (d.b.a

WBM), defrauded plaintiff into believing:

> (a)    that an entity named "WBM International Development LLC" had existed since the 1800's, was well established and experienced in the field of general construction and real estate development, and was an existing subsidiary of, and had the backing of, the venerable real estate company William B. May; and

> (b)    JMK Construction Group Ltd. would simply be a sub-contractor on a contemplated construction job for plaintiff. In fact, Jay Kopf, together with these other individual defendants, secretly created the entity "WBM-JMK Development LLC" in January 2005 (with only these individuals as owners and with no history, office, employees, bank account, experience, license, insurance or backing of any kind from William B. May, or from anyone else) and defendant never provided that name to plaintiff but instead criminally used an unauthorized alias for that entity ("WBM International Development LLC") so as to continue to deceive plaintiff into thinking that William B. May was behind the venture.

12.    At all relevant times, defendant Christian M. Deutsch was and is a resident of

the State of Pennsylvania, doing business in the State of New York. Although he too has been

enjoined by this Court from using the "William B. May" name for commercial purposes, this

self-described "Chairman" of GMAC Real Estate Group IPG New York (which also lists him

amongst its real estate "sales agents" although in fact he has no such New York State license)

continues to allow defendant George F. Donohue and others to report to the GMAC defendants'

New York offices (at 505 8th Avenue, the purported office of "WBM" from which plaintiff was

defrauded) and to use their New York real estate brokerage or sales license relating to William B. May.

13.    Defendant WBM-JMK Development LLC is a New York State limited liability company. This entity has never had any bonafide offices, employees, experience or general contractor license or backing of any kind. This entity, through the conduct of the individual defendants, has made criminal use of an alias (in violation of N.Y.G.B.L. §130) as part of defendants' scheme to defraud plaintiff.

14.    At all relevant times, defendant JMK Construction Group LTD. was and is a New York State corporation. This entity, controlled by Jay Kopf, was an undisclosed general contractor in dealing with plaintiff, and thereby siphoned off millions belong to plaintiff.

15.    At all relevant times, defendant TCC Interiors, Ltd. was and is a New York State corporation. This entity was falsely represented by defendants to be an arms length sub-contractor, but in reality it too belonged to and was controlled by Jay Kopf and siphoned off well over $610,000 belonging to plaintiff.

16.    At all relevant times, GMAC Real Estate LLC was and is a Delaware limited liability company doing business at 505 8th Avenue, New York, New York. GMAC lists Christian M. Deutsch and Nelson Li amongst its sales associates, but neither is licensed by New York State Department of Licensing to sell real estate or to otherwise represent themselves to be sales agents.

17.    At all relevant times, GMAC Real Estate IPF New York was and is an unincorporated association doing business at 505 8th Avenue, New York, New York with George F. Donohue as President, Christian M. Deutsch as Chairman and Nelson Li as Managing Director.

## JURISDICTION AND VENUE

18.    This Court has diversity jurisdiction over this action and of the subject matter of the

lawsuit pursuant to 28 U.S.C. § 1332(a) because this action is between citizens of different states and the matter in controversy exceeds $75,000, exclusive of interests and costs.

19.    Moreover, this Court has jurisdiction over the first and second claims for relief, which arise under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 and 1964 ("RICO") and 28 U.S.C. § 1331.  This Court has supplemental jurisdiction over the pendent state law claims of the complaint under 28 U.S.C. § 1367.

20.    This Court has personal jurisdiction over defendants under Article 3 of New York's CPLR, which provides for jurisdiction over defendants who are New York citizens or who engage in tortious acts in New York.  In this case, defendants are citizens of New York and/or regularly engage in business in this State.  Furthermore, as conspirators, defendants acted in concert to commit tortious and fraudulent acts in New York such that exercising personal jurisdiction over them would not offend traditional notions of fair play and substantial justice.

21.    Venue is proper in this district pursuant to 28 US.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in New York County.

## ALLEGATIONS COMMON TO ALL CLAIMS

22.    In early 2003, plaintiff became interested in developing its property at 485 West Broadway, Long Beach, New York ("the Property") so that it could house its airline workers during their stays in New York.

23.    For that purpose, in June of 2003, plaintiff solicited the services of the very well established real estate company, William B. May Company, which had been a fixture in the real estate community in New York since 1866.  In June 2003, plaintiff specifically requested that the company submit a proposal for the renovation of plaintiff's Property at 485 West Broadway, Long Beach, New York.  In response to plaintiff's request for such a proposal, defendant George

F. Donohue wrote to plaintiff on June 12, 2003 on the letterhead of William B. May Company and as purported "President" of William B. May Company, stating as follows:

> "We are honored to have this opportunity to provide our expertise and service to you. My associates and I are reviewing the information about the property, discussing it with different parties and performing our due diligence. We will send you the proposal when we complete it.
> We look forward to working with you."

By this letter, with which William B. May's glossy brochure was enclosed, defendants' scheme to defraud plaintiff began. Ultimately, as described below, defendants baited plaintiff with the false and material illusion that William B. May Company would be involved and ultimately created a shell company, totally unrelated to William B. May Company, as part of an elaborate criminal bait and switch scheme designed to defraud plaintiff.

24.     As part of their scheme to defraud plaintiff, defendants initially used the name of an inactive, dissolved corporation -- William B. May International Inc., which had not incorporated until September 7, 1999 and which had been dissolved by New York State Proclamation issued by the Secretary of State on June 25, 2003 for non-payment of franchise taxes. That company remained dissolved until defendants George F. Donohue and Christian M. Deutsch sought to annul the dissolution on April 7, 2004. Well before then, however, on June 26, 2003, while William B. May International Inc. still was dissolved, defendants Nelson Li, George F. Donohue and Christian M. Deutsch, as part of their scheme to defraud plaintiff, submitted to plaintiff a written proposal for hotel management of the plaintiff's Property, signed by George F. Donohue as President, falsely and fraudulently claiming that:

> (a) the company had been incorporated in 1866, and had more than 200 real estate professionals; and
>
> (b) Christian Deutsch was Chief Executive Officer, George F. Donohue was President and Nelson Li was Managing Director.

Those and other portions of this document were knowingly false when made and were used successfully to deceive plaintiff into doing business with defendants.

25.    Also on or about June 26, 2003, defendant Nelson Li acting on behalf of himself and individual defendants Jay Kopf, John A. Varacchi and George F. Donohue, in an effort to convince plaintiff to hire defendants to develop plaintiff's Property ("the Air China Project") at 485 West Broadway, Long Beach, New York presented plaintiff with a document entitled "Overall Overhaul Plan" ("the Overhaul Plan").

26.    The Overhaul Plan falsely and fraudulently indicated that:

> (a) It was being submitted by an entity named "WBMI" whose President was defendant George F. Donohue;

> (b) WBMI was established in 1866 and was a "full service real estate company with the longest history in the United States" and was providing its services and "137 years of real estate experience" and its "credibility and business reputation" were at the service of the Air China Project; and

> (c) A second entity known as "WBMID" (which in fact did not even exist) was a "diversified and "full service" "wholly owned subsidiary of WBMI" and WBMID undertake to "work continuously for the Project."

27.    Each and every one of these statements, as well as others in the Overhaul Plan, was knowingly and intentionally false when made and was reasonably and detrimentally relied upon by plaintiff in deciding to do business with defendants, Nelson Li, John A. Varacchi, George F. Donohue and Jay Kopf.

28.    Even as early as 2002, George F. Donohue had represented to the public through the media that he wanted to make William B. May a public company because "I think people would be interested in a 137 year old company with a very good trademark."

8

29.    In his scheme to defraud plaintiff and the public, George F. Donohue partnered with Jay Kopf, John A. Varacchi, Nelson Li, Christian M. Deutsch and GMAC, although none of these other four men were licensed brokers or salespeople.  Upon information and belief, Nelson Li had lost a license and John A. Varacchi, whose field was in the sale of furniture, was an investor with George F. Donohue in working to create an illusion that Donohue controlled William B. May.  The only individual member of the scheme with any actual construction experience was Jay Kopf.

30.    At the initial stages of the conspiracy, defendants relied primarily on Nelson Li and George F. Donohue to defraud plaintiff.  Many of the fraudulent documents described herein were translated from the English language to the Chinese language by Nelson Li, and were thereupon presented to plaintiff.  George F. Donohue has routinely touted himself to the public as "President" of William B. May (e.g., March 2006 function sponsored by Mitsloan Real Estate Club; March 2, 2005 article in Real Estate Weekly).  George F. Donohue also promotes himself as "one of the world's foremost expert in negotiation" who charges up to $15,000 for a 60 minute speech (plus first class air fare, hotel, mileage and other charges) and is "one of the nation's leading real estate and negotiation experts," and he solicits such work from the very same GMAC offices which supposedly housed WBM. (In fact, no William B. May company ever has had any lease or actual employee and is not even listed in the building directory at that address.)

