UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
AIR CHINA LIMITED,

                Plaintiff,

      - against -

NELSON LI (a/k/a SHENG LI), JOHN A. VARACCHI
(a/k/a JOHN A. DAVIS), GEORGE F. DONOHUE,
JAY KOPF (a/k/a JACOB M. KOPF)
CHRISTIAN M. DEUTSCH,
WBM-JMK DEVELOPMENT LLC (d/b/a WBM
INTERNATIONAL DEVELOPMENT),
JMK CONSTRUTION GROUP LTD.,
TCC INTERIORS, LTD.,
GMAC REAL ESTATE LLC,
GMAC REAL ESTATE IPG NEW YORK,

                Defendants.
----------------------------------------------------------------x

Docket No.
07 CV. 11128
(LTS) (DFE)

DECLARATION OF
CHEN BAOQIANG

      **CHEN BAOQIANG** respectfully declares the following under the penalties of perjury pursuant to 28 U.S.C. § 1746:

1.   I am Vice Managing Director of plaintiff, Air China Limited. I executed the May 31, 2005 agreement which is attached as Exhibits "A" and "D" to defendants' motion to dismiss and, as such, am fully familiar with the facts set forth below.

2.   I make this Declaration in opposition to defendants' motion to dismiss.

                **Summary of Facts relating to the Agreement, WBM AND Jay Kopf**

3.   The factual framework which forms the basis for this case is set forth in plaintiff's Complaint and RICO Statement and shall not be repeated herein but will only be summarized herein as follows:

4.   This action arises from an ongoing fraudulent scheme carried out by defendants who

have been engaged in an ongoing conspiracy to, amongst other things, convert and misappropriate over $4 million dollars belonging to plaintiff by fraudulently deceiving plaintiff and the general public into believing defendants are part of the long esteemed William B. May Real Estate Company. Defendant WBM-JMK Development LLC is a New York State limited liability company. This entity has never had any bonafide offices, employees, experience or general contracting license or backing of any kind. This entity, through the conduct of the individual defendants, has made criminal use of an alias (in violation of N.Y.G.B.L. §130) as part of defendants' scheme to defraud plaintiff.

5. As part of their scheme to defraud, the defendants created the purported contract dated May 31, 2005 ("the May 2005 Agreement") listing the fictitious name and entity "WBM International Development LLC" as contractor (so as to deceive plaintiff into believing that a William B. May company stood behind the Project), with George F. Donohue signing, under oath, as "President" of that purported company operating out of 505 Eighth Avenue, New York, New York (which in reality was the address for defendants GMAC and Christian M. Deutsch).

6. In reasonable reliance upon the fraudulent promises set forth in all the earlier representations, documents and negotiations, as well as those contained in the May 2005 Agreement itself, plaintiff executed the May 2005 Agreement and made the first two (2) payments, set forth therein, by checks dated June 7, 2005 and June 14, 2005, in the amount of $562,875 and $375,250, each payable to the fictitious "WBM International Development LLC."

7. Even eleven days before the May 2005 Agreement was signed, George F. Donohue fraudulently represented to plaintiff in both English and Chinese (translated by defendant Nelson Li), that "[o]ur reputation has been built on 139 years of keeping our clients happy and satisfied..." He did so on non-entity WBM's letterhead, using the fax number and email address of William B. May and the office address of defendant GMAC.

8. The May 2005 Agreement was procured by fraud and was signed by defendant George F. Donohue as purported "President" of a non-entity, "WBM Development International LLC."

9. According to the May 2005 Agreement, George F. Donohue swore that he was then President of "WBM International Development LLC", which in fact was a perjurious statement.

10. According to the May 2005 Agreement, WBM was to pay for all permits and to perform all work as general contractor. It was never licensed or qualified to do so and never did so.

11. The May 2005 Agreement was the vehicle used to convert plaintiff's monies. According to that document, plaintiff's funds were to be placed in a bank account only in the name of the named general contractor. They were not, <u>and</u> could not, be so placed because that contractor simply did not exist.