31.    Jay Kopf formed the New York corporation known as JMK Construction Group Ltd. on March 21, 2000 and he has at all times since been its Chairman and Chief Executive Officer.

32.    Jay Kopf's offices are located in the same building (1123 Broadway) where

William B. May Services Corporation and William B. May Advantage Corporation (two New York State corporations) are based. At the early stages of the conspiracy, defendants George F. Donohue and Nelson Li enlisted Jay Kopf and John A. Varacchi in their plan to defraud plaintiff.

33.    In February 2004, Nelson Li, acting on behalf of himself and Jay Kopf, John A. Varacchi and George F. Donohue, presented plaintiff with a document entitled "Professional Assessment Report" ostensibly prepared by "WBMI established 1886".

34.    Defendants Nelson Li and George F. Donohue in February 2004 also misrepresented to plaintiff that Burton Roslyn was a "Senior Vice President of Construction" for William B. May Commercial Real Estate" and would be involved in the Project. In fact, he never held such a post and never was involved in the Project.

35.    By fax transmittal dated September 23, 2004, defendants continued to deceive plaintiff into believing that William B. May Company was involved in the Air China Project, including the Building Department Permit application filed with the City of Long Beach.

36.    Although defendants, on September 13, 2004, submitted the Building Department permit application (no. 0096944) with the City of Long Beach to commence the Project, by January 6, 2005 the application still had not been approved because no defendant was actually licensed to perform general contracting services by the City as required. Defendants knew or should have known of this requirement and, in any event, were notified of their failure on or about January 6, 2005, but still no license was obtained until July 23, 2005.

37.    The February 2004 Professional Assessment Report submitted by defendants (through Nelson Li) to plaintiff, falsely and fraudulently indicated that:

> (a) WBMI (which in reality was dissolved) was offering its "best services for optimum interest of Air China";

(b) WBMI was established in 1866 and was a full service real estate company with the largest history in the United States including over 200 real estate specialists;

(c) An entity known as "WMID" (which in fact did not exist) was a "wholly – owned subsidiary of WBMI" and WBMID would undertake to "work continuously for the project;" and

(d) WBMI's principals included Nelson Li as Executive Director, John A. Varacchi as Vice President, Jay Kopf as Senior Vice President and Burton Roslyn as Senior Vice President.

38.    The Professional Assessment Report submitted by defendants (through Nelson Li) to plaintiff ostensibly for "WBMI established 1866" further falsely and fraudulently represented:

(a) "[s]ince the summer of 2002, our professional staff and local building department and other officials have carried out meetings and talks";

(b) "[a]nother important benefit arises from the good relationship between our company and the Office of the New York Governor";

(c) **"Our commitment to Air China:"** [w]e also have a good cooperative relationship with the local electric power department";

(d) "[w]e guarantee best services for the optimum interests of Air China";

(e) "[w]e have already organized contingents of our best professional people to put their expertise at the service of this Project. We shall intervene in the Project to ensure its success";

(f) that defendant George F. Donohue had previously been in charge of NY – NY Port Authority's 20 million square feet (in fact he had been forced to resign under allegations of criminal misconduct) and that he had a Ph.D. in "international business" (Pace University has no record of any such alleged degree); and

       (g) that Burton Roslyn a registered designer, was Senior Vice President on the Project (in fact he only attended a single meeting at the early stages with plaintiff).

39.     Each and every one of these statements, as well as others in the Professional Assessment Plan, was knowingly and intentionally false when made and was reasonably and detrimentally relied upon by plaintiff in deciding to do business with defendants Nelson Li, John A. Varacchi, George F. Donohue, Jay Kopf and the later-formed defendant WBM.

40.     As part of their scheme to defraud plaintiff, the defendants Nelson Li, George F. Donohue, Jay Kopf and John A. Varacchi misrepresented to plaintiff, orally and in writing, that Burton Roslyn would be part of the WBM team, and that he was a principal of William B. May. In fact, he was never anything other than a consultant and a friend of John A. Varacchi, and he never actually worked on the Air China Project.

41.     On March 4, 2005, in violation of New York General Business Law § 130 (a crime), and as part of their scheme to defraud defendants, submitted a bid for the Air China Project.

42.     The bid (submitted in English and in Chinese language versions) was on letterhead of non-entity "WBM International Development LLC" that used GMAC's address and phone number (WBM never had a separate phone or its own address) and William B. May's email address and fax numbers. It was signed by George F. Donohue as "President" and falsely advised:

    i.    Our company....started efforts on this project in July 2002. The executives and professionals of our company have been to the site many times....

    ii.    Our company, which was established in 1866, is the oldest real estate company in the United States. We have been involved in many real estate projects...

    iii.    ....In the past years, we have worked with many Chinese companies.

> We will provide all of our expertise of 139 years of real estate services in the United States to serve Air China in its Long Beach project.

In fact, the record establishes that at that time:

> 1. there was no "WBM International Development LLC" in existence; and

> 2. On January 13, 2005, less than two months before the bid, defendants had only just secretly formed a New York limited liability company "WBM-JMK Development LLC", a name never disclosed to plaintiff (and proceeded to use an unauthorized alias, "WBM International Development LLC").

43.    The defendants' bid breakdown for the Air China Project was faxed on March 31, 2005 by George F. Donohue using the fictitious name "WBM International Development LLC" (when in reality no such company existed) and using the William B. May fax number and name.

44.    By letters dated March 15 and 24, 2005, defendants falsely, by George F. Donohue (using the William B. May email address and the phony "WBM International Development LLC" name at GMAC's address), represented that the Project would be "turn-key" with an all-inclusive price of less than $3,900,000.

45.    By letter dated March 15, 2005, Nelson Li wrote to plaintiff regarding leasing the roof of the building involved in the project, and he did so as purported "managing director" William B. May Commercial Real Estate.

46.    On December 29, 2005, using the GMAC address, and on "William B. May Commercial Real Estate" letterhead, including the William B. May website address, George F. Donohue wrote to plaintiff falsely and fraudulently stating:

> "William B. May Commercial Inc. is now GMAC Real Estate IPG

*    *    *    *

> Our name will change, <u>but our commitment to serve our customers is as strong as ever</u>."(emphasis in original).

Defendants never retracted or amended this false and fraudulent statement, even after George F. Donohue, GMAC and Christian M. Deutsch each had been sued by the William B. May family in this Court and consequently each had become subject to a Federal Court injunction barring them from any commercial use of the "William B. May" name.

47.    Defendants' announcement of a purported GMAC/William B. May partnership was also published (but never retraced) in the March 15, 2006 edition of the Real Estate Weekly. This was simply part of the fraud defendants were committing on the general public; there was never any such partnership.

48.    As part of their scheme to defraud, the defendants created a purported contract dated May 31, 2005 ("the May 2005 Agreement") listing the fictitious name and entity "WBM International Development LLC" as contractor (so as to deceive plaintiff into believing that a William B. May company stood behind the Project), with George F. Donohue signing, under oath, as "President" of that purported company operating out of 505 Eighth Avenue, New York, New York (which in reality was the address for defendants GMAC and Christian M. Deutsch).

49.    Prior to presenting plaintiff with the fraudulent May 2005 Agreement, defendants met with plaintiff at William B. May's office (575 Madison Avenue, N.Y., N.Y.) on March 28, 2005, in order to continue to fraudulently foster the false impression that that venerable company was behind the Project; and they followed up with a fax from William B. May to plaintiff (signed by George F. Donohue, "President" of WBM, but with GMAC's address) referring to the meeting "at our offices."

50.    Prior to defendants providing plaintiff with the May 2005 Agreement, defendants Nelson Li also gave plaintiff a business card identifying himself as "Managing Director" of "William B. May International – Real Estate since 1866" and "WBM – Real Estate since 1866" with the "corporate headquarters" of 575 Madison Avenue, New York, NY, once again reinforcing the fraudulent impression that that venerable company was behind the Project.

51.    In reasonable reliance upon the fraudulent promises set forth in all the earlier representations, documents and negotiations, as well as those contained in the May 2005 Agreement itself, plaintiff executed the May 2005 Agreement and made the first two (2) payments, set forth therein, by checks dated June 7, 2005 and June 14, 2005, in the amount of $562,875 and $375,250, each payable to the fictitious "WBM International Development LLC."