12. As a result of their fraud, defendants thus had obtained almost $1 million in checks they could not cash; there was no legal entity in existence known as "WBM International Development LLC".

13. Thus, they concocted a plan to file an assumed name certificate for WBM-JMK Development LLC (a name never disclosed to plaintiff) so that plaintiff's payments to "WBM International Development LLC" could be deposited into their bank account.

14. The Certificate of Assumed Name was signed on <u>June 8, 2005</u> (after the May 31, 2005 Agreement had been signed) by Nelson Li as "Manager" of WBM/JMK International LLC (d/b/a/ WBM).

15. The Certificate of Assumed Name falsely and fraudulently represented that the alias "WBM International Development" would be used only subsequent to the filing (6/15/05) and in New York County only, although the Air China Project was to take place in Nassau County.

16. The Certificate of Assumed Name represented that WBM/JMK Development LLC (d/b/a

WBM) had its principal place of business at an address which was in fact the residential address of attorney Stephen A. Long.

17. The Certificate of Assumed Name failed to state that defendants had used and would continue using the alias "WBM International Development LLC"; indeed, use of such suffix was expressly prohibited by the Secretary of State.

18. By so doing, defendants thereby continued to deceive plaintiff into believing that a valid subsidiary of William B. May was behind the Air China Project.

19. Jay Kopf, through JMK Construction Group Ltd., was WBMID's co-venturer on the Project. The May 2005 Agreement made no mention of any co-venturers. This concealment was fraudulent.

20. It was only on April 30, 2005 that Jay Kopf, using "JMK Construction Group" as the general contractor, finally obtained any license to perform work on the Air China Project. No other defendant ever obtained or even applied for such license.

21. Throughout the course of the parties' dealings, the work performed by defendants was substandard, shoddy, incomplete, unsatisfactory and not in compliance with the terms of the May 2005 Agreement.

22. Further, although the May 2005 Agreement expressly required the named contractor(non-entity "WBM International Development LLC") to provide liability insurance, defendants, even after due demand (including correspondence dated July 1, 2005), failed to do so.

23. The defendants' "accounting" records relating to the Project revealed payments to a defunct corporation (New Ha Ha Construction Inc.) and payments in excess of $1 million to companies (i.e., TCC Interiors, Ltd. and JMK Construction Group, Ltd.) owned and controlled by Jay Kopf.

24. Defendants' "accounting" records in connection with the Project:



     (a)  included incomplete checks;

     (b)  included no invoices;

     (c)  showed duplicate payments to defendants TCC Interiors, Ltd.;

     (d)  show what later proved to be defendants' conversion; and

     (e)  were faxed to plaintiff from "William B. May" on September 29, 2005, again creating the false and fraudulent impression that that company was behind the Project.

25. On May 31, 2005, Jay Kopf signed an application for a building permit for the Air China Project to be submitted to the City of Long Beach, Department of Buildings. On the application, he listed the contractor as JMK Construction (not WBM International Development LLC, nor WBM-JMK Development LLC (d/b/a WBM) and included JMK Construction Ltd.'s address and phone number. The application (never amended) stated that the **total cost** for the Air China Project would be **$2,440,000**. (This was on the very same date that WBM International Development LLC as the purported "contractor", with George F. Donohue as "President", signed the May 2005 Agreement with plaintiff setting an all-inclusive Project cost of over $3,950,000.).

26. Defendants never provided plaintiff with a Certificate of Insurance as they had promised to do in the May 2005 Agreement (§§ 7.2 and 11.2.1).

27. It was not until May 31, 2005 that the application for a building permit was correctly filled out by defendants.

28. Even after plaintiff had paid more than defendants had materially warranted would be the entire Project's cost, JMK Construction Group Ltd. and Jay Kopf (all while continuing to fraudulently conceal the facts they were in fact the true general contractor <u>and</u> part owner in



WBM-JMK) continued to demand more and more money ("we are not your bank" "so it is up to you" "if there is no money, there is no materials, if no materials there is no man power".).