52.    Even eleven days before the May 2005 Agreement was signed, George F. Donohue fraudulently represented to plaintiff in both English and Chinese (translated by defendant Nelson Li), that "[o]ur reputation has been built on 139 years of keeping our clients happy and satisfied…" He did so on non-entity WBM's letterhead, using the fax number and email address of William B. May and the office address of defendant GMAC.

53.    The May 2005 Agreement was procured by fraud and was signed by defendant George F. Donohue as purported "President" of a non-entity, "WBM Development International LLC."

54.    According to the May 2005 Agreement, George F. Donohue swore that he was then President of "WBM International Development LLC", which in fact was a perjurious statement.

55.    According to the May 2005 Agreement, WBM was to pay for all permits and to perform all work as general contractor. It was never licensed or qualified to do so and never did so.

56.    According to the May 2005 Agreement, the entire Project was required to be completed

in 8 months and WBM as "contractor" was required to compensate plaintiff up to 3% of the stipulated cost of the work ($3,950,000) for delays in connection with the Project (which to date still has not been completed) but never did so.

57.    After defrauding plaintiff into signing the May 2005 Agreement and collecting almost $1 million, defendants Nelson Li, Jay Kopf, George F. Donohue, John A. Varacchi and WBM-JMK now faced a quandary; they had deceived plaintiff into entering into the May 2005 Agreement based upon the fraudulent representations that the contractor was "WBM International Development LLC", a supposedly well established subsidiary of an 1866 company, William B. May Company.  The formation of WBM-JMK in fact did not occur until 2005. The entity known as "WBM-JMK Development LLC" was created by articles of organization filed January 13, 2005 by the law firm of Ballon, Stoll, Bader & Nadler, P.C., which listed no other name for the entity and which placed its sole location for business at the home address of attorney Stephen P. Long in Westchester, New York. (The statutorily required publication did not occur until April 27, 2005.)  Upon information and belief, defendants never intended to do and never did do business at that location or in that county.  It was only as part of their conspiracy to defraud plaintiff, that defendants Jay Kopf, Nelson Li, John A. Varacchi and George F. Donohue caused to be formed a New York limited liability company named "WBM-JMK Development LLC" ("WBM-JMK"). WBM-JMK never had an office, employees, insurance, ties to William B. May or contracting license or experience.

58.    The never-amended articles of organization filed under New York Limited Liability Company Law § 203 for WBM-JMK expressly provided that:

    (a)  the name of the entity was "WBM-JMK Development LLC"; and

    (b)  the office of entity was in Westchester, New York.

59.    In fact, in all their dealings with plaintiff, defendants Nelson Li, George F. Donouhue,

Jay Kopf, John A. Varacchi and WBM-JMK (a) never used or had such an office address and (b) fraudulently and unlawfully never used the name "WBM-JMK Development LLC".

60.    The false statements contained in articles and certificates of WBM-JMK Development LLC give rise to Nelson Li's personal liability to plaintiff for those statements, including for damages incurred in connection with the fraudulent use of the alias "WBM International Development" done criminally in concert with the other individual defendants herein, and in violation of N.Y. G.B.L. § 130.

61.    It must be stressed that defendants never had the legal right to use the "WBM Development LLC" name. That name belonged to a New York limited liability company formed on September 23, 1996 by New York attorney Jules E. Levy, Esq., which is and was totally unrelated to the parties herein and to the Air China Project.

62.    As part of their scheme to defraud, using the same attorney (Stephen B. Long) who had formed WBM-JMK Development LLC in January 2005, defendants filed with the New York Secretary of State a Certificate of Assumed Name for WBM-JMK Development LLC on June 15, 2005 ("the Certificate of Assumed Name").

63.    Any use of an assumed name by a limited liability company must comply with the mandates of N.Y. Limited Liability Company Law, § 204(a) and N.Y. General Business Law §130. It is a crime to fail to comply with these requirements. Here, in direct contravention of these statutory requirements:  (a) no filing occurred until June 15, 2005, after the oral and written representations (including the May 2005 "Agreement") and after the collection of $1 million; (b) there was no posting anywhere of any assumed name certificate; and (c) there was no filing for Nassau County, where the Project was based.

64.    The May 2005 Agreement was the vehicle used to convert plaintiff's monies. According

to that document, plaintiff's funds were to be placed in a bank account only in the name of the named general contractor. They were not, <u>and</u> could not, be so placed because that contractor simply did not exist.

65.    As a result of their fraud, defendants thus had obtained almost $1 million in checks they could not cash; there was no legal entity in existence known as "WBM International Development LLC".

66.    Thus, they concocted a plan to file an assumed name certificate for WBM-JMK Development LLC (a name never disclosed to plaintiff) so that plaintiff's payments to "WBM International Development LLC" could be deposited into their bank account.

67.    On the very same day that their alias certificate was filed (permitting defendants to use the "WBM International Development" name, **provided** that the other requirements of N.Y.G.B.L. § 130 were satisfied, and in fact they never have been), defendant George F. Donohue as "President" of the non-entity "WBM International Development LLC" fraudulently wrote to plaintiff claiming that:

> (a)  the construction was "moving forward"; and
>
> (b)  another $7,000 had to be paid (in addition to almost $1 million already paid).

This was followed up by a proposed "contract amendment" in the name of "WBM International Development LLC".

68.    The Certificate of Assumed Name was signed on <u>June 8, 2005</u> (after the May 31, 2005 Agreement had been signed) by Nelson Li as "Manager" of WBM/JMK International LLC (d/b/a/ WBM).

69.    The Certificate of Assumed Name falsely and fraudulently represented that the alias

"WBM International Development" would be used only subsequent to the filing (6/15/05) and in New York County only, although the Air China Project was to take place in Nassau County.

70.    The Certificate of Assumed Name represented that WBM/JMK Development LLC (d/b a WBM) had its principal place of business at an address which was in fact the residential address of attorney Stephen A. Long.

71.    The Certificate of Assumed Name failed to state that defendants had used and would continue using the alias "WBM International Development LLC"; indeed, use of such suffix was expressly prohibited by the Secretary of State.

72.    By so doing, defendants thereby continued to deceive plaintiff into believing that a valid subsidiary of William B. May was behind the Air China Project.

73.    By letter dated September 29, 2005, defendants responded to plaintiff's request for an accounting by providing an incomplete "WBM International Development LLC" document (using GMAC's address and phone and William B. May's email address) signed by "Managing Director" Nelson Li, which included purported payments to fictitious or inactive companies, a notable absence of invoices, invoice dates or other critical details, and clear indications of double payments and (subsequently discovered) payments to entities controlled by principals of WBM.

74.    By July 22, 2005 defendants had already collected almost a million dollars and none were authorized to do the work they had been paid for, as they did not have Workers' Compensation Insurance as required by Long Beach ordinance.

75.    Jay Kopf, through JMK Construction Group Ltd., was WBMID's coventurer on the Project.  The May 2005 Agreement made no mention of any co-venturers.  This concealment was fraudulent.

76.    It was only on April 30, 2005 that Jay Kopf, using "JMK Construction Group" as the

general contractor, finally obtained any license to perform work on the Air China Project. No other defendant ever obtained or even applied for such license.

77.    Throughout the course of the parties' dealings, the work performed by defendants was substandard, shoddy, incomplete, unsatisfactory and not in compliance with the terms of the May 2005 Agreement.

78.    As part of their scheme to defraud, defendants filed on November 8, 2005 a Certificate of Capital Improvement with the New York State Department of Taxation and Finance listing the contractor for the Air China Project as "WBM International Development LLC/JMK Construction") (no such entity even existed), using the GMAC address and including Jay Kopf's signature as "Vice President" who certified that he had entered into a contract for the Air China Project.

79.    Using the fictitious name "WBM International Development LLC" defendants issued to plaintiff an October 21, 2005 "Status Report" acknowledging "the continued delay," and the absence of any permit for the sprinklers and demanding yet more funds for permit fees and change orders, all inconsistent with the May 2005 Agreement.