29. Defendants negligently allowed the Building Department permit for the Air China Project to lapse, unlawfully continuing to work without any permit in place. It was only after violations were issued that defendants sought to renew the permit and demanded another $4,000 from plaintiff to do so (in contravention of the express terms of the May 2005 Agreement).

30. Jay Kopf and JMK Construction Group Ltd. made repeated demands for payment (i.e. emails dated 11/13/06 "we are looking for funding") totally inconsistent with the turn-key cost for the Project that had been guaranteed by defendants.

31. The defendants also violated numerous provisions of the City of Long Beach Code of Ordinances, including (a) <u>LICENSING</u>, Chapter 14, Article II §§ 14-31, 14-15, 14-24, 14-35, 14:38 (requiring a contractor to be licensed, rendering the absence of licensed work criminal and making a license nontransferable); (b) <u>BUILDING CODE</u>, Chapter 7, Article I §§ 7.6 and 7-38 (requiring all work be performed only by a licensed contractor and Chapter 7, Article II, Div 3 § 7.34 (requiring that a valid permit be in place).

32. Defendants at all times fraudulently made it appear to plaintiff that JMK Construction Group Ltd and TCC Interiors, Ltd. were arms length sub-contractors, when in fact they were owned and controlled by Jay Kopf, "the contractor" and principal in WBM ( and in fact the only individual even licensed by the City of Long Beach for this Project).

33. According to the defendants' own "accounting" records, their alleged subcontractor ("New Generation – Michael") entered into an agreement with "JMK Construction Group and WBM International Development" as general contractor. Other alleged subcontractors (i.e. "New Ha Ha Construction Inc. – which is a non-entity) signed lien waivers describing their

agreement with "tenant WBM International Development", and inexplicably indemnifying "JMK and Owner."

34. One supposed "subcontractor" (TCC Interiors, Ltd.) has Jay Kopf as its Chairman or Chief executive Officer and his address as its official address in New York.

35. Throughout the parties' dealings, Jay Kopf falsely and fraudulently referred to "WBMI" as the contractor, even stating in writing that "the boys at WBMI must make a decision how far they are willing to go without additional funding…" when he knew that JMK Construction Group, Ltd. was in fact the true contractor and he was an undisclosed principal of the nominal contractor.

36. Prior to issuance of the building permit, defendants dealt with the City of Long Beach using the William B. May name, but the City's mail to that entity relating to the permit application (no. 0096944 submitted 9/14/04) was simply returned as undeliverable.

37. Examples of defendants' fraudulent, criminal use of the "WBM International Development LLC" or "WBMID" name and communications with plaintiff without complying with N.Y.G.B.L. § 130 include:

> (a) January 4, 2006 letter from JMK Construction Ltd. and Jay Kopf;
>
> (b) January 10, 2006 letter from Nelson Li, with copies to George F. Donohue and Jay Kopf;
>
> (c) June 26, 2003 Overhaul Plan and discussions relating to same;
>
> (d) February 2004 Professional Assessment Plan and discussions relating to same;
>
> (e) Discussions and meetings on January 12, 13, 16, 2006 and June 6, 2006 and resultant documents involving plaintiff's officials and defendants WBM-JMK, John A. Varacchi, Jay Kopf, George F. Donohue and Nelson Li and

7

      (f) Applications for payment submitted to plaintiff listing "WBM International Development LLC" or "WBMI International" as the contractor.

38. Even as late as October 4, 2006, Nelson Li represented in writing that George F. Donohue was "President" of WBMI International Development LLC". In fact, no such entity even existed.

39. By November 2006, defendants had essentially abandoned the Project, as Jay Kopf and JMK Construction, the supposed "sub-contractors", kept holding plaintiff up for more money.

40. On March 1, 2006, defendants through George F. Donohue promised that the Air China Project would be completed by August 31, 2006. It was and still is not. Instead, on March 9, 2006, defendants through George F. Donohue demanded yet more money and change orders.