80.    By letters dated September 16, 2005 and September 26, 2005 on the letterhead of non-entity "WBM International Development LLC", using GMAC's address and phone, and the fax and email address of William B. May, defendants through George F. Donohue (as "President") wrote to plaintiff and complained that $928,448 had been requisitioned on August 9, 2005, but not been paid until August 30th and September 12, 2005, demanded another $470,124.00 and further stated that the Project would be delayed for non-payment of governmental fees (an obligation that WBM expressly was responsible for under Article 4 of the May 2005 Agreement).  George F. Donohue asked that Air China countersign the September 16, 2005 letter

to indicate its agreement, but this request was refused, and indeed plaintiff orally and by letter dated September 26, 2005, complained about the costly delays.

81.     By email dated August 16, 2005, Nelson Li again fraudulently represented that WBM Development was the General Contractor and demanded yet more money for work on the Air China Project.

82.     By correspondence, dated July 13, 2005 and July 20, 2005, again on the letterhead of non-entity WBM International Development LLC, defendants (using George F. Donohue as "President", with a William B. May email address and fax transmittal, and GMAC's address and phone) again fraudulently misled plaintiff into believing that William B. May was behind the Air China Project and that the construction was "moving on smoothly…moving ahead smoothly, we are on our schedule…."

83.     Further, although the May 2005 Agreement expressly required the named contractor(non-entity "WBM International Development LLC") to provide liability insurance, defendants, even after due demand (including correspondence dated July 1, 2005), failed to do so.

84.     The defendants' "accounting" records relating to the Project revealed payments to a defunct corporation (New Ha Ha Construction Inc.) and payments in excess of $1 million to companies (i.e., TCC Interiors, Ltd. and JMK Construction Group, Ltd.) owned and controlled by Jay Kopf.

85.     Defendants' "accounting" records in connection with the Project:

        (a)   included incomplete checks;

        (b)   included no invoices;

        (c)   showed duplicate payments to defendants TCC Interiors, Ltd.;

        (d)   show what later proved to be defendants' conversion; and

      (e) were faxed to plaintiff from "William B. May" on
      September 29, 2005, again creating the false and
      fraudulent impression that that company was behind
      the Project.

86.    Defendants further faxed fraudulent bills using the William B. May name and fax on May 22, 2006, August 5, 2005, September 16, 2005, September 21, 2005 and January 4, 2006.

87.    By letter dated May 19, 2005, designed again to fraudulently induce plaintiff to do business with defendants, George F. Donohue, on the letterhead of the fictitious "WBM International Development LLC" (still using GMAC's address, phone and fax numbers) made comments to the proposed agreement, at all times referring to the fictitious entity as "the contractor" and falsely claiming that "[o]ur profit for this project is very low."

88.    Plaintiff's representatives met with George F. Donohue and Nelson Li in New York City on May 23, 2005 to discuss the proposed May 2005 Agreement and the above misrepresentations were again reiterated at that time.

89.    Following a March 28, 2005 at William B. May's offices at 575 Madison Avenue in New York City, by letter dated March 29, 2005 on the letterhead of the fictitious "WBM International Development, LLC" George F. Donohue (as purported "President") and using the email address of William B. May falsely represented to plaintiff as follows:

      "Our price will be an all inclusive price. We will deliver a
      turn-key project to you;" and

      "We gave you a very low bid price on March 4, 2005…Now,
      I further lower our price by taking some money from our
      fee…However, I promise that we will work with you and
      your architects to find the ways to save you money and
      refund the saved money (sic) to you during the construction.
      Now our new price is $3,960,000."

Included with this letter was a bid breakdown in the name of the fictitious "WBM International LLC, using GMAC's office address (505 8th Avenue, 8th Floor, New York, New York 10018).

90.    Only on September 27, 2005 did defendants finally disclose to plaintiff the existence of WBM-JMK International LLC (d/b/a WBM). In response, by letter dated November 3, 2005 addressed to George F. Donohue at the office of William B. May, 575 Madison Avenue, New York, NY, plaintiff asserted that the May 2005 Agreement was with WBMID and that "WBM-JMK International LLC" was not a party to the contract. Defendants never advised that they had secretly filed an Assumed Named Certificate for the company and that they were one and the same. Instead, they continued to fraudulently conceal that fact from plaintiff.

91.    On May 31, 2005, Jay Kopf signed an application for a building permit for the Air China Project to be submitted to the City of Long Beach, Department of Buildings. On the application, he listed the contractor as JMK Construction (not WBM International Development LLC, nor WBM-JMK Development LLC (d/b/a WBM) and included JMK Construction Ltd.'s address and phone number. The application (never amended) stated that the **total cost** for the Air China Project would be **$2,440,000**. (This was on the very same date that WBM International Development LLC as the purported "contractor", with George F. Donohue as "President", signed the May 2005 Agreement with plaintiff setting an all-inclusive Project cost of over $3,950,000.).

92.    Defendants never provided plaintiff with a Certificate of Insurance as they had promised to do in the May 2005 Agreement (§§ 7.2 and 11.2.1).

93.    It was not until May 31, 2005 that the application for a building permit was correctly filled out by defendants.

94.    By fax transmittal entitled "William B. May Commercial" sent on August 11, 2005,

George F. Donohue using the "WBM International Development LLC" letterhead (with GMAC's address and phone and William B. May's email address) requested that plaintiff pay $928,448.00, a demand plaintiff complied with, again having been defrauded into believing that William B. May was behind the Project.

95.    Even the defendants' September 29, 2005 "accounting" records transmitted by Nelson Li was sent to plaintiff from the William B. May fax number.

96.    When plaintiff complained to George F. Donohue and WBM that Jay Kopf and JMK Construction Ltd., as purported sub-contractor, should not be holding up the Project for more money, defendants failed to respond and continued to fraudulently conceal from plaintiff that that <u>individual</u> and entity in fact was (a) the actual general contractor and (b) had an ownership interest in the nominal "contractor" WBM.

97.    Even after plaintiff had paid for more than defendants had materially warranted would be the entire Project's cost, JMK Construction Group Ltd. and Jay Kopf (all while continuing to fraudulently conceal the facts they were in fact the true general contractor <u>and</u> part owner in WBM-JMK) continued to demand more and more money ("we are not your bank" "so it is up to you" "if there is no money, there is no materials, if no materials there is no man power".).

98.    Defendants negligently allowed the Building Department permit for the Air China Project to lapse, unlawfully continuing to work without any permit in place. It was only after violations were issued that defendants sought to renew the permit and demanded another $4,000 from plaintiff to do so (in contravention of the express terms of the May 2005 Agreement).

99.    Jay Kopf and JMK Construction Group Ltd. made repeated demands for payment (i.e. emails dated 11/13/06 "we are looking for funding") totally inconsistent with the turn-key cost for the Project that had been guaranteed by defendants.

100.    The defendants also violated numerous provisions of the City of Long Beach Code of

Ordinances, including (a) <u>LICENSING</u>, Chapter 14, Article II §§ 14-31, 14-15, 14-24, 14-35, 14:38 (requiring a contractor to be licensed, rendering the absence of licensed work criminal and making a license nontransferable); (b) <u>BUILDING CODE</u>, Chapter 7, Article I §§ 7.6 and 7-38 (requiring all work be performed only by a licensed contractor and Chapter 7, Article II, Div 3 § 7.34 (requiring that a valid permit be in place).

101.    Defendants at all times fraudulently made it appear to plaintiff that JMK Construction Group Ltd and TCC Interiors, Ltd. were arms length sub-contractors, when in fact they were owned and controlled by Jay Kopf, "the contractor" and principal in WBM ( and in fact the only individual even licensed by the City of Long Beach for this Project).

102.    As a proximate result of reasonably relying upon the defendants' knowingly false representations, plaintiff paid yet more money to defendant WBM, which then shared those ill-gotten proceeds with Nelson Li, John A. Varacchi, George F. Donohue, Jay Kopf and JMK Construction Group Ltd., and TCC Interiors, Ltd.

103.    According to the defendants' own "accounting" records, their alleged subcontractor ("New Generation – Michael") entered into an agreement with "JMK Construction Group and WBM International Development" as general contractor.   Other alleged subcontractors (i.e. "New Ha Ha Construction Inc. – which is a non-entity) signed lien waivers describing their agreement with "tenant WBM International Development", and inexplicably indemnifying "JMK and Owner."

104.    One supposed "subcontractor" (TCC Interiors, Ltd.)  has Jay Kopf as its Chairman or Chief executive Officer and his address as its official address in New York.

105.    Throughout the parties' dealings, Jay Kopf falsely and fraudulently  referred to "WBMI" as the contractor, even stating in writing that "the boys at WBMI must make a decision how far they are willing to go without additional funding…" when he knew that JMK Construction

Group, Ltd. was in fact the true contractor and he was an undisclosed principal of the nominal contractor.