41. On October 4, 2006, George F. Donohue wrote to plaintiff and did so as "President" of "GMAC Real Estate International Group" at 505 8th Avenue, 8th Floor, New York, NY, stating that "[y]our Project is important to us..." The only thing that was "important" was to try to fleece more money from plaintiff.

42. Further, Jay Kopf's general contractor's license (no. 2581/07) expired April 30, 2007 (yet he and the other defendants continued demanding payments) and the required Workers' Compensation coverage he obtained (policy EC007088) expired April 1, 2006 and the required general insurance (policy GLW782413-0/000) expired July 23, 2005. Thus, defendants unlawfully acted and were paid as contractors in the City of Long Beach without the required license and insurances.

43. Even as late as March 2007, at that point unlicensed JMK and Jay Kopf demanded a payment of $200,000, but still did not complete the Project.

44. Defendants' fraud continues to date. By letter dated September 12, 2007 (but delivered

two weeks later) George F. Donohue alleged that plaintiff somehow was guilty of "breech" (sic) of agreement with the non-entity "WBM International Development LLC" and demanded $329,411 "immediately". George F. Donohue made this demand on the letterhead of that non-entity, from the office of Christian M. Deutsch and GMAC and copied Nelson Li, John A. Varacchi and Jay Kopf. This was followed by the December 26, 2007 filing of a mechanic's lien in that amount against the Property and the February 1, 2008 commencement of an arbitration demanding that amount. Meanwhile, the Project remains unfinished and Air China faces violations from the City of Long Beach of up to $10,000 a day as a result of the poor, incomplete work performed by defendants.

### THE PLAIN MEANING AND INTENT OF THE AGREEMENT REQUIRES DENIAL OF THE MOTION

46.     It is evident from a plain reading of the agreement that there is no factual or logical basis for the motion. In contending that arbitration somehow is mandatory, defendants rely on Article 11.1 of the agreement which specifically incorporates by reference the General Terms and Conditions (attached as part of Exhibit "A" and as Exhibit "D" to the moving papers). However, those provisions expressly indicate that proceeding to arbitration as opposed to litigation is at "Owner's option." See Article 4.6.1; 4.6.2 and 4.4.9 of General Terms and Conditions.

47.     Ironically, in contending that all non-signatory defendants can compel arbitration of this dispute, Mr. Kopf (Aff. at para. 11) relies on and quotes from the very provision (General Term and Condition Article 4.6.1) which states that arbitration is at our option. It was always the intention of Air China that arbitration would be at our sole option and the agreement bears that out. Article 11.1 states that (as highlighted in bold print by Mr. Kopf) any claim **shall** be resolved in accordance with the procedures set forth in Article 4 of the General Terms and Conditions "including" arbitration. Thus, arbitration is an option (for Air China) which is

included amongst several different available forums, but is not an exclusive forum. Otherwise, there would have been no reference to Article 4 of the General Terms and Conditions and the language of Article 11.1 would clearly limit the parties to the arbitral forum as opposed to simply including it as amongst the procedures to be followed pursuant to Article 4 of the General Terms and Conditions (which as noted above provide this as an option available to plaintiff). In short, the agreement, procured by fraud, does not require arbitration and the motion should be denied. The recent filing of the arbitration demand (following the commencement of this suit and the filing of our RICO Statement) does not alter this just result, particularly in light of the facts that (a) all issues raised therein first were raised herein; (b) the agreement does not give defendant the option of arbitrating if we refuse (and we do); and (c) the agreement clearly allows for litigation de novo regardless of the outcome of any arbitration (Article 11.3) and we would seek such *de novo* review, relying on this Court's subject matter (federal question and diversity of citizenship jurisdiction). Clearly, in light of the *de novo* provision, arbitration makes no sense unless both parties agree to it. Defendants' motion thus betrays not only a tortured analysis of the agreement entirely inconsistent with its clear meaning and intent, but also a dishonest intent to delay a binding and final determination on the merits. For these reasons and those set forth in the accompanying Memorandum of Law, I respectfully urge the Court to deny the motion in its entirety.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

CHEN BAOQIANG

Dated: Beijing, People's Republic of China
February 15, 2008