106.    Prior to issuance of the building permit, defendants dealt with the City of Long Beach using the William B. May name, but the City's mail to that entity relating to the permit application (no. 0096944 submitted 9/14/04) was simply returned as undeliverable.

107.    Examples of defendants' fraudulent, criminal use of the "WBM International Development LLC" or "WBMID" name and communications with plaintiff without complying with N.Y.G.B.L. § 130 include:

> (a) January 4, 2006 letter from JMK Construction Ltd. and Jay Kopf;
>
> (b) January 10, 2006 letter from Nelson Li, with copies to George F. Donohue and Jay Kopf;
>
> (c) June 26, 2003 Overhaul Plan and discussions relating to same;
>
> (d) February 2004 Professional Assessment Plan and discussions relating to same;
>
> (e) Discussions and meetings on January 12, 13, 16, 2006 and June 6, 2006 and resultant documents involving plaintiff's officials and defendants WBM-JMK, John A. Varacchi, Jay Kopf, George F. Donohue and Nelson Li and
>
> (f) Applications for payment submitted to plaintiff listing "WBM International Development LLC" or "WBMI International" as the contractor.

108.    Even as late as October 4, 2006, Nelson Li represented in writing that George F. Donohue was "President" of WBMI International Development LLC". In fact, no such entity even existed.

109.    Meetings were held at plaintiff's site in Long Beach, New York on January 12 and 13,

2006 and defendants (still using the false "WBM International Development LLC" name) demanded still more money and new economic terms and continued to falsely indicate that WBM was the general contractor on the Air China Project.

110.    On June 6, 2006, at another meeting in plaintiff's New York offices, Nelson Li, John A. Varacchi, Jay Kopf and George F. Donohue appeared (from non-entity "WBM International LLC") and claimed problems with obtaining a Certificate of Occupancy and fraudulently induced plaintiff to sign a June 26, 2006 modification, pursuant to which another almost $300,000 was paid.

111.    Although by October 19, 2006 plaintiff had paid WBM 95% of all amounts set forth in the May 2005 Agreement, only 70% of the work had been completed, and JMK Construction and Jay Kopf were now stating it would not be completed until March 2007.

112.    The failure to timely complete the work was in violation of defendants' written assurances in May 2005 and later on October 4, 2006 that the Air China Project would be completed by November 30, 2006.

113.    The GMAC defendants faxed fraudulent bills for defendants (on "WBM International Development LLC" letterhead) on various dates, including March 2, 2006, March 7, 2006, March 9, 2006, March 13, 2006, March 23, 2006, June 28, 2006, July 31, 2006, August 1, 2006 and October 3, 2006.

114.    On September 7, 2006, defendants Nelson Li, acting on behalf of WMB/JMK International LLC (d/b/a/ WBM), appeared at the New York offices of plaintiff and was questioned regarding WBM. Again, he lied about WBM and its background. (Plaintiff still had never been told of WMB/JMK International LLC or Jay Kopf's involvement in that company or the surreptitious filing of the Certificate of Assumed Name post-May 2005 Agreement.)

115.    On January 4, 2006, defendants Jay Kopf and JMK Construction Group, Ltd. wrote to

plaintiff stating that "We are working closely with the Nassau County Fire Marshall's Office" and "We look forward to securing a new Certificate of Occupancy" and "[t]he Air China Project continues to move forward." This too was false.

116.    Due to defendants' negligence and breach of their obligations, they also allowed the building permit for the Air China Project to lapse on July 22, 2006, resulting in the issuance of Building Code Violations. Defendants did not even seek to reinstate or renew the expired permit from July 22, 2006 until October, 2006.

117.    George F. Donohue and Nelson Li met with plaintiff's officials on September 7, 2006 and committed to complete the Project within thirty (30) days. In reasonable reliance upon that false promise, another $100,000 was paid by plaintiff, but defendants against did nothing to complete the Project.

118.    Defendants, by letter mailed October 31, 2006 from Jay Kopf and JMK Construction Group Ltd., waited until November 8, 2006 to pay the $4,000 renewal fee and thereby renew with the City of Long Beach the long-expired permit for the Air China Project. That negligent failure resulted in a Building Code Violation (§ 7-34A) issued October 11, 2006 by the City of Long Beach.

119.    In other words, defendants unlawfully performed construction without the necessary permit in place from July 23, 2006 until November 8, 2006.

120.    On May 24, 2006, in the United States District Court, Southern District of New York (Case no. 06 CV 3924) (Judge Sprizzo), William B. May Jr. Family Limited Partnership, as plaintiff, sued GMAC Real Estate, LLC, George F. Donohue, Christian M. Deutsch, William B. May Commercial Inc., 1051 Brant Holding Company LLC (named after Deutsch's residential address) and others, all as defendants, claiming that they had used the William B. May name

without consent, approval or authorization in violation of the Lanham Act, the parties' contracts, and the common law of false advertising and unfair competition.

121.    Plaintiff demanded an injunction. All defendants appeared by the same counsel and an injunction against all defendants, baring their use of the "William B. May" name, quickly was issued as part of a settlement. Prior to the Federal Court injunction, Christian M. Deutsch had used the William B. May trade name and mark, pursuant to a non-exclusive license agreement with trademark owner William B. May, Jr. Family Limited Partnership. That license, later terminated, did not cover real estate development. By License Agreement dated October 1, 2003, those rights were assigned exclusively to another entity in which neither Christian M. Deutsch nor his cohorts (George F. Donohue, Jay Knopf, Nelson Li and John A. Varacchi) were involved.

122.    In contravention of the Federal Court injunction, George F. Donohue continues to brazenly advertise himself as a Trump Exp/Real Estate & Wealth Expo exhibitor as "President" of the "distinguished" real estate company, William B. May International who (presumably as an expert) will cover "How to Avoid Scams." He operates out of GMAC's New York offices.

123.    By November 2006, defendants had essentially abandoned the Project, as Jay Kopf and JMK Construction, the supposed "sub-contractors", kept holding plaintiff up for more money.

124.    On March 1, 2006, defendants through George F. Donohue promised that the Air China Project would be completed by August 31, 2006. It was and still is not. Instead, on March 9, 2006, defendants through George F. Donohue demanded yet more money and change orders.

125.    On October 4, 2006, George F. Donohue wrote to plaintiff and did so as "President" of "GMAC Real Estate International Group" at 505 8th Avenue, 8th Floor, New York, NY, stating that "[y]our Project is important to us…" The only thing that was "important" was to try to fleece more money from plaintiff.

126.    Further, Jay Kopf's general contractor's license (no. 2581/07) expired April 30, 2007 (yet

he and the other defendants continued demanding payments) and the required Workers'

Compensation coverage he obtained (policy EC007088) expired April 1, 2006 and the required

general insurance (policy GLW782413-0/000) expired July 23, 2005.    Thus, defendants

unlawfully acted and were paid as contractors in the City of Long Beach without the required

license and insurances.

127.    As part of the scheme to defraud plaintiff and coerce yet more money, defendants created

another "agreement" and faxed it from defendants GMAC Real Estate IPG on April 27, 2007

("the April Agreement") following a February 28, 2007 meeting at Craven Corporation's offices.

128.    In the February 28, 2007 meeting and the April Agreement, signed by George F.

Donohue as "President" of WBM International Development LLC, defendants continued their

pattern of fraud by:

      (a)    Referring to "WBM International Development LLC" as
          "general contractor";

      (b)    Promising to obtain the required Certificate of Occupancy
          and complete the Project in its entirety by June 18, 2007;
          and

      (c)    Reiterating the terms and conditions of the fraudulent May
          31, 2005 Agreement.

129.    Even as late as March 2007, at that point unlicensed JMK and Jay Kopf demanded a

payment of $200,000, but still did not complete the Project.

130.    Defendants' fraud continues to date.    By letter dated September 12, 2007 (but delivered

two weeks later) George F. Donohue alleged that plaintiff somehow was guilty of "breech" (sic)

of agreement with the non-entity "WBM International Development LLC" and demanded

$329,411 "immediately".    George F. Donohue made this demand on the letterhead of the non-

entity, from the office of Christian M. Deutsch and GMAC and copied Nelson Li, John A. Varacchi and Jay Kopf.

131.    By letter, dated July 24, 2007, plaintiff demanded of Nelson Li, George F. Donohue, John A. Varacchi, WBM and GMAC a full accounting.  To date, none has been provided.

132.    Defendants failed to adequately respond to written requests made on behalf of plaintiff on July 24 and 25, 2007, August 14, 2007 and October 17, 2007 for copies of invoices, checks and other vital documentation regarding the Project.

133.    By November 22, 2006, defendants had demanded $424,355 over and above the total price $3,950,000 they had set forth in the May 2005 Agreement.

134.    Each payment was made to non-entity "WBM International Development LLC" and then secretly deposited (without endorsement) by defendants. Defendants repeatedly were overpaid: as early January 2007, there had been overpayments in excess of $250,000.

135.    The name "WBM-JMK International LLC (d/b/a/ WBM) was revealed only when Defendants under threat of litigation in July 2007 finally provided to plaintiff partial copies of some checks ostensibly made to subcontractors.

136.    Defendants secretly deposited and disbursed plaintiff's funds into an account entitled "WBM-JMK Development LLC" (which plaintiff first discovered in August 2007).  Of course, that entity (secretly formed January 2005) was neither a signatory to any agreement with plaintiff, nor affiliated with William B. May.  By written request, dated August 4, 2007, to George F. Donohue, John A. Varacchi, Jay Kopf and GMAC, plaintiff demanded an explanation, but to date has received none.

137.    By letter (copied to John A. Varacchi) dated July 24, 2007, George F. Donohue and

31

WBM were ordered to stop all work on the Project. Finally, by letter dated August 14, 2007, the relationship was terminated and demand for the return of $282,710.73 belonging to plaintiff was made, which defendants ignored.

138.    Throughout their dealings with plaintiff, each of the individual defendants falsely and fraudulently represented that each was a legitimate representative of William B. May.

139.    Upon information and belief, Jay Kopf is the sole principal of JMK Construction Group, Ltd., as well as a member in WBM-JMK Development LLC (together with George F. Donohue, Nelson Li and John A. Varacchi).

140.    Pursuant to applicable law, plaintiff should be permitted to pierce the veil of a limited liability company such as WBM-JMK Development LLC to pursue claims against Jay Kopf, George F. Donohue, Nelson Li and John A. Varacchi where as here (a) they exercised complete domination of the company with respect to the transaction at issue and (b) such domination was used to commit a fraud or wrong against plaintiff.

141.    The control that these defendants exercised, over the shell limited liability company they had created, included disregard of corporate formalities; undercapitalization; and common office space or telephone number.

142.    Correspondence was addressed by Jay Kopf and JMK Construction Group, Ltd. to Nelson Li and "WBM International Development LLC" to create the false appearance that Jay Kopf and JMK had no interest in that entity and were arms length sub-contractors.

143.    JMK Construction Group Ltd. is a New York corporation formed on March 21, 2000 and Jay Kopf is its Chairman and Chief Executive Officer. Its address for the service of process (156 5th Avenue, Suite 834, New York, NY) is the same as that of TCC Interiors, Ltd.

144.    The defendants failed to complete the Project, with plumbing, electric and fire alarms not

even connected. The cost of completion will likely exceed $400,000, this after defendants were already paid at least $2 million over what the entire Project reasonably should have cost.

145.    As a result of defendants' misconduct and unreasonable delays in completing the Project, the Property remained unusable for almost three (3) years, and plaintiff has been forced to house its flight crew in hotels (at a cost of $250,000) all while paying hundreds of thousands of dollars for taxes and utilities for the vacant Property.

146.    As a proximate result of the negligence, fraud and breach of contract committed by defendants Jay Kopf, Nelson Li, George F. Donohue, John A. Varacchi, JMK Construction Group Ltd. and WBM-JMK, plaintiff was forced to engage the services of counsel and of Craven Corporation, a construction manager located at 150 East 42nd Street, New York, New York.

147.    As a proximate result of defendants' fraud and misconduct, plaintiff was caused to pay Craven Corporation $136,055.46 and attorney Eliot Clauss $57,105.06, plus an additional $74,000 for utility charges and more than $103,000 for security services.

148.    As a proximate result of defendants' misconduct, plaintiff paid $200,025 for the architectural services of IA (recommended by George F. Donohue and Nelson Li).

149.    The defendants' own "accounting" records revealed payments to a defunct corporation (New Ha Ha Construction Inc.) in excess of $1 million to companies, (i.e., TCC Interiors, Ltd. and JMK Construction Group, Ltd) owned and controlled by Jay Kopf.

150.    Throughout the Project, defendants converted plaintiff's funds by repeatedly demanding overpayments, and then siphoning off those funds.

151.    The work performed by defendants was substandard and resulted in, amongst other things, a rejection of automatic sprinkler plans as they were in violation of New York State legal requirements.

152.    Defendants negligently failed to obtain necessary permits prior to installing sprinklers,

resulting in additional service delays and expense.

153.    Each and every payment request and change order request was fraudulently made in the name of WMB International Development LLC, using the GMAC address.

154.    The City of Long Beach expressly required that the Air China Project be performed by a Long Beach licensed contractor, and none of the defendants (other than JMK Construction Group Ltd.) even has such a license.

155.    Each and every time defendants represented to plaintiff that "WBM International Development LLC" was the general contractor (and they never stopped doing so), it was a material lie.

156.    At no time were defendants even lawfully authorized to use the name "WBM International Development LLC" and nevertheless they criminally used that name in dealing with plaintiff and others in contravention of N.Y. General Business Law § 130.

157.    Throughout the parties' dealings, defendants repeatedly, willfully and materially misrepresented the facts again by falsely advising plaintiff that:

> (a)    WBM International Development LLC was a professional U.S. construction company; and
>
> (b)    Nelson Li somehow was involved in all aspects of the Project.

158.    The defendants materially promised that the "contractor" WBMID would have insurance in its own name, with plaintiff as additional insured. This requirement was never met.

159.    Defendants unlawfully and repeatedly threatened to stop work unless change orders were executed and they thereby extorted more monies from plaintiff.

160.    Defendants never posted any indication at 505 8th Avenue (or anywhere else) that "WBM International Development LLC" was an alias for WBM-JMK Development LLC. That failure constituted a crime pursuant to NY General Business Law § 130.

161.    In contravention of the Federal Court injunction, George F. Donohue continues to act as a licensed real estate broker (license #31D01025975) under the business of William B. May Commercial Inc. (operating out of GMAC's offices).  In contravention of the Federal injunction, GMAC also lists on its website the following licensed real estate salespeople (whose licenses - #40CH1033400 and 40CH1089052 - are under William B. May Commercial Inc.'s control): Chae Hee Seek and Katherin G. Chen.

162.    The GMAC website lists George F. Donohue as "President" of "GMAC Real Estate IPG" and lists the same address that George F. Donohue, Nelson Li and defendants WBM used in their dealings with plaintiff.

163.    1051 Brant Company LLC ("Brant") was a domestic limited liability company whose sole owner was Christian M. Deutsch (1051 Brant also is Deutsch's residential address in Pennsylvania).  Through Brant, Christian M. Deutsch filed a trademark/service application for "William B. May" with the United States Patent and Trademark Office.

164.    Further, according to the New York Secretary of State, Christian M. Deutsch is still listed as Chairman and Chief Executive Officer of an active and existing New York Corporation named "William B. May Commercial, Inc." and George F. Donohue is still listed as its "principal Executive Officer."  This too violates an injunction issued by this Court.

165.    Defendants Nelson Li and George F. Donohue, working from the offices of and in concert with GMAC and Christian M. Deutsch, continue to deceive members of the public in general and Chinese businessmen in particular.

166.    For instance, using the GMAC address and William B. May's old fax number, George F. Donohue and Nelson Li describe themselves as the "executive committee of the general assembly in New York" of something they call "China - United States Conference of Economic Exchanges" and, in violation of a Federal Court Order, they still link themselves to William B.

May and its history dating to 1866 and its 240 offices and they direct the public to GMAC's website.

167.    Defendants Nelson Li, George F. Donohue and Christian M. Deutsch use the "GMAC Real Estate IPG" name on their website (with the 505 8th Avenue address) but there is no such legal entity authorized to do business in this State.  GMAC Real Estate LLC is a Delaware limited liability company, formed February 19, 2002 and has never filed any alias or doing business certificate as required by N.Y. General Business Law § 130.  Thus, once again, the defendants are engaging in criminal misconduct (Id.) in using an unlicensed, unauthorized alias.

168.    GMAC's website lists George F. Donohue as "President" and Nelson Li as "Managing Director".  It lists the same address above and fax that defendants used for WBM in their fraudulent dealings with plaintiff.

169.    GMAC's website, designed to convince the public to engage GMAC, Nelson Li, George F. Donohue and/or Christian M. Deutsch for real estate business has Christian M. Deutsch listed as its CEO.  He is not a licensed real estate broker or salesman.  Upon information and belief, GMAC in New York has no license or assets, but is an entity used by the defendants to defraud the unsuspecting public, including plaintiff.

170.    At all times relevant, defendants each were employed or associated with an enterprise affecting interstate or foreign commerce and conducted or participated in the conduct of the enterprise's affairs through a pattern of racketeering activity.

171.    That racketeering included mail fraud, which is indictable under 18 U.S.C. § 1341 and wire fraud, indictable under 18 U.S.C. § 1343.

172.    The scheme to defraud involved defendants' knowing and intentional participation and the use of interstate mails or wire transmissions in furtherance of the scheme.

173.    Further, common law fraud exists – the defendants' material, false representations, with

an intent to deceive, detrimentally and reasonably relied upon by plaintiff, in connection with a classic bait and switch scheme was employed by defendants.

174.    Defendants also have violated New York General Business Law § 349, by engaging and continuing to engage in practices that are materially deceptive and misleading, causing injury to plaintiff.

175.    By so doing, defendants thereby continued to deceive plaintiff into believing that William B. May was behind the Air China Project.

176.    Defendants' fraud on the public now is based primarily from GMAC's 505 8th Avenue offices, where George F. Donohue also has set up "International Properties Group Inc." and "Real Estate Capital of America, Inc.", two New York corporations designed to mislead the public into believing that GMAC IPG New York is anything other than a shell and that Nelson Li and George F. Donohue are anything other than scam operators.

177.    Today, the message on the answering machine for WBM's supposed telephone number [(212) 620-2611] is answered by "George Donohue, President of GMAC International Property Group."

178.    To this day, calls to the supposed phone number of WBM are answered at GMAC's office by Christian M. Deutsch as follows:  "This is Chris" and he then fraudulently directs calls for WMB as follows: "They moved to 575 Madison Avenue a while ago."  Upon information and belief, the GMAC defendants and Christopher Deutsch (a) knew or reasonably should have known of defendants' fraudulently activities conducted out of 505 8th Avenue; and (b) were paid, directly or indirectly, for permitting those defendants to use the 505 8th Avenue facility as a base of operations for the fraud.

179.    Meanwhile, the New York Secretary of State still lists as an active corporation "William

B. May International Inc.", with Christopher Deutsch as Chairman and George F. Donohue as principal Executive Officer.

### The Enterprise and Predicate Acts

180.    The scheme was carried out by an "enterprise" as that term is defined in 18 U.S.C. § 1961(4), consisting of an ongoing association-in-fact, which included defendants and others. The members of the enterprise were a continuing unit engaged in a particular course of fraudulent conduct by working together to achieve their common goal of defrauding plaintiff of millions of dollar, converting these funds to their own use through sham legal positions, and attempting to obtain additional funds through these legal positions.

181.    Defendants' fraudulent conduct was concerted and its object was to participate in the conduct and affairs of the enterprise through a pattern of racketeering activity that included violations of the federal mail and wire fraud statutes. Defendants' unlawful activities affected interstate and foreign commerce, and plaintiff has been injured by reason of the conduct described in this complaint.

182.    Each of the actions taken by the defendants and others described in the complaint, was taken in furtherance of the fraudulent schemes alleged herein and in concert with other, and gives rise to plaintiff's claims involving violations of federal racketeering laws, securities fraud, common law fraud, conversion, breach of fiduciary duty, unjust enrichment, negligence, negligent misrepresentation and an accounting.

183.    Defendants engaged in repeated acts of mail and wire fraud in connection with the willful misrepresentations contained in the telephone calls, email transmissions and mailings described herein, all in violation of 18 U.S.C. §§1341 and 1343.

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF
## (RICO)

184.   The allegations of paragraphs "1" through "183" are repeated and realleged as though fully set forth herein.

185.   Defendants are "persons" within the meaning of 18 U.S.C. § 1961(3) because they are individuals or entities capable of holding legal and beneficial interests in real property. Defendants were at all times material to this action employed by or associated with the enterprise described above, the activities of which affect interstate and foreign commerce. Although defendants participated in the enterprise and were part of it, defendants also have an existence separate and distinct from the enterprise. The enterprise has an ascertainable structure separate and apart from the pattern of racketeering activity in which defendants engaged.

186.   Defendants participated in the fraudulent schemes described above and repeatedly use or caused the use of the mails and interstate wires in furtherance of these schemes in violation of 18 U.S.C. § 1341 (mail fraud) and 18 U.S.C. § 1343 (wire fraud). These mailings and wirings include, but are not limited to each and every one of the mailings and writings described above.

187.   Each of the above-described violations by defendants of the mail fraud and wire fraud statues, 18 U.S.C. §§ 1341 and 1342, constituted an instance of racketeering activity as defined in 18 U.S.C. §1961(1).

188.   The multiple acts of racketeering activity which were committed in the course of related fraudulent schemes over a substantial period of time, the last of which occurred within ten years after the commission of a prior act of racketeering activity, constitute a "pattern of racketeering activity", as defined in 18 U.S.C. §1961(5).

189.   Defendants conducted and participated in the conduct of the affairs and the operation and

management of the enterprise through the above-described pattern of racketeering activity in violation of 18 U.S.C. §1962(c).

190.    Plaintiff has been injured in its business and property as direct and proximate result of the violations of 18 U.S.C. § 1962.  Therefore, plaintiff demands judgment against defendants jointly and severally for threefold the damages suffered (in excess of $6 million), plus interest, costs, reasonable attorneys' fees and such other and further relief as the Court deems just and proper.

## SECOND CLAIM FOR RELIEF
### (RICO CONSPIRACY)

191.    The allegations of paragraphs "1" through "183" and "185" through "190" are repeated and realleged as though fully set forth herein.

192.    Defendants willfully combined, conspired and agreed to violate 18 U.S.C. § 1962(c); that is, to conduct or participate directly or indirectly in the conduct of the affairs of the enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(d).  This racketeering activity consisted of repeated violations of the federal mail fraud and wire fraud statues.

193.    Defendants knew of, agreed to and acted in furtherance of the overall objective of the conspiracy by, among other things, providing false documents and false information to plaintiff to fraudulently obtain $4 million and by asserting sham legal positions to prevent recovery of the funds my plaintiff and to unlawfully obtain additional funds.

194.    Plaintiff has been injured in its business and property as a direct and proximate result of the conspiracy to commit the predicate acts of mail fraud and wire fraud in violation of 18 U.S.C. § 162(d).  Therefore plaintiff demands judgment against defendants jointly and severally for threefold the damages suffered (in excess of $6 million), plus interest, costs, reasonable attorneys' fees, and such other relief as the Court deems just and proper.

## THIRD CLAIM FOR RELIEF
## (BREACH OF FIDUCIARY DUTY)

195.    Plaintiff repeats and realleges each and every allegation contained and set forth in paragraphs "1" through "183" as though fully set forth herein.

196.    At all times relevant hereto, defendants had complete control over plaintiff's funds, which had been provided to them for the completing the Project.

197.    Defendants owed plaintiff a fiduciary duty to act in plaintiffs best interest with respect to its fund they held.  Defendants were bound to exercise the utmost good faith and reasonable care in the performance of the duties owed to plaintiff.

198.    By reason of defendants' failure to serve plaintiff in a proper, skillful, prudent and diligent manner as alleged herein and because defendants directly breached their fiduciary duty, plaintiff has been damaged in an amount not yet fully determined.  Therefore, plaintiff demands judgment against defendants jointly and severally for damages exceeding $4 million, plus interest, costs, reasonable attorneys' fees, punitive damages, and such other relief as the Court deems just and proper.

## FOURTH CLAIM FOR RELIEF
## (CONVERSION)

199.    Plaintiff repeats and realleges each and every allegation contained and set forth in paragraphs "1 " through " 183" as though fully set forth herein.

200.    Plaintiff entrusted defendants with funds that were used in accordance with defendants' representation.

201.    However, defendants did not actually use plaintiff's money in an appropriate manner and converted all or part of plaintiff's funds.

202.    Defendants have each acted wantonly and intentionally.

203.    Defendants have each acted in total violation of plaintiff's rights. As a proximate result of defendants' wrongful and intentional conversion of plaintiff's funds, plaintiff has been damaged. Therefore, plaintiff demands judgment against defendants jointly and severally for damages exceeding $4 million, plus interest, costs, reasonable attorneys' fees, punitive damages and such other relief as the Court deems just and proper.

## FIFTH CLAIM FOR RELIEF
### (UNJUST ENRICHMENT)

204.    Plaintiff repeats and realleges each and every allegation contained and set forth in paragraphs "1" through "183" as though fully set forth herein.

205.    Defendants fraudulently obtained funds from plaintiff.

206.    Defendants received and used plaintiff's funds for their personal benefit.

207.    Because defendants fraudulently obtained plaintiff's funds, it is not just, fair, equitable, or conscionable for defendants to benefit from their ill-gotten gains.

208.    As a consequence of the foregoing, defendants have been unjustly enriched in an amount to be determined at trial. Therefore, plaintiff demands judgment against defendants jointly and severally for damages exceeding $4 million, plus interest, costs, reasonable attorneys' fees, punitive damages and such other relief as the Court deems just and proper.

## SIXTH CLAIM FOR RELIEF
### (NEGLIGENCE)

209.    Plaintiff repeats and realleges each and every allegation contained and set forth in paragraphs "1" through "183" as though fully set forth herein.

210.    Defendants owed plaintiff, at a minimum, a duty of reasonable and ordinary care in their dealings with plaintiff, including the care and competence of a reasonable general contractor.

211.    Defendants have failed to perform the duties of care imposed upon them when they were

entrusted with plaintiff's funds, thereby resulting in damages to plaintiff.

212.    Plaintiff's funds and account were handled in a negligent manner incompatible with plaintiff's stated objectives..

213.    As a proximate result of defendants' negligence, plaintiff has been damaged.

214.    Therefore, plaintiff demand judgment against  defendants jointly and severally for damages exceeding $4 million plus interest, costs, reasonable attorneys' fees, punitive damages and such other relief as the Court deems just and proper.

## SEVENTH CLAIM FOR RELIEF
## (NEGLIGENCE MISREPRESENTATION)

215.    Plaintiff repeats and realleges each and every allegation contained and set forth in paragraphs "1" though "183"as though fully set forth herein.

216.    Defendants were, at a minimum, careless in imparting words upon which plaintiff and others were expected to rely.

217.    Plaintiff, unaware of the misstatements made by defendants, reasonably relied on the statements and representations of defendants.  Defendants were aware of plaintiff's reliance, and plaintiff's reliance caused it to act or fail to act.

218.    Defendants induced plaintiff to invest funds on the basis of false information that defendants supplied to plaintiff.

219.    Defendants, individually, and as agents of one another and others, were the authors of words expressed directly to plaintiff, who was owed a duty to care by defendants, with knowledge that the words would induce reliance or be acted upon by plaintiff.

220.    As a result of defendants' misrepresentations and omissions, plaintiff has suffered economic harm.

221.    Therefore plaintiff demands judgment against defendants jointly and severally for

damages exceeding $4 million plus interest, costs, reasonable attorneys' fees, punitive damages, and such other relief as the Court deems just and proper.

### EIGHTH CLAIM FOR RELIEF
### (COMMON LAW FRAUD IN THE INDUCEMENT AND DECEIT)

222.    Plaintiff repeats and realleges each and every allegation contained and set forth in paragraphs "1" through " 183 " as though fully set forth herein.

223.    Defendants intentionally made various material misrepresentations to plaintiff concerning the Project and William B. May all as forth above.

224.    Defendants knew of the falsity of their misrepresentations when made, and at the time of making the misrepresentations, made them with the intent of deceiving and defrauding plaintiff and of inducing plaintiff to transfer monies to defendants.

225.    Defendants knew that their lies and omissions to state material facts to make statements concerning the Project, the real contractor and William B. contributed to the deception.

226.    Plaintiff was unaware of the falsity of the misrepresentations, and believed them to be true, and reasonably relied upon them.

227.    Defendants, without plaintiff's informed consent, wrongfully, intentionally, fraudulently, maliciously, and deceptively manipulated, converted and stole plaintiff's funds.

228.    Defendants further executed such transactions and obtained control over plaintiff's funds for the purpose of enriching themselves and such conduct was in complete and total disregard for plaintiff's interests.

229.    As a result of defendants' misrepresentations and omissions, plaintiff has suffered economic harm.

230.    In view of the flagrant, wanton and intentionally fraudulent conduct on the part of the defendants, plaintiff is entitled to punitive damages in an amount to be determined at trial.

231.    Therefore, plaintiff demands judgment against defendants jointly and severally for damages exceeding $4 million plus interest, costs, reasonable attorneys' fee, punitive damages and such other relief as the Court deems just and proper.

## NINTH CLAIM FOR RELIEF
## (AN ACCOUNTING)

232.    Plaintiff repeats and realleges each and every allegation contained and set forth in paragraphs "1" through " 183" as though fully set forth herein.

233.    Because they were entrusted with plaintiff's funds, defendants owed fiduciary duties to plaintiff.  These duties required defendants at all times to act on behalf of plaintiff in good faith, to exercise the care that an ordinary prudent person in a like position would exercise under similar circumstances, and to conduct themselves in a manner they reasonably believed to be in plaintiff's best interest.  As part of their fiduciary duties, defendants at all times were required to be honest and candid and to make complete disclosure in their dealings with plaintiff.  Moreover, in their communications with plaintiff, defendants were obligated to do so honestly, candidly and completely in all material respects.

234.    Defendants breached their fiduciary and other duties to plaintiff, failed to faithfully execute their services in the various ways as described in the complaint and otherwise profited at plaintiff's expense thereby.

235.    As fiduciaries, defendants must account to their principal, plaintiff, for the funds that they received during the course of their fiduciary relationship with plaintiff.

236.    Therefore, plaintiff demands judgment against defendants requiring an accounting by plaintiff for the funds the defendants received from plaintiff, including an accounting for the interests on the funds they obtained as a result of their wrongful use of plaintiff's funds.

## TENTH CLAIM FOR RELIEF
## (GENERAL BUSINESS LAW § 349)

237.    Plaintiff repeats and realleges each and every allegation contained and set forth in paragraphs "1" through "183" as though fully set forth herein.

238.    Defendants have violated New York General Business Law § 349, by engaging and continuing to engage in practices that are materially deceptive and misleading, causing injury to plaintiff and to the general public.

239.    Further, defendants continue to violate New York General Business Law § 349, and consequently each should be found jointly and severally liable to the plaintiff for treble damages (in an amount to be established at trial, but believed to exceed $6 million), plus reasonable attorney's fees and further, each should be permanently enjoined from continuing to defraud the general public.

### Wherefore

By reason of the foregoing, plaintiff prays for relief against each defendant jointly and severally as follows:

(A)    Rescinding the May 2005 Agreement as having been procured by fraud;

(B)    Awarding plaintiff treble damages in an amount to be established at trial but believed to be at least $6 million, plus punitive damages in an amount to be established at trial but believed to be $1 million;

(C)    Awarding plaintiff pre-judgment and post-judgment interest as a result of the wrongs complained of herein;

(D)    Awarding plaintiff its costs, expenses and reasonable attorneys' fees;

(E)    Enjoining defendants from further defrauding the public; and

(F)    Awarding plaintiff such other relief as the Court shall deem just and proper.

**JURY DEMAND**
**PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

Dated:         New York, New York
               December 5, 2007

                               Yours respectfully,

                               Jacques Catafago (7894)
                               THE CATAFAGO LAW FIRM, P.C.
                               The Empire State Building
                               350 Fifth Avenue, Suite 4810
                               New York, NY 10118
                               (212) 239-9669

Docket No.    07    CV 11128    (LST)  (DFE)  ECF CASE

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

AIR CHINA LIMITED,

Plaintiff,

- against -

NELSON LI (a/k/a SHENG LI), JOHN A. VARACCHI
(a/k/a JOHN A. DAVIS), GEORGE F. DONOHUE,
JAY KOPF (a/k/a JACOB M. KOPF)
CHRISTIAN M. DEUTSCH,
WBM-JMK DEVELOPMENT LLC (d/b/a WBM
INTERNATIONAL DEVELOPMENT),
JMK CONSTRUTION GROUP LTD.,
TCC INTERIORS, LTD.,
GMAC REAL ESTATE LLC,
GMAC REAL ESTATE IPG NEW YORK,

Defendants.

# COMPLAINT

## THE CATAFAGO LAW FIRM, P.C.
Attorneys for Plaintiff
The Empire State Building
350 Fifth Avenue, Suite 4810
New York, New York 10118
212.239.9669 tel
212.239.9688 fax