UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
AIR CHINA LIMITED,

                    Plaintiff,

         - against -

NELSON LI (a/k/a SHENG LI), JOHN A.VARACCHI
(a/k/a JOHN A. DAVIS), GEORGE F. DONOHUE,
JAY KOPF (a/k/a JACOB M. KOPF)
CHRISTIAN M. DEUTSCH,
WBM-JMK DEVELOPMENT LLC (d/b/a WBM
INTERNATIONAL DEVELOPMENT),
JMK CONSTRUTION GROUP LTD.,
TCC INTERIORS, LTD.,
GMAC REAL ESTATE LLC,
GMAC REAL ESTATE IPG NEW YORK,

                    Defendants.
-----------------------------------------------------------------x

**Docket No.:**
**No. 07 Civ. 11128 (LTS)(DFE)**

**AFFIDAVIT**

**STATE OF NEW YORK**    )
                     ) ss.:
**COUNTY OF NEW YORK** )

        JACQUES CATAFAGO, an attorney duly admitted to practice law, affirms the following under penalties of perjury:

        1.    I am a member of the bar of this Court and am counsel for plaintiff ("Air China") and make this affidavit in opposition to the defendants' motion to dismiss.  As set forth in the accompanying brief, the motion, wrongly denominated as made pursuant to FRCP 12(b) (see Defendants' Notice of Motion and Brief at page "1" and "28"), in fact is a motion pursuant to FRCP 12(c) as issue has been joined.

        3.    As also set forth in the accompanying brief, in connection with any such motion it is improper for defendants to submit any documents or allegations outside of the pleadings, other than matters of public record (of which the Court may take judicial notice) or documents incorporated in the contested Complaint.

4.      However, this is precisely what defendants have done, in connection with the entirety of the moving affidavits of defendant Christian M. Deutsch ("Deutsch") and Susan Daniel, as well as the exhibit attached to her affidavit.

5.      Therefore, as a threshold matter, Air China respectfully requests that such improper submissions be disregarded in their entirety on this motion.  Alternatively, if the Court chooses to convert the motion into one for summary judgment Air China requests notice thereof so as to have sufficient opportunity to highlight the material, triable issues of fact in this controversy, in which both sides have asked for a jury trial.

6.      Notwithstanding the improper nature of the motion, which can and should be denied on its face, Air China submits herewith documentary evidence which is part of the public record and/or is incorporated in its Complaint.  That evidence, outlined below, further illustrates that the motion is entirely without basis in law or in fact.

7.      This action was commenced seven months ago and, pursuant to the Court's Initial Conference Order of January 2, 2008, Air China timely served and filed its Civil RICO Statement on February 1, 2008.  A copy of the Civil RICO Statement is attached hereto as Exhibit "1".  As set forth in the accompanying brief, this pleading properly may be considered in resolving this motion.

8.      All defendants, including GMAC Real Estate LLC and Deutsch, then moved to dismiss the action in favor of arbitration.  After the motion was denied by this Court (and after defendant WBM-JMK Development LLC's arbitration proceeding was dismissed), all defendants answered.

9.      All defendants, including GMAC Real Estate LLC and Deutsch, served FRCP 34 Requests, a Demand to Inspect the subject premises and FRCP 30 Notices to Depose four (4) employees of Air China.

10.    Air China, in turn, timely served its FRCP 26 mandatory disclosures, and responded to the FRCP 34 Requests by producing, copying or otherwise making available over 6,800 pages of documents and photographs, as well as over 60 pages of building plans.  Air China also served on May 7, 2008 upon all defendants its own FRCP 34 Notice for Production of Documents and its own FRCP 30 Notices to Depose all defendants.

11.    All parties' depositions (including those of Deutsch and GMAC Real Estate LLC) were duly scheduled by counsel for all parties, with each counsel confirming that the dates were "firm".  Deposition dates were scheduled to begin on August 13, 2008.

12.    Up until this point, neither GMAC Real Estate LLC nor Deutsch had alleged any absence of involvement in the wrongdoings alleged in the Complaint.  Indeed, shortly after GMAC Real Estate LLC had been served in December 2007, its corporate counsel contacted me to discuss the matter and to offer me a copy of the franchise agreement his client had with Deutsch's company.  After litigation counsel appeared, however, no such copy was provided to us until July 18, 2008 (only three days before the motion was filed).

13.    The timing of that disclosure and this motion reveals the motion to be a tactical ploy.  Indeed, I do not believe that the motion complies with the Court's Motion Rules (and not merely because the moving brief exceeds the page maximum, with no table of contents).

14.    Specifically, as shown by the emails dated June 30, 2008, attached as Exhibit "2", it was on that date that Deutsch and GMAC Real Estate LLC first asked to be let out of the case on account of their claimed non-involvement.  In response, I  reminded counsel that I previously had been promised a copy of the GMAC Real Estate LLC agreement in December 2007, but had not been provided with same and I further highlighted additional, serious concerns, none of which were ever addressed. Id.

15.     As shown below and in the attached Exhibits, defendant Deutsch's claim that it was only during the June 25 2008 Court-Ordered Mediation that he "had to be introduced to the other named defendants" is not credible.

16.     The Complaint (¶24) incorporates the June 26, 2003 Proposal for Hotel Management for Air China.  Pertinent portions thereof (with bate stamp numbering indicating their production to defendants) are attached hereto as Exhibit "3".  This document lists Deutsch as the "Chief Executive Officer of WBM" (Id. at AC 1040).

17.     The Complaint (¶¶26 and 107) incorporates the June 26, 2003 Proposal for Turnkey Design Build.  Pertinent portions thereof are attached hereto as Exhibit "4".  This document (Id. at AC 01018) claims (like Exhibit "3") that WBMI "was incorporated in 1866" and also claims that it has over 200 professionals and nine (9) offices, with architectural and engineering staff.

18.     The Complaint (¶¶33, 37-39 and 107) incorporates the February 2004 Professional Assessment Report.  Pertinent portions thereof are attached hereto as Exhibit "5".  Here, again, WBMI is claimed to have been established in 1866 with a "good relationship" with the "office of the New York State governor," with over 200 professionals, and eight (8) subsidiaries in New York, with an existing wholly-owned subsidiary (WBMID) which itself is claimed to be a diversified and full service company, and with total revenues in 2003 of $1.3 billion (Id.).

19.     As noted in the accompanying brief, the Court may consider the public record in deciding this motion.  Exhibit "6" hereto is the public record establishing that WBMI was not formed until September 7, 1999 and in fact was dissolved (and therefore non-existent) at the time of all the above representations made to Air China.

20.     Also from the public record is Exhibit "7" showing Deutsch to be CEO of WBMI.

21.    In the public record and also incorporated into the Complaint (¶¶10, 12, 46, 120 – 122, 161, 164 and 166) are the Federal Court lawsuit and ensuing consent injunction issued against defendants GMAC, Deutsch and Donohue (and others) by this Court (06 CV 3924). For the Court's convenience, the caption thereof and pertinent portions of the injunction are attached hereto as Exhibit "8".

22.    Incorporated into the Complaint (¶161) and also as part of the public record, specifically from the New York State Secretary of State, Division of Licensing, is documentation demonstrating that, from GMAC's offices (run by Deutsch and Donohue) New York State real estate sales licenses belonging to William B. May still are being used in contravention of the consent injunction.

23.    The public record showing defendants Deutsch and Donohue to be in control of International Properties Group Inc. at 505 8th Avenue, New York, New York is attached hereto as Exhibit "10".

24.    The Complaint (¶ 46) describes the December 28, 2005 letter signed by defendant Donohue and sent to Air China and the public at large, falsely advertising that "William B. May Commercial Real Estate is now GMAC Real Estate IPG. . . . our name will change . . . ." This document, sent from the Deutsch/GMAC offices, is attached as Exhibit "11".

25.    Deutsch, who claims wholesale non-involvement, in fact is the CEO of William B. May Commercial Company, as set forth in the Complaint (¶¶164 and 179) and in the public record attached hereto as Exhibit "12". Further, that document demonstrates that the entity never changed its name as required by N.Y.G.B.L. §130, nor otherwise "is now GMAC Real Estate IPG," as falsely claimed in the never-retracted December 28, 2005 letter (Exhibit "11").

26.    Deutsch's claimed non-involvement is further disproven by the documents recently provided by defendants themselves (Exhibit "13" hereto, bate stamped D 0974, 1147-

5

1149) showing that his company received (from the other defendants) from Air China's funds on September 30, 2005 $470,124.00, and on January 11, 2006 an amount exceeding $28,000 for return of a purported "loan".

27.    Here, several points must be emphasized.  First, absolutely zero back-up for the "loan" was produced.  (Indeed, defendants initially claimed not even to have copies of any of the more than $4 million in checks they disbursed from June 2005 through December 2007, a claim belied by select documents provided by them to Air China prior to this lawsuit and a claim compelling us to subpoena those records for August 20, 2008, from both their banker and their accountant).  Second, as demonstrated by Section 5.3 of the May 2005 Agreement attached to the moving affidavit of Jay Kopf, this "return of loan" constituted a breach of escrow fiduciary obligation.  Third, this "return of loan" again disproves Deutsch's conclusory contention of non-involvement.

28.    Deutsch's sworn statement (Aff. ¶2) that he only first met "many of the individuals" who are his co-defendants at the Court-Ordered June 25, 2008 mediation should not be believed.  The only individuals who showed up for the mediation with Deutsch for defendants were Jay Kopf, George Donohue, Nelson Li and John Varacchi, together with their shared counsel. We have attached hereto as Exhibit "14" documentation showing that defendant Deutsch actually works with defendants Nelson (Sheng) Li, George Donohue and John Varacchi at the GMAC IPG New York offices.  Based on the foregoing, it would appear that Mr. Deutsch is not being truthful.

29.    As described in Exhibit "2" hereto, shortly after my engagement in October 2007, I reached out to Deutsch to determine if defendant WMB/JMK Development LLC and its records were housed at the 505 8th Avenue location.[1]  He responded (in what I now know

---

[1] Since 2004, defendants Li, Deutsch and Donohue have moved their operation four (4) times – 1764 Broadway; 575 Madison Avenue; 505 8th Avenue and most recently 520 8th Avenue.

to be a lie) that "they left . . . they moved back to 575 Madison Avenue."  This false statement was made while Deutsch worked with Donohue and Li in the same, small offices at 505 8th Avenue, in which defendant Varacchi is a principal.  (See Exhibit "14").  As alleged in the Complaint (i.e., ¶¶113 and 153) many of the fraudulent  documents came from that office, with the GMAC name.  Under these circumstances, Deutsch cannot be believed and there also is a genuine issue at least as to GMAC Real Estate LLC's involvement in this matter which at minimum may involve some negligence.

## CONCLUSION

30.    For these reasons I respectfully urge the Court to summarily reject consideration of the moving Affidavits and Exhibits[2] and to deny the motion in its entirety.  In the event the Court considers the evidence submitted by movants, I would ask for notice that the motion will be treated as an FRCP 56 motion and for an opportunity, in accordance with FRCP 56(f), to oppose it as such after completion of depositions.   In the unlikely event any part of the motion is granted, Air China respectfully requests leave to re-plead its Complaint pursuant to FRCP 15.

*JACQUES CATAFAGO*

_____
JACQUES CATAFAGO

Sworn to before me this
1st day of August 2008

*Steven Kaiser*

_____
Notary Public

STEVEN KAISER
Notary Public – State of New York
No. 02KA6168804
Qualified in Nassau County
My Commission Expires June 18, 2011

---

[2] Indeed, even the April 2007 Agreement Amendment attached to the Kopf affidavit as Exhibit "D" (which bears "GMAC's" fax) is incomplete, as it refers therein to exhibits not included in the moving papers.

# EXHIBIT
# 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

AIR CHINA LIMITED,

                        Plaintiff,

           - against -

NELSON LI (a/k/a SHENG LI), JOHN A. VARACCHI
(a/k/a JOHN A. DAVIS), GEORGE F. DONOHUE,
JAY KOPF (a/k/a JACOB M. KOPF)
CHRISTIAN M. DEUTSCH,
WBM-JMK DEVELOPMENT LLC (d/b/a WBM
INTERNATIONAL DEVELOPMENT),
JMK CONSTRUCTION GROUP LTD.,
TCC INTERIORS, LTD.,
GMAC REAL ESTATE LLC,
GMAC REAL ESTATE IPG NEW YORK,

                    Defendants.

------------------------------------------------------------------x

**Docket No.**
**No. 07 Civ. 11128 (LTS)(DFE)**

**PLAINTIFF'S CIVIL
RICO STATEMENT**

       Plaintiff, AIR CHINA LIMITED, by its undersigned counsel, pursuant to the

Initial Conference Order of United States District Court Judge Laura Taylor Swain, dated

January 2, 2008, as and for its Civil RICO Statement hereby respectfully alleges as follows:

**(a)  State Whether the Alleged Unlawful Conduct is in Violation of 18 U.S.C. §§ 1962(a),
(b), (c) and/or (d)**

       The alleged unlawful conduct is in violation of 18 U.S.C. § 1962(c) and (d).

Defendants conducted and/or participated, both directly and indirectly, in the conduct of an

enterprise through a pattern of racketeering activity, and they further willfully combined,

conspired and agreed to violate 18 U.S.C. § 1962(c); that is, to conduct or participate directly or

indirectly in the conduct of the affairs of the enterprise through a pattern of racketeering activity

in violation of 18 U.S.C. § 1962(d).  This racketeering activity consisted of repeated violations of

the federal mail fraud and wire fraud and bank fraud statutes as detailed herein and in the Complaint.

**(b)  List Each Defendant and Describe the Alleged Misconduct and Basis of Liability of Each Defendant**

Defendant Nelson Li (a/k/a Sheng Li) was and is a resident of the State of New Jersey.  At various times he has claimed to be "managing director" or real estate "sales agent" of defunct, non-existent and/or inoperative companies including, "WBM International Development LLC", "Sunels International (N.A.) Inc." "WBMI", "WBMID" and "GMAC Real Estate IPG New York", although he is not a New York State licensed real estate broker or salesperson and has never been employed by any such company and has used only one office – 505 8th Avenue, New York, NY (the GMAC office in New York which lists him as amongst GMAC's "sales agents") to engage in his fraud upon the public in general and plaintiff in particular.

Defendant John A. Varacchi was and is a resident of the State, City and County of New York.  Although he is actually in the furniture business, he has represented himself to be an officer of "WBM International Development LLC," an entity falsely holding itself out to be a licensed, experienced general contractor with the backing of William B. May Real Estate Company.

Defendant George F. Donohue was and is a resident of the State of New York. Although he has been enjoined by this Court from using the "William B. May" name for commercial purposes, defendant George F. Donohue continues to use that name in connection with a New York State real estate broker's license which he holds.

Defendant Jay Kopf (a/ka Jacob M. Kopf) was and is a resident of the State of

New York.  Defendant Jay Kopf, through the companies he owns (defendant TCC Interiors, Ltd. and defendant JMK Construction Group, Ltd.), is the only defendant with any general contractor experience.  In connection with their multi-million dollar criminal scheme against plaintiff, Jay Kopf, together with defendants Nelson Li, John A. Varacchi, George F. Donohue, Christian M. Deutsch and WBM-JMK Development LLC (d.b/a/ WBM), defrauded plaintiff into believing:

> (a)  that an entity named "WBM International Development LLC" had existed since the 1800's, was well established and experienced in the field of general construction and real estate development, and was an existing subsidiary of, and had the backing of, the venerable real estate company William B. May; and

> (b)  JMK Construction Group Ltd. would simply be a sub-contractor on a contemplated construction job for plaintiff.  In fact, Jay Kopf, together with these other individual defendants, secretly created the entity "WBM-JMK Development LLC" in January 2005 (with only these individuals as owners and with no history, office, employees, bank account, experience, license, insurance or backing of any kind from William B. May, or from anyone else) and defendant never provided that name to plaintiff but instead criminally used an unauthorized alias for that entity ("WBM International Development LLC") so as to continue to deceive plaintiff into thinking that William B. May was behind the venture.

Defendant Christian M. Deutsch was and is a resident of the State of Pennsylvania, doing business in the State of New York.  Although he too has been enjoined by this Court from using the "William B. May" name for commercial purposes, this self-described "Chairman" of GMAC Real Estate Group IPG New York (which also lists him amongst its real estate "sales agents" although in fact he has no such New York State license) continues to allow defendant George F. Donohue and others to report to the GMAC defendants' New York offices (at 505 8th Avenue, the purported office of "WBM" from which plaintiff was defrauded) and to use their New York real estate brokerage or sales license relating to William B. May.

Defendant WBM-JMK Development LLC is a New York State limited liability company. This entity has never had any bonafide offices, employees, experience or general contractor license or backing of any kind. This entity, through the conduct of the individual defendants, has made criminal use of an alias (in violation of N.Y.G.B.L. §130) as part of defendants' scheme to defraud plaintiff.

Defendant JMK Construction Group LTD. was and is a New York State corporation. This entity, controlled by Jay Kopf, was an undisclosed general contractor in dealing with plaintiff, and thereby siphoned off millions belong to plaintiff.

Defendant TCC Interiors, Ltd. was and is a New York State corporation. This entity was falsely represented by defendants to be an arms length sub-contractor, but in reality it too belonged to and was controlled by Jay Kopf and siphoned off well over $610,000 belonging to plaintiff.

GMAC Real Estate LLC was and is a Delaware limited liability company doing business at 505 8th Avenue, New York, New York. GMAC lists Christian M. Deutsch and Nelson Li amongst its sales associates, but neither is licensed by New York State Department of Licensing to sell real estate or to otherwise represent themselves to be sales agents.

GMAC Real Estate IPF New York was and is an unincorporated association doing business at 505 8th Avenue, New York, New York with George F. Donohue as President, Christian M. Deutsch as Chairman and Nelson Li as Managing Director.

Factual Basis For Defendants' Liability

In early 2003, plaintiff became interested in developing its property at 485 West Broadway, Long Beach, New York ("the Property") so that it could house its airline workers during their stays in New York.

4

For that purpose, in June of 2003, plaintiff solicited the services of the very well established real estate company, William B. May Company, which had been a fixture in the real estate community in New York since 1866.  In June 2003, plaintiff specifically requested that the company submit a proposal for the renovation of plaintiff's Property at 485 West Broadway, Long Beach, New York.  In response to plaintiff's request for such a proposal, defendant George F. Donohue wrote to plaintiff on June 12, 2003 on the letterhead of William B. May Company and as purported "President" of William B. May Company, stating as follows:

> "We are honored to have this opportunity to provide our expertise and service to you.  My associates and I are reviewing the information about the property, discussing it with different parties and performing our due diligence.  We will send you the proposal when we complete it.
> We look forward to working with you."

By this letter, which constituted the first act of mail fraud by defendants and with which William B. May's glossy brochure was enclosed, defendants' scheme to defraud plaintiff began. Ultimately, as described below, defendants baited plaintiff with the false and material illusion that William B. May Company would be involved and ultimately created a shell company, totally unrelated to William B. May Company, as part of an elaborate criminal bait and switch scheme designed to defraud plaintiff.

As part of their scheme to defraud plaintiff, defendants initially used the name of an inactive, dissolved corporation -- William B. May International Inc., which had not incorporated until September 7, 1999 and which had been dissolved by New York State Proclamation issued by the Secretary of State on June 25, 2003 for non-payment of franchise taxes. That company remained dissolved until defendants George F. Donohue and Christian M. Deutsch sought to annul the dissolution on April 7, 2004.  Well before then, however, in their

second act of mail fraud on June 26, 2003, while William B. May International Inc. still was dissolved, defendants Nelson Li, George F. Donohue and Christian M. Deutsch, as part of their scheme to defraud plaintiff, submitted to plaintiff a written proposal for hotel management of the plaintiff's Property, signed by George F. Donohue as President, falsely and fraudulently claiming that:

> (a) the company had been incorporated in 1866, and had more than 200 real estate professionals; and

> (b) Christian Deutsch was Chief Executive Officer, George F. Donohue was President and Nelson Li was Managing Director.

Those and other portions of this document were knowingly false when made and were used successfully to deceive plaintiff into doing business with defendants.

Also on or about June 26, 2003, in a third act of mail fraud defendant Nelson Li acting on behalf of himself and individual defendants Jay Kopf, John A. Varacchi and George F. Donohue, in an effort to convince plaintiff to hire defendants to develop plaintiff's Property ("the Air China Project") at 485 West Broadway, Long Beach, New York presented plaintiff with a document entitled "Over-all Overhaul Plan" ("the Overhaul Plan").

The Overhaul Plan falsely and fraudulently indicated that:

> (a) It was being submitted by an entity named "WBMI" whose President was defendant George F. Donohue;

> (b) WBMI was established in 1866 and was a "full service real estate company with the longest history in the United States" and was providing its services and "137 years of real estate experience" and its "credibility and business reputation" were at the service of the Air China Project; and

(c) A second entity known as "WBMID" (which in fact did not even exist) was a "diversified and "full service" "wholly owned subsidiary of WBMI" and WBMID undertake to "work continuously for the Project."

Each and every one of these statements, as well as others in the Overhaul Plan, was knowingly and intentionally false when made and was reasonably and detrimentally relied upon by plaintiff in deciding to do business with defendants, Nelson Li, John A. Varacchi, George F. Donohue and Jay Kopf.

Even as early as 2002, George F. Donohue had represented to the public through the media that he wanted to make William B. May a public company because "I think people would be interested in a 137 year old company with a very good trademark."

In his scheme to defraud plaintiff and the public, George F. Donohue partnered with Jay Kopf, John A. Varacchi, Nelson Li, Christian M. Deutsch and GMAC, although none of these other four men were licensed brokers or salespeople. Upon information and belief, Nelson Li had lost a license and John A. Varacchi, whose field was in the sale of furniture, was an investor with George F. Donohue in working to create an illusion that Donohue controlled William B. May. The only individual member of the scheme with any actual construction experience was Jay Kopf.

At the initial stages of the conspiracy, defendants relied primarily on Nelson Li and George F. Donohue to defraud plaintiff. Many of the fraudulent documents described herein were translated from the English language to the Chinese language by Nelson Li, and were thereupon presented to plaintiff. George F. Donohue has routinely touted himself to the public as "President" of William B. May (e.g., March 2006 function sponsored by Mitsloan Real Estate Club; March 2, 2005 article in Real Estate Weekly). George F. Donohue also promotes himself as "one of the world's foremost expert in negotiation" who charges up to $15,000 for a 60

minute speech (plus first class air fare, hotel, mileage and other charges) and is "one of the nation's leading real estate and negotiation experts," and he solicits such work from the very same GMAC offices which supposedly housed WBM. (In fact, no William B. May company ever has had any lease or actual employee and is not even listed in the building directory at that address.)

Jay Kopf formed the New York corporation known as JMK Construction Group Ltd. on March 21, 2000 and he has at all times since been its Chairman and Chief Executive Officer.

Jay Kopf's offices are located in the same building (1123 Broadway) where William B. May Services Corporation and William B. May Advantage Corporation (two New York State corporations) are based.  At the early stages of the conspiracy, defendants George F. Donohue and Nelson Li enlisted Jay Kopf and John A. Varacchi in their plan to defraud plaintiff.

In February 2004, in a fourth act of mail fraud Nelson Li, acting on behalf of himself and Jay Kopf, John A. Varacchi and George F. Donohue, presented plaintiff with a document entitled "Professional Assessment Report" ostensibly prepared by "WBMI established 1886".

Defendants Nelson Li and George F. Donohue in February 2004 also misrepresented to plaintiff that Burton Roslyn was a "Senior Vice President of Construction" for William B. May Commercial Real Estate" and would be involved in the Project.  In fact, he never held such a post and never was involved in the Project.

By fax transmittal dated September 23, 2004, defendants continued to deceive plaintiff into believing that William B. May Company was involved in the Air China Project, including the Building Department Permit application filed with the City of Long Beach.

Although defendants, on September 13, 2004, submitted the Building Department permit application (no. 0096944) with the City of Long Beach to commence the Project, by January 6, 2005 the application still had not been approved because no defendant was actually licensed to perform general contracting services by the City as required.  Defendants knew or should have known of this requirement and, in any event, were notified of their failure on or about January 6, 2005, but still no license was obtained until July 23, 2005.

The February 2004 Professional Assessment Report submitted by defendants (through Nelson Li) to plaintiff, falsely and fraudulently indicated that:

> (a) WBMI (which in reality was dissolved) was offering its "best services for optimum interest of Air China";
>
> (b) WBMI was established in 1866 and was a full service real estate company with the largest history in the United States including over 200 real estate specialists;
>
> (c) An entity known as "WMID" (which in fact did not exit) was a "wholly – owned subsidiary of WBMI" and WBMID would undertake to "work continuously for the project;" and
>
> (d) WBMI's principals included Nelson Li as Executive Director, John A. Varacchi as Vice President, Jay Kopf as Senior Vice President and Burton Roslyn as Senior Vice President.

The Professional Assessment Report submitted by defendants (through Nelson Li) to plaintiff ostensibly for "WBMI established 1866" further falsely and fraudulently represented:

> (a) "[s]ince the summer of 2002, our professional staff and local building department and other officials have carried out meetings and talks";

(b) "[a]nother important benefit arises from the good relationship between our company and the Office of the New York Governor";

(c) **"Our commitment to Air China:"** [w]e also have a good cooperative relationship with the local electric power department";

(d) "[w]e guarantee best services for the optimum interests of Air China";

(e) "[w]e have already organized contingents of our best professional people to put their expertise at the service of this Project. We shall intervene in the Project to ensure its success";

(f) that defendant George F. Donohue had previously been in charge of NY – NY Port Authority's 20 million square feet (in fact he had been forced to resign under allegations of criminal misconduct) and that he had a Ph.D. in "international business" (Pace University has no record of any such alleged degree); and

(g) that Burton Roslyn a registered designer, was Senior Vice President on the Project (in fact he only attended a single meeting at the early stages with plaintiff).

Each and every one of these statements, as well as others in the Professional Assessment Plan, was knowingly and intentionally false when made and was reasonably and detrimentally relied upon by plaintiff in deciding to do business with defendants Nelson Li, John A. Varacchi, George F. Donohue, Jay Kopf and the later-formed defendant WBM.

As part of their scheme to defraud plaintiff, the defendants Nelson Li, George F. Donohue, Jay Kopf and John A. Varacchi misrepresented to plaintiff, orally and in writing, that Burton Roslyn would be part of the WBM team, and that he was a principal of William B. May. In fact, he was never anything other than a consultant and a friend of John A. Varacchi, and he never actually worked on the Air China Project.

On March 4, 2005, in a fifth act of mail fraud in violation of New York General Business Law § 130 (a crime), and as part of their scheme to defraud defendants, submitted a bid for the Air China Project.

The bid (submitted in English and in Chinese language versions) was on letterhead of non-entity "WBM International Development LLC" that used GMAC's address and phone number (WBM never had a separate phone or its own address) and William B. May's email address and fax numbers. It was signed by George F. Donohue as "President" and falsely advised:

    i.    Our company….started efforts on this project in July 2002. The executives and professionals of our company have been to the site many times….

    ii.    Our company, which was established in 1866, is the oldest real estate company in the United States. We have been involved in many real estate projects…

    iii.    ….In the past years, we have worked with many Chinese companies.

          We will provide all of our expertise of 139 years of real estate services in the United States to serve Air China in its Long Beach project.

In fact, the record establishes that at that time:

    1.    There was no "WBM International Development LLC" in existence; and

    2.    On January 13, 2005, less than two months before the bid, defendants had only just secretly formed a New York limited liability company "WBM-JMK Development LLC", a name never disclosed to plaintiff (and proceeded to use an unauthorized alias, "WBM International Development LLC").

The defendants' bid breakdown for the Air China Project was mailed and faxed on March 31, 2005 by George F. Donohue using the fictitious name "WBM International Development LLC" (when in reality no such company existed) and using the William B. May fax number and name.

In sixth and seventh acts of mail fraud, by letters dated March 15 and 24, 2005, defendants falsely, by George F. Donohue (using the William B. May email address and the phony "WBM International Development LLC" name at GMAC's address), represented that the Project would be "turn-key" with an all-inclusive price of less than $3,900,000.

By letter dated March 15, 2005 (8th act of mail fraud), Nelson Li wrote to plaintiff regarding leasing the roof of the building involved in the project, and he did so as purported "managing director" William B. May Commercial Real Estate.

On December 29, 2005, using the GMAC address, and on "William B. May Commercial Real Estate" letterhead, including the William B. May website address, George F. Donohue wrote to plaintiff falsely and fraudulently (9th act of mail fraud) stating:

> "William B. May Commercial Inc. is now GMAC Real Estate IPG
>
>         *    *    *    *
>
> Our name will change, but our commitment to serve our customers is as strong as ever."(emphasis in original).

Defendants never retracted or amended this false and fraudulent statement, even after George F. Donohue, GMAC and Christian M. Deutsch each had been sued by the William B. May family

in this Court and consequently each had become subject to a Federal Court injunction barring them from any commercial use of the "William B. May" name.

Defendants' announcement of a purported GMAC/William B. May partnership was also published (but never retraced) in the March 15, 2006 edition of the Real Estate Weekly. This was simply part of the fraud defendants were committing on the general public; there was never any such partnership.

As part of their scheme to defraud, the defendants signed a purported contract dated May 31, 2005 ("the May 2005 Agreement") listing the fictitious name and entity "WBM International Development LLC" as contractor (so as to deceive plaintiff into believing that a William B. May company stood behind the Project), with George F. Donohue signing, under oath, as "President" of that purported company operating out of 505 Eighth Avenue, New York, New York (which in reality was the address for defendants GMAC and Christian M. Deutsch).

Prior to presenting plaintiff with the fraudulent May 2005 Agreement, defendants met with plaintiff at William B. May's office (575 Madison Avenue, N.Y., N.Y.) on March 28, 2005, in order to continue to fraudulently foster the false impression that that venerable company was behind the Project; and they followed up with a fax from William B. May to plaintiff (signed by George F. Donohue, "President" of WBM, but with GMAC's address) referring to the meeting "at our offices."

Prior to defendants providing plaintiff with the May 2005 Agreement, defendants Nelson Li also gave plaintiff a business card identifying himself as "Managing Director" of "William B. May International – Real Estate since 1866" and "WBM – Real Estate since 1866" with the "corporate headquarters" of 575 Madison Avenue, New York, NY, once again reinforcing the fraudulent impression that that venerable company was behind the Project.

In reasonable reliance upon the fraudulent promises set forth in all the earlier representations, documents and negotiations, as well as those contained in the May 2005 Agreement itself, plaintiff executed the May 2005 Agreement and made the first two (2) payments, set forth therein, by checks dated June 7, 2005 and June 14, 2005, in the amount of $562,875 and $375,250, each payable to the fictitious "WBM International Development LLC." In depositing those funds, defendants committed the predicate acts of bank fraud.

Even eleven days before the May 2005 Agreement was signed, George F. Donohue fraudulently represented to plaintiff (10th act of mail fraud) in both English and Chinese (translated by defendant Nelson Li), that "[o]ur reputation has been built on 139 years of keeping our clients happy and satisfied…"  He did so on non-entity WBM's letterhead, using the fax number and email address of William B. May and the office address of defendant GMAC.

The May 2005 Agreement was procured by fraud and was signed by defendant George F. Donohue as purported "President" of  a non-entity, "WBM Development International LLC."

According to the May 2005 Agreement, George F. Donohue swore that he was then President of "WBM International Development LLC", which in fact was a perjurious statement.

According to the May 2005 Agreement, WBM was to pay for all permits and to perform all work as general contractor.  It was never licensed or qualified to do so and never did so.  According to the May 2005 Agreement, the entire Project was required to be completed in 8 months and WBM as "contractor" was required to compensate plaintiff up to 3% of the stipulated cost of the work ($3,950,000) for delays in connection with the Project (which to date still has not been completed) but never did so.

After defrauding plaintiff into signing the May 2005 Agreement and collecting almost $1 million, defendants Nelson Li, Jay Kopf, George F. Donohue, John A. Varacchi and WBM-JMK now faced a quandary; they had deceived plaintiff into entering into the May 2005 Agreement based upon the fraudulent representations that the contractor was "WBM International Development LLC", a supposedly well established subsidiary of an 1866 company, William B. May Company.  The formation of WBM-JMK in fact did not occur until 2005. The entity known as "WBM-JMK Development LLC" was created by articles of organization filed January 13, 2005 by the law firm of Ballon, Stoll, Bader & Nadler, P.C., which listed no other name for the entity and which placed its sole location for business at the home address of attorney Stephen P. Long in Westchester, New York. (The statutorily required publication did not occur until April 27, 2005.)  Upon information and belief, defendants never intended to do and never did do business at that location or in that county.  It was only as part of their conspiracy to defraud plaintiff, that defendants Jay Kopf, Nelson Li, John A. Varacchi and George F. Donohue caused to be formed a New York limited liability company named "WBM-JMK Development LLC" ("WBM-JMK"). WBM-JMK never had an office, employees, insurance, ties to William B. May or contracting license or experience.

The never-amended articles of organization filed under New York Limited Liability Company Law § 203 for WBM-JMK expressly provided that:

>   (a)  the name of the entity was "WBM-JMK Development LLC"; and
>   (b)  the office of entity was in Westchester, New York.

In fact, in all their dealings with plaintiff, defendants Nelson Li, George F. Donouhue, Jay Kopf, John A. Varacchi and WBM-JMK (a) never used or had such an office address and (b) fraudulently and unlawfully never used the name "WBM-JMK Development LLC".

The false statements contained in articles and certificates of WBM-JMK Development LLC give rise to Nelson Li's personal liability to plaintiff for those statements, including for damages incurred in connection with the fraudulent use of the alias "WBM International Development" done criminally in concert with the other individual defendants herein, and in violation of N.Y. G.B.L. § 130.

It must be stressed that defendants never had the legal right to use the "WBM Development LLC" name. That name belonged to a New York limited liability company formed on September 23, 1996 by New York attorney Jules E. Levy, Esq., which is and was totally unrelated to the parties herein and to the Air China Project.

As part of their scheme to defraud, using the same attorney (Stephen B. Long) who had formed WBM-JMK Development LLC in January 2005, defendants filed with the New York Secretary of State a Certificate of Assumed Name for WBM-JMK Development LLC on June 15, 2005 ("the Certificate of Assumed Name").Any use of an assumed name by a limited liability company must comply with the mandates of N.Y. Limited Liability Company Law, § 204(a) and N.Y. General Business Law §130.   It is a crime to fail to comply with these requirements.   Here, in direct contravention of these statutory requirements:   (a) no filing occurred until June 15, 2005, after the oral and written representations (including the May 2005 "Agreement") and after the collection of $1 million; (b) there was no posting anywhere of any assumed name certificate; and (c) there was no filing for Nassau County, where the Project was based.

The May 2005 Agreement was the vehicle used to convert plaintiff's monies. According to that document, plaintiff's funds were to be place in a bank account only in the name of the named general contractor.  They were not, and could not, be so placed because that

contractor simply did not exist.

As a result of their fraud, defendants thus had obtained almost $1 million in checks they could not cash; there was no legal entity in existence known as "WBM International Development LLC".

Thus, they concocted a plan to file an assumed name certificate for WBM-JMK Development LLC (a name never disclosed to plaintiff) so that plaintiff's payments to "WBM International Development LLC" could be deposited into their bank account.

On June 15, 2005, the very same day that their alias certificate was filed (permitting defendants to use the "WBM International Development" name, **provided** that the other requirements of N.Y.G.B.L. § 130 were satisfied, and in fact they never have been) (11th instance of mail fraud), defendant George F. Donohue as "President" of the non-entity "WBM International Development LLC" fraudulently wrote to plaintiff claiming that:

     (a)  the construction was "moving forward"; and

     (b)  another $7,000 had to be paid (in addition to almost $1 million already paid).

This was followed up by a proposed "contract amendment" in the name of "WBM International Development LLC".

The Certificate of Assumed Name was signed on June 8, 2005 (after the May 31, 2005 Agreement had been signed) by Nelson Li as "Manager" of WBM/JMK International LLC (d/b/a/ WBM).

The Certificate of Assumed Name falsely and fraudulently represented that the alias "WBM International Development" would be used only subsequent to the filing (6/15/05) and in New York County only, although the Air China Project was to take place in Nassau County.

The Certificate of Assumed Name represented that WBM/JMK Development LLC (d/b/a WBM) had its principal place of business at an address which was in fact the residential address of attorney Stephen A. Long.

The Certificate of Assumed Name failed to state that defendants had used and would continue using the alias "WBM International Development <u>LLC</u>"; indeed, use of such suffix was expressly prohibited by the Secretary of State.

By so doing, defendants thereby continued to deceive plaintiff into believing that a valid subsidiary of William B. May was behind the Air China Project.

By letter dated September 29, 2005, (12th instance of mail fraud) defendants responded to plaintiff's request for an accounting by providing an incomplete "WBM International Development LLC" document (using GMAC's address and phone and William B. May's email address) signed by "Managing Director" Nelson Li, which included purported payments to fictitious or inactive companies, a notable absence of invoices, invoice dates or other critical details, and clear indications of double payments and (subsequently discovered) payments to entities controlled by principals of WBM.

By July 22, 2005 through their pattern of racketeering (predicate acts of mail and bank fraud) defendants had already collected almost a million dollars and none were authorized to do the work they had been paid for, as they did not have Workers' Compensation Insurance as required by Long Beach ordinance.

Jay Kopf, through JMK Construction Group Ltd., was WBMID's co-venturer on the Project. The May 2005 Agreement made no mention of any co-venturers. This concealment was fraudulent.

It was only on April 30, 2005 that Jay Kopf, using "JMK Construction Group" as

the general contractor, finally obtained any license to perform work on the Air China Project. No other defendant ever obtained or even applied for such license.

Throughout the course of the parties' dealings, the work performed by defendants was substandard, shoddy, incomplete, unsatisfactory and not in compliance with the terms of the May 2005 Agreement.

As part of their scheme to defraud (13th instance of mail fraud), defendants filed on November 8, 2005 a Certificate of Capital Improvement with the New York State Department of Taxation and Finance listing the  contractor for the Air China Project as "WBM International Development LLC/JMK Construction") (no such entity even existed), using the GMAC address and including Jay Kopf's signature as "Vice President" who certified that he had entered into a contract for the Air China Project.

Using the fictitious name "WBM International Development LLC" defendants issued to plaintiff an October 21, 2005 "Status Report" (14th instance of mail fraud) acknowledging "the continued delay," and the absence of any permit for the sprinklers and demanding yet more funds for permit fees and change orders, all inconsistent with the May 2005 Agreement.

By letters dated September 16, 2005 and September 26, 2005 (15th/16th instances of mail fraud) on the letterhead of non-entity "WBM International Development LLC", using GMAC's address and phone,  and the fax and email address of William B. May, defendants through George F. Donohue (as "President") wrote to plaintiff and complained that $928,448 had been requisitioned on August 9, 2005, but not been paid until August 30th and September 12, 2005, demanded another $470,124.00 and further stated that the Project would be delayed for non-payment of governmental fees (an obligation that WBM expressly was responsible for under

Article 4 of the May 2005 Agreement). George F. Donohue asked that Air China countersign the September 16, 2005 letter to indicate its agreement, but this request was refused, and indeed plaintiff orally and by letter dated September 26, 2005, complained about the costly delays.

By email dated August 16, 2005 (17th instance of mail fraud), Nelson Li again fraudulently represented that WBM Development was the General Contractor and demanded yet more money for work on the Air China Project.

By correspondence, dated July 13, 2005 and July 20, 2005 (18th/19th instance of mail fraud), again on the letterhead of non-entity WBM International Development LLC, defendants (using George F. Donohue as "President", with a William B. May email address and fax transmittal, and GMAC's address and phone) again fraudulently misled plaintiff into believing that William B. May was behind the Air China Project and that the construction was "moving on smoothly…moving ahead smoothly, we are on our schedule…."

Further, although the May 2005 Agreement expressly required the named contractor (non-entity "WBM International Development LLC") to provide liability insurance, defendants, even after due demand (including correspondence dated July 1, 2005), failed to do so.

The defendants' "accounting" records relating to the Project revealed payments to a defunct corporation (New Ha Ha Construction Inc.) and payments in excess of $1 million to companies (i.e., TCC Interiors, Ltd. and JMK Construction Group, Ltd.) owned and controlled by Jay Kopf.

Defendants' "accounting" records in connection with the Project:

     (a)  included incomplete checks;

     (b)  included no invoices;

(c) showed duplicate payments to defendants TCC Interiors, Ltd.;

(d) show what later proved to be defendants' conversion; and

(e) were faxed to plaintiff from "William B. May" on September 29, 2005, again creating the false and fraudulent impression that that company was behind the Project.

Defendants further faxed fraudulent bills using the William B. May name and fax on May 22, 2006, August 5, 2005, September 16, 2005, September 21, 2005 and January 4, 2006 (20th, 21st, 22nd 23rd and 24th instance of mail fraud).

By letter dated May 19, 2005 (25th instance of mail fraud), designed again to fraudulently induce plaintiff to do business with defendants, George F. Donohue, on the letterhead of the fictitious "WBM International Development LLC" (still using GMAC's address, phone and fax numbers) made comments to the proposed agreement, at all times referring to the fictitious entity as "the contractor" and falsely claiming that "[o]ur profit for this project is very low."

Plaintiff's representatives met with George F. Donohue and Nelson Li in New York City on May 23, 2005 to discuss the proposed May 2005 Agreement and the above misrepresentations were again reiterated at that time.

Following a March 28, 2005 at William B. May's offices at 575 Madison Avenue in New York City, by letter dated March 29, 2005 (26th instance of mail fraud) on the letterhead of the fictitious "WBM International Development, LLC" George F. Donohue (as purported "President") and using the email address of William B. May falsely represented to plaintiff as follows:

"Our price will be an all inclusive price.  We will deliver a turn-key project to you;" and

"We gave you a very low bid price on March 4, 2005…Now, I further lower our price by taking some money from our fee…However, I promise that we will work with you and your architects to find the ways to save you money and refund the saved money (sic) to you during the construction. Now our new price is $3,960,000."

Included with this letter was a bid breakdown in the name of the fictitious "WBM International LLC, using GMAC's office address (505 8th Avenue, 8th Floor, New York, New York 10018).

Only on September 27, 2005 did defendants finally disclose to plaintiff the existence of WBM-JMK International LLC (d/b/a WBM).   In response, by letter dated November 3, 2005 addressed to George F. Donohue at the office of William B. May, 575 Madison Avenue, New York, NY, plaintiff asserted that the May 2005 Agreement was with WBMID and that "WBM-JMK International LLC" was not a party to the contract.  Defendants never advised that they had secretly filed an Assumed Named Certificate for the company and that they were one and the same.  Instead, they continued to fraudulently conceal that fact from plaintiff.

On May 31, 2005, Jay Kopf signed and mailed a fraudulent application for a building permit for the Air China Project to be submitted to the City of Long Beach, Department of Buildings.  On the application, he listed the contractor as JMK Construction (not WBM International Development LLC, nor WBM-JMK Development LLC (d/b/a WBM) and included JMK Construction Ltd.'s address and phone number.  The application (never amended) stated that the **total cost** for the Air China Project would be $**2,440,000**.  (This was on the very same date that WBM International Development LLC as the purported "contractor", with George F.

Donohue as "President", signed the May 2005 Agreement with plaintiff setting an all-inclusive Project cost of over $3,950,000.).

Defendants never provided plaintiff with a Certificate of Insurance as they had promised to do in the May 2005 Agreement (§§ 7.2 and 11.2.1).

It was not until May 31, 2005 that the application for a building permit was correctly filled out by defendants.

By fax transmittal entitled "William B. May Commercial" sent on August 11, 2005, George F. Donohue using the "WBM International Development LLC" letterhead (with GMAC's address and phone and William B. May's email address) requested that plaintiff pay $928,448.00, a demand plaintiff complied with, again having been defrauded into believing that William B. May was behind the Project.

Even the defendants' September 29, 2005 "accounting" records transmitted by Nelson Li was sent to plaintiff from the William B. May fax number.

When plaintiff complained to George F. Donohue and WBM that Jay Kopf and JMK Construction Ltd., as purported sub-contractor, should not be holding up the Project for more money, defendants failed to respond and continued to fraudulently conceal from plaintiff that that <u>individual</u> and entity in fact was (a) the actual general contractor and (b) had an ownership interest in the nominal "contractor" WBM.

Even after plaintiff had paid for more than defendants had materially warranted would be the entire Project's cost, JMK Construction Group Ltd. and Jay Kopf (all while continuing to fraudulently conceal the facts they were in fact the true general contractor <u>and</u> part owner in WBM-JMK) continued to demand more and more money ("we are not your bank" "so

it is up to you" "if there is no money, there is no materials, if no materials there is no man power".).

Defendants negligently allowed the Building Department permit for the Air China Project to lapse, unlawfully continuing to work without any permit in place. It was only after violations were issued that defendants sought to renew the permit and demand another $4,000 from plaintiff to do so (in contravention of the express terms of the May 2005 Agreement).

Jay Kopf and JMK Construction Group Ltd. made repeated demands for payment (i.e. emails dated 11/13/06 "we are looking for funding") totally inconsistent with the turn-key cost for the Project that had been guaranteed by defendants.

The defendants also violated numerous provisions of the City of Long Beach Code of Ordinances, including (a) <u>LICENSING</u>, Chapter 14, Article II §§ 14-31, 14-15, 14-24, 14-35, 14:38 (requiring a contractor to be licensed, rendering the absence of licensed work criminal and making a license nontransferable); (b) <u>BUILDING CODE</u>, Chapter 7, Article I §§ 7.6 and 7-38 (requiring all work be performed only by a licensed contractor and Chapter 7, Article II, Div 3 § 7.34 (requiring that a valid permit be in place).

Defendants at all times fraudulently made it appear to plaintiff that JMK Construction Group Ltd and TCC Interiors, Ltd. were arms length sub-contractors, when in fact they were owned and controlled by Jay Kopf, "the contractor" and principal in WBM ( and in fact the only individual even licensed by the City of Long Beach for this Project).

As a proximate result of reasonably relying upon the defendants' knowingly false representations, plaintiff paid yet more money to defendant WBM, which then shared those ill-gotten proceeds with Nelson Li, John A. Varacchi, George F. Donohue, Jay Kopf and JMK Construction Group Ltd., and TCC Interiors, Ltd.

According to the defendants' own "accounting" records, their alleged subcontractor ("New Generation – Michael") entered into an agreement with "JMK Construction Group and WBM International Development" as general contractor. Other alleged subcontractors (i.e. "New Ha Ha Construction Inc. – which is a non-entity) signed lien waivers describing their agreement with "tenant WBM International Development", and inexplicably indemnifying "JMK and Owner."

One supposed "subcontractor" (TCC Interiors, Ltd.) has Jay Kopf as its Chairman or Chief executive Officer and his address as its official address in New York.

Throughout the parties' dealings, Jay Kopf falsely and fraudulently referred to "WBMI" as the contractor, even stating in writing that "the boys at WBMI must make a decision how far they are willing to go without additional funding…" when he knew that JMK Construction Group, Ltd. was in fact the true contractor and he was an undisclosed principal of the nominal contractor.

Prior to issuance of the building permit, defendants dealt with the City of Long Beach using the William B. May name, but the City's mail to that entity relating to the permit application (no. 0096944 submitted 9/14/04) was simply returned as undeliverable.

Examples of defendants' fraudulent, criminal use of the "WBM International Development LLC" or "WBMID" name and communications with plaintiff without complying with N.Y.G.B.L. § 130 and yet more instances of mail fraud include:

> (a) January 4, 2006 letter from JMK Construction Ltd. and Jay Kopf;
>
> (b) January 10, 2006 letter from Nelson Li, with copies to George F. Donohue and Jay Kopf;

(c) June 26, 2003 Overhaul Plan and discussions relating to
same;

(d) February 2004 Professional Assessment Plan and
discussions relating to same;

(e) Discussions and meetings on January 12, 13, 16, 2006
and June 6, 2006 and resultant documents involving
plaintiff's officials and defendants WBM-JMK, John A.
Varacchi, Jay Kopf, George F. Donohue and Nelson Li
and

(f) Applications for payment submitted to plaintiff listing
"WBM International Development LLC" or "WBMI
International" as the contractor.

Even as late as October 4, 2006, in another instance of mail fraud, Nelson Li
represented in writing that George F. Donohue was "President" of WBMI International
Development LLC". In fact, no such entity even existed.

Meetings were held at plaintiff's site in Long Beach, New York on January 12
and 13, 2006 and defendants (still using the false "WBM International Development LLC"
name) demanded still more money and new economic terms and continued to falsely indicate
that WBM was the general contractor on the Air China Project.

On June 6, 2006, at another meeting in plaintiff's New York offices, Nelson Li,
John A. Varacchi, Jay Kopf and George F. Donohue appeared (from non-entity "WBM
International LLC") and claimed problems with obtaining a Certificate of Occupancy and
fraudulently induced plaintiff to sign a June 26, 2006 modification, pursuant to which another
almost $300,000 was paid.

Although by October 19, 2006 plaintiff had paid WBM 95% of all amounts set
forth in the May 2005 Agreement, only 70% of the work had been completed, and JMK
Construction and Jay Kopf were now stating it would not be completed until March 2007.

The failure to timely complete the work was in violation of defendants' written assurances in May 2005 and later on October 4, 2006 that the Air China Project would be completed by November 30, 2006.  The May 2001 and October 2006 letter constituted mail fraud.

The GMAC defendants faxed fraudulent bills for defendants (on "WBM International Development LLC" letterhead) on various dates, including March 2, 2006, March 7, 2006, March 9, 2006, March 13, 2006, March 23, 2006, June 28, 2006,  July 31, 2006, August 1, 2006 and October 3, 2006.  These eight demands each constituted mail fraud.

On September 7, 2006, defendants Nelson Li, acting on behalf of WMB/JMK International LLC (d/b/a/ WBM), appeared at the New York offices of plaintiff and was questioned regarding WBM.  Again, he lied about WBM and its background.  (Plaintiff still had never been told of WMB/JMK International LLC or Jay Kopf's involvement in that company or the surreptitious filing of the Certificate of Assumed Name  post-May 2005 Agreement.)

On January 4, 2006, defendants Jay Kopf and JMK Construction Group, Ltd. wrote to plaintiff stating that "We are working closely with the Nassau County Fire Marshall's Office" and "We look forward to securing a new Certificate of Occupancy" and "[t]he Air China Project continues to move forward." This too was false, and constituted mail fraud.

Due to defendants' negligence and breach of their obligations, they also allowed the building permit for the Air China Project to lapse on July 22, 2006, resulting in the issuance of Building Code Violations.  Defendants did not even seek to reinstate or renew the expired permit from July 22, 2006 until October, 2006.

George F. Donohue and Nelson Li met with plaintiff's officials on September 7,

2006 and committed to complete the Project within thirty (30) days.  In reasonable reliance upon that false promise, another $100,000 was paid by plaintiff, but defendants against did nothing to complete the Project.

Defendants, by letter mailed October 31, 2006 from Jay Kopf and JMK Construction Group Ltd., waited until November 8, 2006 to pay the $4,000 renewal fee and thereby renew with the City of Long Beach the long-expired permit for the Air China Project. That negligent failure resulted in a Building Code Violation (§ 7-34A) issued October 11, 2006 by the City of Long Beach.

In other words, defendants unlawfully performed construction without the necessary permit in place from July 23, 2006 until November 8, 2006.

On May 24, 2006, in the United States District Court, Southern District of New York (Case no. 06 CV 3924) (Judge Sprizzo), William B. May Jr. Family Limited Partnership, as plaintiff, sued GMAC Real Estate, LLC, George F. Donohue, Christian M. Deutsch, William B. May Commercial Inc., 1051 Brant Holding Company LLC (named after Deutsch's residential address) and others, all as defendants, claiming that they had used the William B. May name without consent, approval or authorization in violation of the Lanham Act, the parties' contracts, and the common law of false advertising and unfair competition.

Plaintiff demanded an injunction.  All defendants appeared by the same counsel and an injunction against all defendants, baring their use of the "William B. May" name, quickly was issued as part of a settlement.  Prior to the Federal Court injunction, Christian M. Deutsch had used the William B. May trade name and mark, pursuant to a non-exclusive license agreement with trademark owner William B. May, Jr. Family Limited Partnership. That license, later terminated, did <u>not</u> cover real estate development.  By License Agreement dated October 1,

2003, those rights were assigned exclusively to another entity in which neither Christian M. Deutsch nor his cohorts (George F. Donohue, Jay Knopf, Nelson Li and John A. Varacchi) were involved.

      In contravention of the Federal Court injunction, George F. Donohue continues to brazenly advertise himself as a Trump Exp/Real Estate & Wealth Expo exhibitor as "President" of the "distinguished" real estate company, William B. May International who (presumably as an expert) will cover "How to Avoid Scams."  He operates out of GMAC's New York offices.

      By November 2006, defendants had essentially abandoned the Project, as Jay Kopf and JMK Construction, the supposed "sub-contractors", kept holding plaintiff up for more money.

      On March 1, 2006, defendants through George F. Donohue promised that the Air China Project would be completed by August 31, 2006.  It was and still is not.  Instead, on March 9, 2006, defendants through George F. Donohue demanded yet more money and change orders.

      On October 4, 2006, George F. Donohue fraudulently wrote to plaintiff and did so as "President" of "GMAC Real Estate International Group" at 505 8th Avenue, 8th Floor, New York, NY, stating that "[y]our Project is important to us…"  The only thing that was "important" was to try to fleece more money from plaintiff.

      Further, Jay Kopf's general contractor's license (no. 2581/07) expired April 30, 2007 (yet he and the other defendants continued demanding payments) and the required Workers' Compensation coverage he obtained (policy EC007088) expired April 1, 2006 and the required general insurance (policy GLW782413-0/000) expired July 23, 2005.  Thus, defendants

unlawfully acted and were paid as contractors in the City of Long Beach without the required license and insurances.

As part of the scheme to defraud plaintiff and coerce yet more money, defendants created another "agreement" and faxed it from defendants GMAC Real Estate IPG on April 27, 2007 ("the April Agreement") following a February 28, 2007 meeting at Craven Corporation's offices.

In the February 28, 2007 meeting and the April Agreement, signed by George F. Donohue as "President" of WBM International Development LLC, defendants continued their pattern of fraud by:

> (a) Referring to "WBM International Development LLC" as "general contractor";
>
> (b) Promising to obtain the required Certificate of Occupancy and complete the Project in its entirety by June 18, 2007; and
>
> (c) Reiterating the terms and conditions of the fraudulent May 31, 2005 Agreement.

Even as late as March 2007, at that point unlicensed JMK and Jay Kopf demanded a payment of $200,000, but still did not complete the Project.

Defendants' fraud continues to date. By letter dated September 12, 2007 (but delivered two weeks later) George F. Donohue alleged that plaintiff somehow was guilty of "breech" (sic) of agreement with the non-entity "WBM International Development LLC" and demanded $329,411 "immediately". George F. Donohue made this demand on the letterhead of the non-entity, from the office of Christian M. Deutsch and GMAC and copied Nelson Li, John

A. Varacchi and Jay Kopf. Later, on December 26, 2007, defendants WBM International Development and Jacob Kopf unlawfully filed a lien in that amount against the Property.

By letter, dated July 24, 2007, plaintiff demanded of Nelson Li, George F. Donohue, John A. Varacchi, WBM and GMAC a full accounting. To date, none has been provided.

Defendants failed to adequately respond to written requests made on behalf of plaintiff on July 24 and 25, 2007, August 14, 2007 and October 17, 2007 for copies of invoices, checks and other vital documentation regarding the Project.

By November 22, 2006, defendants had demanded $424,355 over and above the total price $3,950,000 they had set forth in the May 2005 Agreement.

Each payment was made to non-entity "WBM International Development LLC" and then secretly deposited (without endorsement) by defendants. Defendants repeatedly were overpaid; as early January 2007, there had been overpayments in excess of $250,000.

The name "WBM-JMK International LLC (d/b/a/ WBM) was revealed only when Defendants under threat of litigation in July 2007 finally provided to plaintiff partial copies of some checks ostensibly made to subcontractors.

Defendants secretly deposited and disbursed plaintiff's funds into an account entitled "WBM-JMK Development LLC" (which plaintiff first discovered in August 2007). Of course, that entity (secretly formed January 2005) was neither a signatory to any agreement with plaintiff, nor affiliated with William B. May. By written request, dated August 4, 2007, to George F. Donohue, John A. Varacchi, Jay Kopf and GMAC, plaintiff demanded an explanation, but to date has received none.

By letter (copied to John A. Varacchi) dated July 24, 2007, George F. Donohue

and WBM were ordered to stop all work on the Project.  Finally, by letter dated August 14, 2007, the relationship was terminated and demand for the return of $282,710.73 belonging to plaintiff was made, which defendants ignored.

Throughout their dealings with plaintiff, each of the individual defendants falsely and fraudulently represented that each was a legitimate representative of William B. May.

Defendants are "persons" within the meaning of 18 U.S.C. § 1961(3) because they are individuals or entities capable of holding legal and beneficial interests in real property. Defendants were at all times material to this action employed by or associated with the enterprise described above, the activities of which affect interstate and foreign commerce.  Although defendants participated in the enterprise and were part of it, defendants also have an existence separate and distinct from the enterprise.  The enterprise has an ascertainable structure separate and apart from the pattern of racketeering activity in which defendants engaged.

Defendants participated in the fraudulent schemes described above and repeatedly use or caused the use of the mails and interstate wires in furtherance of these schemes in violation of 18 U.S.C. § 1341 (mail fraud) and 18 U.S.C. § 1343 (wire fraud).  These mailings and wirings include, but are not limited to each and every one of the mailings and writings described above.

Each of the above-described violations by defendants of the mail fraud and wire fraud statues, 18 U.S.C. §§ 1341 and 1342, constituted an instance of racketeering activity as defined in 18 U.S.C. §1961(1).  Further, by depositing plaintiff's monies, defendants committed bank fraud.

The multiple acts of racketeering activity which were committed in the course of

related fraudulent schemes over a substantial period of time, the last of which occurred within ten years after the commission of a prior act of racketeering activity, constitute a "pattern of racketeering activity", as defined in 18 U.S.C. §1961(5).

Defendants conducted and participated in the conduct of the affairs and the operation and management of the enterprise through the above-described pattern of racketeering activity in violation of 18 U.S.C. §1962(c).

Plaintiff has been injured in its business and property as direct and proximate result of the violations of 18 U.S.C. § 1962.  Therefore, plaintiff demands judgment against defendants jointly and severally for threefold the damages suffered (in excess of $6 million), plus interest, costs, reasonable attorneys' fees and such other and further relief as the Court deems just and proper.

Defendants willfully combined, conspired and agreed to violate 18 U.S.C. § 1962(c); that is, to conduct or participate directly or indirectly in the conduct of the affairs of the enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(d).  This racketeering activity consisted of repeated violations of the federal mail fraud and wire fraud statues.

Defendants knew of, agreed to and acted in furtherance of the overall objective of the conspiracy by, among other things, providing false documents and false information to plaintiff to fraudulently obtain $4 million and by asserting sham legal positions to prevent recovery of the funds my plaintiff and to unlawfully obtain additional funds.

Plaintiff has been injured in its business and property as a direct and proximate result of the conspiracy to commit the predicate acts of mail fraud and wire fraud in violation of 18 U.S.C. § 162(d).  Therefore plaintiff demands judgment against defendants jointly.   Please

also see each preceding paragraph of this Civil RICO Statement which is respectfully hereby incorporated by reference.

**(c)     List Other Wrongdoers, Other Than the Named Defendants, and Describe the Alleged Misconduct of each Wrongdoer**

Other wrongdoers, other than the named defendants, include Mary Hsu who, upon information and belief, notarized fraudulent Waivers of Lien purportedly signed by purported sub-contractors of defendant, WBM-JMK Development LLC, and who also notarized a fraudulent, exaggerated lien in the amount of $329,411.00, signed and mailed by defendant Jay Kopf on behalf of WBM-JMK Development LLC, dated December 26, 2007.  The defendants failed to complete the Project, with plumbing, electric and fire alarms not even connected.  The cost of completion will likely exceed $400,000, this after defendants were already paid at least $2 million over what the entire Project reasonably should have cost.

As a result of defendants' misconduct and unreasonable delays in completing the Project, the Property remained unusable for almost three (3) years, and plaintiff has been forced to house its flight crew in hotels (at a cost of more than $250,000) all while paying hundreds of thousands of dollars for taxes and utilities for the vacant Property.

As a proximate result of the wrongdoing committed by defendants Jay Kopf, Nelson Li, George F. Donohue, John A. Varacchi, JMK Construction Group Ltd. and WBM-JMK, plaintiff was forced to engage the services of counsel and of Craven Corporation, a construction manager located at 150 East 42nd Street, New York, New York.

As a proximate result of defendants' fraud and misconduct, plaintiff was caused to pay Craven Corporation $136,055.46 and attorney Eliot Clauss $57,105.06, plus an additional $74,000 for utility charges and more than $103,000 for security services.

As a proximate result of defendants' misconduct, plaintiff paid $200,025 for the architectural services of IA (recommended by George F. Donohue and Nelson Li), and now faces fines of up to $10,000 a day and a bogus lien in the amount of $329,411 filed by defendants on December 26, 2007.

Pursuant to applicable law (New York Lien Law, New York General Business Law Section 349 and RICO) defendants are liable for treble damages and attorneys' fees. Pursuant to RICO, and the common law of fraud and breach of fiduciary duty of, defendants are also liable for punitive damages. Please also see each preceding paragraph of this Civil RICO Statement which is respectfully hereby incorporated by reference. Please also see each preceding paragraph of this Civil RICO Statement which is respectfully hereby incorporated by reference.

**(d)      List the Victims and State How Each Victim Was Injured**

The victims include plaintiff AIR CHINA, who was damaged as alleged in the Complaint. Specifically, plaintiff has been injured in its business and property as direct and proximate result of the violations of 18 U.S.C. § 1962. It has paid millions more than it should have for a Project still not complete; it faces fines from the City of Long Beach of up to $10,000. a day and its Property now is encumbered with a $329,411.00 fraudulent lien. Please also see each preceding paragraph of this Civil RICO Statement which is respectfully hereby incorporated by reference.

**Describe the alleged injury to business or property.**

The defendants failed to complete the Project, with plumbing, electric and fire alarms not even connected. The cost of completion will likely exceed $400,000, this after defendants were already paid at least $2 million over what the entire Project reasonably should have cost.

As a result of defendants' misconduct and unreasonable delays in completing the Project, the Property remained unusable for almost three (3) years, and plaintiff has been forced to house its flight crew in hotels (at a cost of more than $250,000) all while paying hundreds of thousands of dollars for taxes and utilities for the vacant Property.

As a proximate result of the wrongdoing committed by defendants Jay Kopf, Nelson Li, George F. Donohue, John A. Varacchi, JMK Construction Group Ltd. and WBM-JMK, plaintiff was forced to engage the services of counsel and of Craven Corporation, a construction manager located at 150 East 42nd Street, New York, New York.

As a proximate result of defendants' fraud and misconduct, plaintiff was caused to pay Craven Corporation $136,055.46 and attorney Eliot Clauss $57,105.06, plus an additional $74,000 for utility charges and more than $103,000 for security services.

As a proximate result of defendants' misconduct, plaintiff paid $200,025 for the architectural services of IA (recommended by George F. Donohue and Nelson Li), and now faces fines of up to $10,000 a day and a bogus lien in the amount of $329,411 filed by defendants on December 26, 2006.

Pursuant to applicable law (New York Lien Law, New York General Business Law Section 349 and RICO) defendants are liable for treble damages and attorneys' fees. Pursuant to RICO, and the common law of fraud and breach of fiduciary duty of, defendants are also liable for punitive damages.

Plaintiff thereby has been injured in its business and property as a direct and proximate result of the conspiracy to commit the predicate acts of mail fraud and wire fraud in violation of 18 U.S.C. § 162(d).

Defendants also have violated New York General Business Law § 349, by

engaging and continuing to engage in practices that are materially deceptive and misleading, causing injury to plaintiff and to the general public.

Defendants' fraud on the public now is based primarily from GMAC's 505 8th Avenue offices, where George F. Donohue also has set up "International Properties Group Inc." and "Real Estate Capital of America, Inc.", two New York corporations designed to mislead the public into believing that GMAC IPG New York is anything other than a shell and that Nelson Li and George F. Donohue are anything other than scam operators.

Today, the message on the answering machine for WBM's supposed telephone number [(212) 620-2611] is answered by "George Donohue, President of GMAC International Property Group."

To this day, calls to the supposed phone number of WBM are answered at GMAC's office by Christian M. Deutsch as follows: "This is Chris" and he then fraudulently directs calls for WMB as follows: "They moved to 575 Madison Avenue a while ago." Upon information and belief, the GMAC defendants and Christopher Deutsch (a) knew or reasonably should have known of defendants' fraudulently activities conducted out of 505 8th Avenue; and (b) were paid, directly or indirectly, for permitting those defendants to use the 505 8th Avenue facility as a base of operations for the fraud. (Meanwhile, the New York Secretary of State still lists as an active corporation "William B. May International Inc.", with Christopher Deutsch as Chairman and George F. Donohue as principal Executive Officer.) Please also see each preceding paragraph of this Civil RICO Statement which is respectfully hereby incorporated by reference.

**(e) Describe in Detail the Pattern of Racketeering Activity or Collection of Unlawful Debts for Each RICO Claim. The Description of the Pattern of Racketeering Shall**

**(1)      List the predicate acts and the specific statutes which were violated:**

Each of the above-described violations by defendants of the mail fraud and wire fraud statues, 18 U.S.C. §§ 1341 and 1342, and that bank fraud statute, constituted an instance of racketeering activity as defined in 18 U.S.C. §1961(1).

Plaintiff has been injured in its business and property as a direct and proximate result of the predicate acts and the conspiracy to commit the predicate acts of bank fraud, mail fraud and wire fraud in violation of 18 U.S.C. § 1962(d).

Description of Acts

In June of 2003, plaintiff solicited the services of the very well established real estate company, William B. May Company, which had been a fixture in the real estate community in New York since 1866.  In June 2003, plaintiff specifically requested that the company submit a proposal for the renovation of plaintiff's Property at 485 West Broadway, Long Beach, New York.  In response to plaintiff's request for such a proposal, defendant George F. Donohue wrote to plaintiff on June 12, 2003 on the letterhead of William B. May Company and as purported "President" of William B. May Company, stating as follows:

> "We are honored to have this opportunity to provide our expertise and service to you.  My associates and I are reviewing the information about the property, discussing it with different parties and performing our due diligence.  We will send you the proposal when we complete it.
> We look forward to working with you."

By this letter, with which William B. May's glossy brochure was enclosed, defendants' scheme to defraud plaintiff began.  Ultimately, as described below, defendants baited plaintiff with the false and material illusion that William B. May Company would be involved and ultimately

created a shell company, totally unrelated to William B. May Company, as part of an elaborate criminal bait and switch scheme designed to defraud plaintiff.

- As part of their scheme to defraud plaintiff, defendants initially used the name of an inactive, dissolved corporation -- William B. May International Inc., which had not incorporated until September 7, 1999 and which had been dissolved by New York State Proclamation issued by the Secretary of State on June 25, 2003 for non-payment of franchise taxes. That company remained dissolved until defendants George F. Donohue and Christian M. Deutsch sought to annul the dissolution on April 7, 2004. Well before then, however, on June 26, 2003, while William B. May International Inc. still was dissolved, defendants Nelson Li, George F. Donohue and Christian M. Deutsch, as part of their scheme to defraud plaintiff, submitted to plaintiff a written proposal for hotel management of the plaintiff's Property, signed by George F. Donohue as President, falsely and fraudulently claiming that:

   (c)  the company had been incorporated in 1866, and had more than 200 real estate professionals; and

   (d)  Christian Deutsch was Chief Executive Officer, George F. Donohue was President and Nelson Li was Managing Director.

Those and other portions of this document were knowingly false when made and were used successfully to deceive plaintiff into doing business with defendants.

- Also on or about June 26, 2003, defendant Nelson Li acting on behalf of himself and individual defendants Jay Kopf, John A. Varacchi and George F. Donohue, in an effort to convince plaintiff to hire defendants to develop plaintiff's Property ("the Air China Project") at 485 West Broadway, Long Beach, New York presented plaintiff with a document entitled "Over-all Overhaul Plan" ("the Overhaul Plan").

  The Overhaul Plan falsely and fraudulently indicated that:

  (d) It was being submitted by an entity named "WBMI" whose President was defendant George F. Donohue;

  (e) WBMI was established in 1866 and was a "full service real estate company with the longest history in the United States" and was providing its services and "137 years of real estate experience" and its "credibility and business reputation" were at the service of the Air China Project; and

  (f) A second entity known as "WBMID" (which in fact did not even exist) was a "diversified and "full service" "wholly owned subsidary of WBMI" and WBMID undertake to "work continuously for the Project."

Each and every one of these statements, as well as others in the Overhaul Plan, was knowingly and intentionally false when made and was reasonably and detrimentally relied upon by plaintiff in deciding to do business with defendants, Nelson Li, John A. Varacchi, George F. Donohue and Jay Kopf.

- In February 2004, Nelson Li, acting on behalf of himself and Jay Kopf, John A. Varacchi and George F. Donohue, presented plaintiff with a document entitled "Professional Assessment Report" ostensibly prepared by "WBMI established 1886". Defendants Nelson Li and George F. Donohue in February 2004 also

misrepresented to plaintiff that Burton Roslyn was a "Senior Vice President of Construction" for William B. May Commercial Real Estate" and would be involved in the Project.  In fact, he never held such a post and never was involved in the Project.

- By fax transmittal dated September 23, 2004, defendants continued to deceive plaintiff into believing that William B. May Company was involved in the Air China Project, including the Building Department Permit application filed with the City of Long Beach.

- Although defendants, on September 13, 2004, submitted the Building Department permit application (no. 0096944) with the City of Long Beach to commence the Project, by January 6, 2005 the application still had not been approved because no defendant was actually licensed to perform general contracting services by the City as required.  Defendants knew or should have known of this requirement and, in any event, were notified of their failure on or about January 6, 2005, but still no license was obtained until July 23, 2005.

    - The February 2004 Professional Assessment Report mailed by defendants (through Nelson Li) to plaintiff, falsely and fraudulently indicated that:

        (e)   WBMI (which in reality was dissolved) was offering its "best services for optimum interest of Air China";

        (f)   WBMI was established in 1866 and was a full service real estate company with the largest history in the United States including over 200 real estate specialists;

        (g)   An entity known as "WMID" (which in fact did not exist) was a "wholly – owned subsidiary of WBMI" and WBMID would

41

undertake to "work continuously for the project;" and

    (h)   WBMI's principals included Nelson Li as Executive Director, John A. Varacchi as Vice President, Jay Kopf as Senior Vice President and Burton Roslyn as Senior Vice President.

- The Professional Assessment Report mailed by defendants (through Nelson Li) to plaintiff ostensibly for "WBMI established 1866" further falsely and fraudulently represented:

        (h)   "[s]ince the summer of 2002, our professional staff and local building department and other officials have carried out meetings and talks";

        (i)   "[a]nother important benefit arises from the good relationship between our company and the Office of the New York Governor";

        (j)   **"Our commitment to Air China:"** [w]e also have a good cooperative relationship with the local electric power department";

        (k)   "[w]e guarantee best services for the optimum interests of Air China";

        (l)   "[w]e have already organized contingents of our best professional people to put their expertise at the service of this Project.  We shall intervene in the Project to ensure its success";

        (m)  that defendant George F. Donohue had previously been in charge of NY – NY Port Authority's 20 million square feet (in fact he had been forced to resign under allegations of criminal misconduct) and that he had a Ph.D. in "international business" (Pace University has no record of any such alleged degree); and

        (n)  that Burton Roslyn a registered designer, was Senior Vice President on the Project (in fact he only attended a single meeting at the early stages with plaintiff).

- Each and every one of these statements, as well as others in the Professional Assessment Plan, was knowingly and intentionally false when made and was reasonably and detrimentally relied upon by plaintiff in deciding to do business with defendants Nelson Li, John A. Varacchi, George F. Donohue, Jay Kopf and the later-formed defendant WBM.

- On March 4, 2005, in violation of New York General Business Law § 130 (a crime), and as part of their scheme to defraud defendants, mailed a fraudulent bid for the Air Chine Project. The bid (submitted in English and in Chinese language versions) was on letterhead of non-entity "WBM International Development LLC" that used GMAC's address and phone number (WBM never had a separate phone or its own address) and William B. May's email address and fax numbers. It was signed by George F. Donohue as "President" and falsely advised:

  iv.    Our company….started efforts on this project in July 2002. The executives and professionals of our company have been to the site many times….

  v.     Our company, which was established in 1866, is the oldest real estate company in the United States. We have been involved in many real estate projects…

  vi.    ….In the past years, we have worked with many Chinese companies.

         We will provide all of our expertise of 139 years of real estate services in the United States to serve Air China in its Long Beach project.

In fact, the record establishes that at that time:

     1. There was no "WBM International Development LLC" in existence; and

     2. On January 13, 2005, less than two months before the bid, defendants had only just secretly formed a New York limited liability company "WBM-JMK Development LLC", a name never disclosed to plaintiff (and proceeded to use an unauthorized alias, "WBM International Development LLC").

- The defendants' bid breakdown for the Air China Project was faxed on March 31, 2005 by George F. Donohue using the fictitious name "WBM International Development LLC" (when in reality no such company existed) and using the William B. May fax number and name.

- By letters dated March 15 and 24, 2005, defendants falsely, by George F. Donohue (using the William B. May email address and the phony "WBM International Development LLC" name at GMAC's address), represented that the Project would be "turn-key" with an all-inclusive price of less than $3,900,000.

- By letter dated March 15, 2005, Nelson Li wrote to plaintiff regarding leasing the roof of the building involved in the project, and he did so as purported "managing director" William B. May Commercial Real Estate.

- On December 29, 2005, using the GMAC address, and on "William B. May Commercial Real Estate" letterhead, including the William B. May website address, George F. Donohue wrote to plaintiff falsely and fraudulently stating:

> "William B. May Commercial Inc. is
> now GMAC Real Estate IPG
>
>     *     *     *     *
>
> Our name will change, <u>but our
> commitment to serve our customers
> is as strong as ever</u>."(emphasis in
> original).

- Defendants never retracted or amended this false and fraudulent statement, even after George F. Donohue, GMAC and Christian M. Deutsch each had been sued by the William B. May family in this Court and consequently each had become subject to a Federal Court injunction barring them from any commercial use of the "William B. May" name.

- As part of their scheme to defraud, the defendants created a purported contract dated May 31, 2005 ("the May 2005 Agreement") listing the fictitious name and entity "WBM International Development LLC" as contractor (so as to deceive plaintiff into believing that a William B. May company stood behind the Project), with George F. Donohue signing, under oath, as "President" of that purported company operating out of 505 Eighth Avenue, New York, New York (which in reality was the address for defendants GMAC and Christian M. Deutsch).

- Prior to defendants providing plaintiff with the May 2005 Agreement, defendants Nelson Li also gave plaintiff a business card identifying himself as "Managing Director" of "William B. May International – Real Estate since 1866" and "WBM – Real Estate since 1866" with the "corporate

headquarters" of 575 Madison Avenue, New York, NY, once again reinforcing the fraudulent impression that that venerable company was behind the Project.

- In reasonable reliance upon the fraudulent promises set forth in all the earlier representations, documents and negotiations, as well as those contained in the May 2005 Agreement itself, plaintiff executed the May 2005 Agreement and made the first two (2) payments, set forth therein, by checks dated June 7, 2005 and June 14, 2005, in the amount of $562,875 and $375,250, each payable to the fictitious "WBM International Development LLC."

- Even eleven days before the May 2005 Agreement was signed, George F. Donohue fraudulently represented to plaintiff in both English and Chinese (translated by defendant Nelson Li), that "[o]ur reputation has been built on 139 years of keeping our clients happy and satisfied…"  He did so on non-entity WBM's letterhead, using the fax number and email address of William B. May and the office address of defendant GMAC.

- The May 2005 Agreement was procured by fraud and was signed by defendant George F. Donohue as purported "President" of  a non-entity, "WBM Development International LLC."

- According to the May 2005 Agreement, George F. Donohue swore that he was then President of "WBM International Development LLC", which in fact was a perjurious statement.

- After defrauding plaintiff into signing the May 2005 Agreement and collecting almost $1 million, defendants Nelson Li, Jay Kopf, George F. Donohue, John A. Varacchi and WBM-JMK now faced a quandary; they had deceived plaintiff into entering into the May 2005 Agreement based upon the fraudulent representations that the contractor was "WBM International Development LLC", a supposedly well established subsidiary of an 1866 company, William B. May Company.  The formation of WBM-JMK in fact did not occur until 2005. The entity known as "WBM-JMK Development LLC" was created by articles of organization filed January 13, 2005 by the law firm of Ballon, Stoll, Bader & Nadler, P.C., which listed no other name for the entity and which placed its sole location for business at the home address of attorney Stephen P. Long in Westchester, New York. (The statutorily required publication did not occur until April 27, 2005.)  Upon information and belief, defendants never intended to do and never did do business at that location or in that county.  It was only as part of their conspiracy to defraud plaintiff, that defendants Jay Kopf, Nelson Li, John A. Varacchi and George F. Donohue caused to be formed a New York limited liability company named "WBM-JMK Development LLC" ("WBM-JMK"). WBM-JMK never had an office, employees, insurance, ties to William B. May or contracting license or experience.

- On the very same day  that their alias certificate was filed (permitting defendants to use the "WBM International Development" name, **provided**

that the other requirements of N.Y.G.B.L. § 130 were satisfied, and in fact they never have been), defendant George F. Donohue as "President" of the non-entity "WBM International Development LLC" fraudulently wrote to plaintiff claiming that:

    (c)  the construction was "moving forward"; and

    (d)  another $7,000 had to be paid (in addition to almost $1 million already paid).

This was followed up by a proposed "contract amendment" in the name of "WBM International Development LLC".

- The Certificate of Assumed Name was signed on <u>June 8, 2005</u> (after the May 31, 2005 Agreement had been signed) by Nelson Li as "Manager" of WBM/JMK International LLC (d/b/a/ WBM).

- The Certificate of Assumed Name falsely and fraudulently represented that the Alias "WBM International Development" would be used only subsequent to the filing (6/15/05) and in New York County only, although the Air China Project was to take place in Nassau County. The Certificate of Assumed Name represented that WBM/JMK Development LLC (d/b/a WBM) had its principal place of business at an address which was in fact the residential address of attorney Stephen A. Long.

- By letter dated September 29, 2005, defendants responded to plaintiff's request for an accounting by providing an incomplete "WBM International

Development LLC" document (using GMAC's address and phone and William B. May's email address) signed by "Managing Director" Nelson Li, which included purported payments to fictitious or inactive companies, a notable absence of invoices, invoice dates or other critical details, and clear indications of double payments and (subsequently discovered) payments to entities controlled by principals of WBM.

- Jay Kopf, through JMK Construction Group Ltd., was WBMID's co-venturer on the Project. The May 2005 Agreement made no mention of any co-venturers. This concealment was fraudulent. It was only on April 30, 2005 that Jay Kopf, using "JMK Construction Group" as the general contractor, finally obtained any license to perform work on the Air China Project. No other defendant ever obtained or even applied for such license. As part of their scheme to defraud, defendants filed on November 8, 2005 a Certificate of Capital Improvement with the New York State Department of Taxation and Finance listing the contractor for the Air China Project as "WBM International Development LLC/JMK Construction") (no such entity even existed), using the GMAC address and including Jay Kopf's signature as "Vice President" who certified that he had entered into a contract for the Air China Project.

- Using the fictitious name "WBM International Development LLC" defendants issued to plaintiff an October 21, 2005 "Status Report" acknowledging "the continued delay," and the absence of any permit for the sprinklers and

demanding yet more funds for permit fees and change orders, all inconsistent with the May 2005 Agreement.

- By letters dated September 16, 2005 and September 26, 2005 on the letterhead of non-entity "WBM International Development LLC", using GMAC's address and phone, and the fax and email address of William B. May, defendants through George F. Donohue (as "President") wrote to plaintiff and complained that $928,448 had been requisitioned on August 9, 2005, but not been paid until August 30th and September 12, 2005, demanded another $470,124.00 and further stated that the Project would be delayed for non-payment of governmental fees (an obligation that WBM expressly was responsible for under Article 4 of the May 2005 Agreement). George F. Donohue asked that Air China countersign the September 16, 2005 letter to indicate its agreement, but this request was refused, and indeed plaintiff orally and by letter dated September 26, 2005, complained about the costly delays.

- By email dated August 16, 2005, Nelson Li again fraudulently represented that WBM Development was the General Contractor and demanded yet more money for work on the Air China Project.

- By correspondence, dated July 13, 2005 and July 20, 2005, again on the letterhead of non-entity WBM International Development LLC, defendants (using George F. Donohue as "President", with a William B. May email address and fax transmittal, and GMAC's address and phone) again fraudulently misled plaintiff into believing that William B. May was behind

50

the Air China Project and that the construction was "moving on smoothly…moving ahead smoothly, we are on our schedule…."

- The defendants' "accounting" records relating to the Project revealed payments to a defunct corporation (New Ha Ha Construction Inc.) and payments in excess of $1 million to companies (i.e., TCC Interiors, Ltd. and JMK Construction Group, Ltd.) owned and controlled by Jay Kopf. Defendants' "accounting" records in connection with the Project:

    (f)   included incomplete checks;

    (g)   included no invoices;

    (h)   showed duplicate payments to defendants TCC Interiors, Ltd.;

    (i)   show what later proved to be defendants' conversion; and

    (j)   were faxed to plaintiff from "William B. May" on September 29, 2005, again creating the false and fraudulent impression that that company was behind the Project.

- Defendants further faxed fraudulent bills using the William B. May name and fax on May 22, 2006, August 5, 2005, September 16, 2005, September 21, 2005 and January 4, 2006.

- By letter dated May 19, 2005, designed again to fraudulently induce plaintiff to do business with defendants, George F. Donohue, on the letterhead of the fictitious "WBM International Development LLC" (still using GMAC's address, phone and fax numbers) made comments to the

51

proposed agreement, at all times referring to the fictitious entity as "the contractor" and falsely claiming that "[o]ur profit for this project is very low."

- Following a March 28, 2005 meeting at William B. May's offices at 575 Madison Avenue in New York City, by letter dated March 29, 2005 on the letterhead of the fictitious "WBM International Development, LLC" George F. Donohue (as purported "President") and using the email address of William B. May falsely represented to plaintiff as follows:

> "Our price will be an all inclusive price. We will deliver a turn-key project to you;" and

> "We gave you a very low bid price on March 4, 2005…Now, I further lower our price by taking some money from our fee…However, I promise that we will work with you and your architects to find the ways to save you money and refund the saved money (sic) to you during the construction. Now our new price is $3,960,000."

Included with this letter was a bid breakdown in the name of the fictitious "WBM International LLC, using GMAC's office address (505 8th Avenue, 8th Floor, New York, New York 10018).

- On May 31, 2005, Jay Kopf signed an application for a building permit for the Air China Project to be submitted to the City of Long Beach, Department of Buildings. On the application, he listed the contractor as JMK Construction (not WBM International Development LLC, nor WBM-JMK Development LLC (d/b/a WBM) and included JMK Construction Ltd.'s address and phone

number. The application (never amended) stated that the **total cost** for the Air China Project would be $**2,440,000**. (This was on the very same date that WBM International Development LLC as the purported "contractor", with George F. Donohue as "President", signed the May 2005 Agreement with plaintiff setting an all-inclusive Project cost of over $3,950,000.).

- By fax transmittal entitled "William B. May Commercial" sent on August 11, 2005, George F. Donohue using the "WBM International Development LLC" letterhead (with GMAC's address and phone and William B. May's email address) requested that plaintiff pay $928,448.00, a demand plaintiff complied with, again having been defrauded into believing that William B. May was behind the Project.

- Even the defendants' September 29, 2005 "accounting" records transmitted by Nelson Li was sent to plaintiff from the William B. May fax number.

- Jay Kopf and JMK Construction Group Ltd. made repeated demands for payment (i.e. emails dated 11/13/06 "we are looking for funding") totally inconsistent with the turn-key cost for the Project that had been guaranteed by defendants.

- Defendants at all times fraudulently made it appear to plaintiff that JMK Construction Group Ltd and TCC Interiors, Ltd. were arms length sub-contractors, when in fact they were owned and controlled by Jay Kopf, "the

contractor" and principal in WBM ( and in fact the only individual even licensed by the City of Long Beach for this Project).

• As a proximate result of reasonably relying upon the defendants' knowingly false representations, plaintiff paid yet more money to defendant WBM, which then shared those ill-gotten proceeds with Nelson Li, John A. Varacchi, George F. Donohue, Jay Kopf and JMK Construction Group Ltd., and TCC Interiors, Ltd.

• According to the defendants' own "accounting" records, their alleged subcontractor ("New Generation – Michael") entered into an agreement with "JMK Construction Group and WBM International Development" as general contractor. Other alleged subcontractors (i.e. "New Ha Ha Construction Inc. – which is a non-entity) signed lien waivers describing their agreement with "tenant WBM International Development", and inexplicably indemnifying "JMK and Owner."

• One supposed "subcontractor" (TCC Interiors, Ltd.) has Jay Kopf as its Chairman or Chief executive Officer and his address as its official address in New York.

• Throughout the parties' dealings, Jay Kopf falsely and fraudulently referred to "WBMI" as the contractor, even stating in writing that "the boys at WBMI must make a decision how far they are willing to go without additional

funding…" when he knew that JMK Construction Group, Ltd. was in fact the true contractor and he was an undisclosed principal of the nominal contractor.

• Examples of defendants' mail fraud and criminal use of the "WBM International Development LLC" or "WBMID" name and communications with plaintiff without complying with N.Y.G.B.L. § 130 include:

    (g) January 4, 2006 letter from JMK Construction Ltd. and Jay Kopf;

    (h) January 10, 2006 letter from Nelson Li, with copies to George F. Donohue and Jay Kopf;

    (i) June 26, 2003 Overhaul Plan and discussions relating to same;

    (j) February 2004 Professional Assessment Plan and discussions relating to same;

    (k) Discussions and meetings on January 12, 13, 16, 2006 and June 6, 2006 and resultant documents involving plaintiff's officials and defendants WBM-JMK, John A. Varacchi, Jay Kopf, George F. Donohue and Nelson Li and

    (l) Applications for payment submitted to plaintiff listing "WBM International Development LLC" or "WBMI International" as the contractor.

• Even as late as October 4, 2006, Nelson Li represented in writing that George F. Donohue was "President" of WBMI International Development LLC". In fact, no such entity even existed.

• GMAC and other defendants committed mail fraud in connection with sending fraudulent bills for defendants (on "WBM International

Development LLC" letterhead) on various dates, including March 2, 2006, March 7, 2006, March 9, 2006, March 13, 2006, March 23, 2006, June 28, 2006,  July 31, 2006, August 1, 2006 and October 3, 2006.

- On January 4, 2006, defendants Jay Kopf and JMK Construction Group, Ltd. fraudulently wrote to plaintiff stating that "We are working closely with the Nassau County Fire Marshall's Office" and "We look forward to securing a new Certificate of Occupancy" and "[t]he Air China Project continues to move forward." This too was false.

- On March 1, 2006, defendants through George F. Donohue fraudulently promised that the Air China Project would be completed by August 31, 2006.  It was and still is not.  Instead, on March 9, 2006, defendants through George F. Donohue demanded yet more money and change orders.

- On October 4, 2006, George F. Donohue wrote to plaintiff fraudulently and did so as "President" of  "GMAC Real Estate International Group" at 505 8th Avenue, 8th Floor, New York, NY, stating that "[y]our Project is important to us…"  The only thing that was "important" was to try to fleece more money from plaintiff.

- As part of the scheme to defraud plaintiff and coerce yet more money, defendants created another "agreement" and faxed it from defendants

GMAC Real Estate IPG on April 27, 2007 ("the April Agreement") following a February 28, 2007 meeting at Craven Corporation's offices.

- In the February 28, 2007 meeting and the April Agreement, signed by George F. Donohue as "President" of WBM International Development LLC, defendants continued their pattern of fraud by:

- Defendants' fraud continues to date. By letter dated September 12, 2007 (but delivered two weeks later) George F. Donohue alleged that plaintiff somehow was guilty of "breech" (sic) of agreement with the non-entity "WBM International Development LLC" and demanded $329,411 "immediately". George F. Donohue made this demand on the letterhead of the non-entity, from the office of Christian M. Deutsch and GMAC and copied Nelson Li, John A. Varacchi and Jay Kopf. Thereafter, on December 26, 2007 a fraudulent lien in that amount was mailed and filed.

- In multiple acts of bank fraud, defendants secretly deposited and disbursed plaintiff's funds into an account entitled "WBM-JMK Development LLC" (which plaintiff first discovered in August 2007). Of course, that entity (secretly formed January 2005) was neither a signatory to any agreement with plaintiff, nor affiliated with William B. May. By written request, dated August 4, 2007, to George F. Donohue, John A. Varacchi, Jay Kopf and GMAC, plaintiff demanded an explanation, but to date has received none.

- The defendants' own "accounting" records revealed payments to a defunct corporation (New Ha Ha Construction Inc.) in excess of $1 million to companies, (i.e., TCC Interiors, Ltd. and JMK Construction Group, Ltd) owned and controlled by Jay Kopf.

- Each and every payment request and change order request was fraudulently made in the name of WMB International Development LLC, using the GMAC address.

- Each and every time defendants represented to plaintiff that "WBM International Development LLC" was the general contractor (and they never stopped doing so), it was a material lie.

- At no time were defendants even lawfully authorized to use the name "WBM International Development LLC" and nevertheless they criminally used that name in dealing with plaintiff and others in contravention of N.Y. General Business Law § 130.

- Throughout the parties' dealings, defendants repeatedly, willfully and materially misrepresented the facts again by falsely advising plaintiff that:

    (a) WBM International Development LLC was a professional U.S. construction company; and

    (b) Nelson Li somehow was involved in all aspects of the Project.

**(2)    State the dates of the participants' involvement in the predicate acts, and the facts surrounding the predicate acts.**

The dates of the participants' involvement in the predicate acts and the facts surrounding those acts are as follows:  The acts are described above.  The timelines involving those acts are as follows:

| | | |
|---|---|---|
| June 13, 2003 | - | Defendants through Donohue write to plaintiff. |
| June 26, 2003 | - | Defendants present plaintiff with "the Overhaul Plan" and send out another fraudulent letter. |
| February 2004 | - | Defendants presented plaintiff with "Professional Assessment Report" ostensibly prepared by "WBMI established 1886". |
| September 23, 2004 | - | Defendants' fax transmittal deceiving plaintiff into believing William B. May Company was involved in the Air China Project. |
| March 4, 2005 | - | Defendants mailed a fraudulent bid for the Air China Project. |
| March 15, 2005 | - | Defendants falsely, fraudulently represent in writing that the Project would be "turn-key" with an all-inclusive price of less than $3,900,000. |
| March 24, 2005 | - | Defendants falsely use the William B. May email address and "WBM International Development LLC at the GMAC's address. |
| March 29, 2005 | - | Defendant Donohue's letter, on WBM International Development LLC letterhead, represented "Our price will be all inclusive. We will deliver a turn-key project to you." |
| March 31, 2005 | - | Defendants' fraudulent bid breakdown for the Project faxed. |
| May 19, 2005 | - | Defendants' fraudulent letter to induce plaintiff to do business with defendants. |
| June 2005 | - | Defendants' deposits of plaintiff's funds, constituting bank fraud (check nos. 562875 and 375250 dated 6/7/05 and 6/14/05, for $562,875 and $375,250 respectively. |
| July 13-20, 2005 | - | Defendant letters, on WBM International Development LLC letterhead, misled plaintiff into believing William B. May was behind the Project and construction was moving smoothly and on schedule. |
| August 5, 2005 | - | Defendants faxed fraudulent bill using "William B. May" name. |

August 16. 2005          -          Li fraudulently represented in an email that WBM Development
                                    was the General Contractor and demanded yet more money.

September 16, 2005      -          Defendants faxed fraudulent bill using "William B. May" name.

September 16 - 26 2005  -          Defendants' letters on WBM International Development letterhead
                                    complained that $928,448 requisition was paid late and asked for
                                    another $470,124.00 and that project would be delayed.

September 21, 2005                 Defendants faxed fraudulent bill using "William B. May" name.

September 29, 2005      -          Defendants fraudulent letter responding to plaintiff's request for
                                    accounting.

September 29, 2006      -          Defendants' fraudulent account mailed out.

December 29, 2005       -          Fraudulently stating on William B. May Commercial Real Estate
                                    letterhead, "William B. May Commercial Inc. is now GMAC Real
                                    Estate IPF.

January 4, 2006         -          Defendants faxed fraudulent bill using "William B. May" name.

January 4, 2006         -          Fraudulent letter from JMK Construction Ltd. and Jay Kopf.

January 4, 2005         -          Defendants wrote to plaintiff stating that "We are working closely
                                    with the Nassau County Fire Marshall's Office" and "We look
                                    forward to securing a new Certificate Occupancy" and "The
                                    Projects continues to move forward."

January 10, 2006        -          Fraudulent letter from Nelson Li.

March 1, 2006           -          Defendants falsely promised that the Air Project would be
                                    completed by August 31, 2006.

March 2, 2006           -          Fraudulent bill sent to plaintiff on WBM International
                                    Development LLC letterhead.

March 7, 2006           -          Fraudulent bill sent to plaintiff on WBM International
                                    Development LLC letterhead.

March 9, 2006           -          Fraudulent bill sent to plaintiff on WBM International
                                    Development LLC letterhead.

March 13, 2006          -          Fraudulent bill sent to plaintiff on WBM International
                                    Development LLC letterhead.

| | | |
|---|---|---|
| March 23, 2006 | - | Fraudulent bill sent to plaintiff on WBM International Development LLC letterhead. |
| June 28, 2006 | - | Fraudulent bill sent to plaintiff on WBM International Development LLC letterhead. |
| May 22, 2006 | - | Defendants send fraudulent bill using "William B. May" name. |
| July 31, 2006 | - | Fraudulent bill sent by defendants on WBM International Development LLC letterhead. |
| August 1, 2006 | - | Fraudulent bill faxed to plaintiff on WBM International Development LLC letterhead. |
| September 12, 2007 | - | Donohue's letter (but delivered two weeks later) alleging plaintiff was somehow guilty of "breech" of agreement with the non-Entity "WMB International Development LLC" and demand $329,411. "immediately". |
| October 3, 2006 | - | Fraudulent bill sent to plaintiff on WBM International Development LLC letterhead. |
| October 4, 2006 | - | Li falsely represented in writing that Donohue was "President" of WBMI International Development LLC.  No entity existed. |
| October 4, 2006 | - | Donohue fraudulently wrote plaintiff as "President" of GMAC Real Estate International Group" stating "[y]our Project is important to us…" |
| November 13, 2006 | - | Kopf email "we are looking for funding" |
| April 27, 2007 | - | Defendants created and faxed another false agreement ("the April Agreement") following a February 28, 2007 meeting. |
| December 26, 2007 | - | Fraudulent $32 9,411 lien mailed. |

Payments made on account of fraud and cashed by defendants through use of bank fraud:

| Date | Check No. | Amount |
|---|---|---|
| August 30, 2005 | 28587 | 300,000 |
| September 12, 2005 | 28672 | 628,448 |
| September 29, 2005 | 28804 | 470,124 |
| November 15, 2005 | 29027 | 221,500 |

| February 8, 2006 | 29407 | 121,614 |
| March 21, 2006 | 29639 | 54,000 |
| March 21, 2006 | 29640 | 7,470 |
| March 27, 2006 | 29657 | 22,605 |
| April 3, 2006 | 29684 | 125,000 |
| April 13, 2006 | 29763 | 150,000 |
| April 25, 2006 | 29804 | 120,000 |
| May 22, 2006 | 29926 | 131,980 |
| June 12, 2006 | 30011 | 5,900 |
| June 20, 2006 | 30086 | 6,000 |
| June 30, 2006 | 30148 | 150,000 |
| July 20, 2006 | 30221 | 165,000 |
| September 11, 2006 | 30461 | 100,000 |
| October 3, 2006 | 30586 | 150,000 |
| August 22, 2006 | 30395 | 5,000 |
| - | 31826 | 19,000 |
| November 30, 2006 | 30854 | 47,990 |
| December 22, 2006 | 31014 | 55,508 |
| May 18, 2007 | 31739 | 82,274 |

**(3)** **If the RICO claim is based on the predicate offenses of wire fraud, mail fraud, or fraud the sale of securities, the "circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). Identify the nature, time, place and contents of misrepresentations, and the identity of persons to whom and by whom the alleged misrepresentations were made; it must be clear why the plaintiff claims the acts to constitute fraud or misrepresentations.**

The RICO claims herein asserted indeed are based on predicate acts of bank and mail fraud and the circumstances surrounding and constituting such fraud are fully set forth above. For the sake of brevity and completeness, plaintiff respectfully incorporates by reference the facts and details set forth in Section (e) (1) and (2) of the Civil RICO Statement. In sum, defendants intentionally made various material misrepresentations to plaintiff concerning the Project and William B. May all as forth above. Defendants knew of the falsity of their misrepresentations when made, and at the time of making the misrepresentations, made them with the intent of deceiving and defrauding plaintiff and of inducing plaintiff to transfer monies to defendants. Plaintiff was unaware of the falsity of the misrepresentations, and believed them

62

to be true, and reasonably and detrimentally relied upon them.  Please also see each preceding

paragraph of this Civil RICO Statement which is respectfully hereby incorporated by reference.

.

**(4)     State whether there has been a criminal conviction for violation of the predicate acts:**

   There has been no criminal proceeding in connection with the predicate acts.


**(5)     State whether civil litigation has resulted in a judgment with regard to the predicate acts:**

   There has been no other civil litigation in connection with the predicate acts.


**(6)     Described how the predicate acts form a "pattern of racketeering activity".**

   The predicate acts formed a pattern of racketeering activity in that they all are

related and amount to or pose the threat of continued criminal activity.  That relatedness stems

from the fact that each predicate act had the same or a similar purpose, result, participant,

victims, and methods of commission.

   Defendants' fraudulent conduct was concerted and its object was to participate in

the conduct and affairs of the enterprise through a pattern of racketeering activity that included

violations of the federal bank, mail and wire fraud statutes.  Defendants' unlawful activities

affected interstate and foreign commerce, and plaintiff has been injured by reason of the conduct

described in this complaint.

   Each of the actions taken by the defendants and others described in the complaint,

was taken in furtherance of the fraudulent schemes alleged herein and in concert with other, and

gives rise to plaintiff's claims involving violations of federal racketeering laws, common law

fraud, conversion, breach of fiduciary duty, unjust enrichment, negligence, negligent

misrepresentation and an accounting.   Please also see each preceding paragraph of this Civil

RICO Statement which is respectfully hereby incorporated by reference.

**(7)    State whether the alleged predicate acts relate to each other as part of a
common plan.  If so, describe in detail.**

The predicate acts formed a pattern of racketeering activity in that they all are related

and amount to or pose the threat of continued criminal activity.  The relatedness stems from the

fact that each predicate act had the same or a similar purpose, result, participant, victims, and

methods of commission.

Defendants' fraudulent conduct was concerted and its object was to participate in

the conduct and affairs of the enterprise through a pattern of racketeering activity that included

violations of the bank, federal mail and wire fraud statutes.  Defendants' unlawful activities

affected interstate and foreign commerce, and plaintiff has been injured by reason of the conduct

described in this complaint.

Each of the actions taken by the defendants and others described in the complaint,

was taken in furtherance of the fraudulent schemes alleged herein and in concert with other, and

gives rise to plaintiff's claims involving violations of federal racketeering laws, common law

fraud, conversion, breach of fiduciary duty, unjust enrichment, negligence, negligent

misrepresentation and an accounting.  Please also see each preceding paragraph of this Civil

RICO Statement which is respectfully hereby incorporated by reference.

**f.    Described in detail the alleged enterprise for each RICO claim.  A description of
the enterprise shall:**

**(1) State the names of the individuals, partnerships, corporations, associations,
or other legal entities that constitute the enterprise;**

Nelson Li (a/k/a Sheng Li), John A. Varacchi, (a/k/a John A. Davis), George F.

Donohue, Jay Kopf (a/k/a Jacob M. Kopf) Christian M. Deutsch, WBM-JMK Development LLC (d/b/a WBM International Development), JMK Construction Group Ltd., TCC Interiors, Ltd., GMAC Real Estate LLC, GMAC Real Estate IPG New York and Mary Hsu.

**(2) Described the structure, purpose, function and course of conduct of the enterprise;**

The enterprise is a continuing unit and is separate and apart from the pattern of racketeering activity complained of herein. The enterprise continues to date to engage in illegal conduct (i.e., filing of fraudulent mechanics lien; continued violation of NY GBL Sections 130 and 349).

The structure of the enterprise is as follows:



The purpose of the enterprise is to unlawfully trade on William B. May's reputation to deceive the public into thinking that defendants have that backing and experience.

The function of the enterprise is to collect monies not legitimately belonging to it.

The course of conduct of the enterprise is to indefinitely commit fraud on the public for personal, illicit gain.  Please also see each preceding paragraph of this Civil RICO Statement which is respectfully hereby incorporated by reference.

### (3)  State whether any defendants are employees, officers or directors of the alleged enterprise.

Nelson Li (a/k/a Sheng Li), John A. Varacchi, (a/k/a John A. Davis), George F. Donohue, Jay Kopf (a/k/a Jacob M. Kopf) Christian M. Deutsch, WBM-JMK Development LLC (d/b/a WBM International Development), JMK Construction Group Ltd., TCC Interiors, Ltd., GMAC Real Estate LLC, GMAC Real Estate IPG New York are not employees, officers or directors of the alleged enterprise, but all participated in the operation and management of the enterprise.  Defendants are "persons" within the meaning of 18 U.S.C. § 1961(3) because they are individuals or entities capable of holding legal and beneficial interests in real property.  Defendants were at all times material to this action employed by or associated with the enterprise described above, the activities of which affect interstate and foreign commerce.  Although defendants participated in the enterprise and were part of it, defendants also have an existence separate and distinct from the enterprise.  The enterprise has an ascertainable structure separate and apart from the pattern of racketeering activity in which defendants engaged.

### (4)  State whether any defendants are associated with the enterprise;

Yes, all are associated with the enterprise.  Defendants are "persons" within the meaning of 18 U.S.C. § 1961(3) because they are individuals or entities capable of holding legal and beneficial interests in real property.  Defendants were at all times material to this action employed by or associated with the enterprise described above, the activities of which affect interstate and

foreign commerce.  Although defendants participated in the enterprise and were part of it, defendants also have an existence separate and distinct from the enterprise.  The enterprise has an ascertainable structure separate and apart from the pattern of racketeering activity in which defendants engaged.

> **(5)  State whether you claim that the defendants are individuals or entities separate from the enterprise, or that the defendants are the enterprise itself, or members of the enterprise; and**

Please see responses above.  Nelson Li (a/k/a Sheng Li), John A. Varacchi, (a/k/a John A. Davis), George F. Donohue, Jay Kopf (a/k/a Jacob M. Kopf) Christian M. Deutsch, WBM-JMK Development LLC (d/b/a WBM International Development), JMK Construction Group Ltd., TCC Interiors, Ltd., GMAC Real Estate LLC, GMAC Real Estate IPG New York are all members of the enterprise, but have engaged in illegal conduct in connection with the enterprise as opposed to regular business activity (which each member also conducts independent of the illegal conduct).  Defendants are "persons" within the meaning of 18 U.S.C. § 1961(3) because they are individuals or entities capable of holding legal and beneficial interests in real property.  Defendants were at all times material to this action employed by or associated with the enterprise described above, the activities of which affect interstate and foreign commerce.  Although defendants participated in the enterprise and were part of it, defendants also have an existence separate and distinct from the enterprise.  The enterprise has an ascertainable structure separate and apart from the pattern of racketeering activity in which defendants engaged.

The enterprise does include legitimate purposes and objections in addition to the predicate acts alleged herein.  In that sense, the enterprise is separate and distinct from the pattern of racketeering activity; the enterprise, which has a common purpose of making money,

also has both a continuity in structure and personnel (as well as a common purpose) and a basic structure distinct from that inherent in the racketeering pattern in that it encompasses more than what is necessary to commit the crimes and predicate acts alleged in the Complaint.

> **(6)    If any defendants are alleged to be the enterprise itself, or members of the enterprise, explain whether such defendants are perpetrators, passive instruments, or victims of the alleged racketeering activity.**

Nelson Li (a/k/a Sheng Li), John A. Varacchi, (a/k/a John A. Davis), George F. Donohue, Jay Kopf (a/k/a Jacob M. Kopf) Christian M. Deutsch, WBM-JMK Development LLC (d/b/a WBM International Development), JMK Construction Group Ltd., and TCC Interiors, Ltd. are all perpetrators.  GMAC Real Estate LLC is both a defendant and a victim of the alleged racketeering activity.  GMAC Real Estate IPG New York is a perpetrator.  Mary Hsu is a passive instrument.  Each of the defendants operates or manages the enterprise.  Here, there is a distinction between each defendant and the RICO enterprise; each defendant/person is a legal entity separate and apart from the entire enterprise:  WBM, TCC, JMK and the GMAC defendants all are separate and legal entities (as are the individual defendants and Mary Hsu) and all engage in legitimate conduct outside the enterprise itself.  Please also see each preceding paragraph of this Civil RICO Statement which is respectfully hereby incorporated by reference.

> **g.    State and describe in detail whether you claim that the pattern of  racketeering activity and the enterprise are separate or have merged into one entity.**

The pattern and the enterprise are separate.  For example, GMAC Real Estate LLC is being used by the other defendants in connection with the conduct complained of but in large measure is engaged in other lawful business activity.  Although WBM-JMK was formed by the individual defendants specifically to defraud plaintiff, the individual defendants and Mary Hsu and the other corporate defendants have all engaged in other unlawful conduct outside the

activity and enterprise complained of herein.  Defendants are "persons" within the meaning of 18 U.S.C. § 1961(3) because they are individuals or entities capable of holding legal and beneficial interests in real property.  Defendants were at all times material to this action employed by or associated with the enterprise described above, the activities of which affect interstate and foreign commerce.  Although defendants participated in the enterprise and were part of it, defendants also have an existence separate and distinct from the enterprise.  The enterprise has an ascertainable structure separate and apart from the pattern of racketeering activity in which defendants engaged.

> **h.**  **Describe the relationship between the activities of the enterprise and the pattern of racketeering activity.  Discuss how the racketeering activity differs from the usual and daily activity of the enterprise, if at all.**

The activities of the enterprise differ from the RICO pattern because the enterprise, independent of the claim herein, engages in bonafide business activity.  Mary Hsu is secretary to and Jay Kopf is owner/principal of TCC Interiors and JMK Construction, which provide contracting services.  The GMAC defendants charge in real estate sales activities independent of, and also through defendants Nelson Li, George Donohue and Christian Deutsch.

The mail fraud and fraud upon the public described above, while ongoing, is not the sole, usual or even daily activity of the enterprise.  Defendants are "persons" within the meaning of 18 U.S.C. § 1961(3) because they are individuals or entities capable of holding legal and beneficial interests in real property.  Defendants were at all times material to this action employed by or associated with the enterprise described above, the activities of which affect interstate and foreign commerce.  Although defendants participated in the enterprise and were part of it, defendants also have an existence separate and distinct from the enterprise.  The

enterprise has an ascertainable structure separate and apart from the pattern of racketeering activity in which defendants engaged. Please also see each preceding paragraph of this Civil RICO Statement which is respectfully hereby incorporated by reference.

**i.    Describe what benefits, if any, the enterprise receives from the alleged patterns of racketeering.**

The benefits which the enterprise receives are the monies collected from plaintiff in connection with the Air China Project and the collection of monies from members of the general public who continue to be deceived into believing that William B. May is affiliated with and works out of defendants' offices as 505 8th Avenue, New York, NY. Please also see each preceding paragraph of this Civil RICO Statement which is respectfully hereby incorporated by reference.

**j.    Describe the effect of the activities of the enterprise on interstate or foreign commerce.**

The defendants' use of the United States mails and an internationally accessible website in committing fraud on the public in general and plaintiff in particular has affected interstate and foreign commerce. To this date, the public throughout this country and the world is deceived into believing that William B. May works with the defendants who operate out of 505 8th Avenue, New York, NY.

**k.    If the complaint alleges a violation of U.S.C. §1962(a):**

The Complaint does not make such allegations.

**l.    State who received the income derived from the pattern of racketeering activity or through the collection of unlawful debt; and**

Not applicable.

70

**(2)  Described the use or investment of such income.**

Not applicable.

**1.   If the complaint alleges a violation of 18 U.S.C. § 1962(b), describe in detail the acquisition or maintenance of any interest in or control of the alleged enterprise.**

The Complaint makes no such allegations.

**m.    If the complaint alleges a violation of 18 U.S.C. § 1962(c):**

**(1)  State who is employed by or associated with the enterprise; and**

Nelson Li (a/k/a Sheng Li), John A. Varacchi, (a/k/a John A. Davis), George F. Donohue, Jay Kopf (a/k/a Jacob M. Kopf) Christian M. Deutsch, WBM-JMK Development LLC (d/b/a WBM International Development), JMK Construction Group Ltd., TCC Interiors, Ltd., GMAC Real Estate LLC, GMAC Real Estate IPG New York and Mary Hsu are all associated with the enterprise.

**The Enterprise and Predicate Acts**

Please see responses above.  The scheme was carried out by an "enterprise" as that term is defined in 18 U.S.C. § 1961(4), consisting of an ongoing association-in-fact, which included defendants and others.  The members of the enterprise were a continuing unit engaged in a particular course of fraudulent conduct by working together to achieve their common goal of defrauding plaintiff of millions of dollars, converting these funds to their own use through sham legal positions, and attempting to obtain additional funds through these legal positions.

Defendants' fraudulent conduct was concerted and its object was to participate in

the conduct and affairs of the enterprise through a pattern of racketeering activity that included violations of the federal mail and wire fraud statutes. Defendants' unlawful activities affected interstate and foreign commerce, and plaintiff has been injured by reason of the conduct described in this complaint.

Each of the actions taken by the defendants and others (Mary Hsu) described in the complaint, was taken in furtherance of the fraudulent schemes alleged herein and in concert with other, and gives rise to plaintiff's claims involving violations of federal racketeering laws, common law fraud, conversion, breach of fiduciary duty, unjust enrichment, negligence, negligent misrepresentation and an accounting.

Defendants engaged in repeated acts of bank fraud as well as mail and wire fraud in connection with the willful misrepresentations contained in the telephone calls, email transmissions and mailings described herein, all in violation of 18 U.S.C. §§1341 and 1343. Further, in depositing plaintiff's monies with use of an illegal alias, defendants violated 18 U.S.C. Section 1344(2).

**(2)  Describe whether the same entity is both the liable "person" and the "enterprise" under § 1962 (c).**

NO.

**n.  If the complaint alleges a violation of 18 U.S.C. § 1962(d), describe in detail the alleged conspiracy.**

### The Enterprise and Predicate Acts

The scheme was carried out by an "enterprise" as that term is defined in 18 U.S.C. § 1961(4), consisting of an ongoing association-in-fact, which included defendants and others. The members of the enterprise were a continuing unit engaged in a particular course of fraudulent conduct by working together to achieve their common goal of defrauding plaintiff of

millions of dollars, converting these funds to their own use through sham legal positions, and attempting to obtain additional funds through these legal positions.

Defendants' fraudulent conduct was concerted and its object was to participate in the conduct and affairs of the enterprise through a pattern of racketeering activity that included violations of the federal mail and wire fraud statutes. Defendants' unlawful activities affected interstate and foreign commerce, and plaintiff has been injured by reason of the conduct described in it Complaint.

Each of the actions taken by the defendants and others described in the complaint, was taken in furtherance of the fraudulent schemes alleged herein and in concert with other, and gives rise to plaintiff's claims involving violations of federal racketeering laws, common law fraud, conversion, breach of fiduciary duty, unjust enrichment, negligence, negligent misrepresentation and an accounting.

Defendants conspired to and did engage in repeated acts of bank, mail and wire fraud in connection with the willful misrepresentations contained in the email transmissions and mailings described herein, all in violation of 18 U.S.C. §§ 1344(s), 1341 and 1343. Please also see each preceding paragraph of this Civil RICO Statement which is respectfully hereby incorporated by reference.

o.    **Describe the alleged injury to business or property.**

The defendants failed to complete the Project, with plumbing, electric and fire alarms not even connected. The cost of completion will likely exceed $400,000, this after defendants were already paid at least $2 million over what the entire Project reasonably should have cost.

As a result of defendants' misconduct and unreasonable delays in completing the

Project, the Property remained unusable for almost three (3) years, and plaintiff has been forced to house its flight crew in hotels (at a cost of more than $250,000) all while paying hundreds of thousands of dollars for taxes and utilities for the vacant Property.

As a proximate result of the wrongdoing committed by defendants Jay Kopf, Nelson Li, George F. Donohue, John A. Varacchi, JMK Construction Group Ltd. and WBM-JMK, plaintiff was forced to engage the services of counsel and of Craven Corporation, a construction manager located at 150 East 42nd Street, New York, New York.

As a proximate result of defendants' fraud and misconduct, plaintiff was caused to pay Craven Corporation $136,055.46 and attorney Eliot Clauss $57,105.06, plus an additional $74,000 for utility charges and more than $103,000 for security services.

As a proximate result of defendants' misconduct, plaintiff paid $200,025 for the architectural services of IA (recommended by George F. Donohue and Nelson Li), and now faces fines of up to $10,000 a day and a bogus lien in the amount of $329,411 filed by defendants on December 26, 2007.

Pursuant to applicable law (New York Lien Law, New York General Business Law Section 349 and RICO) defendants are liable for treble damages and attorneys' fees. Pursuant to RICO, and the common law of fraud and breach of fiduciary duty of, defendants are also liable for punitive damages.  Please also see each preceding paragraph of this Civil RICO Statement which is respectfully hereby incorporated by reference.

     **p.**     **Describe the direct causal relationship between the injury and the violation of the RICO statute.**

The injuries sustained by plaintiff were the proximate and direct result of defendants'

violation of the RICO statute.  But for defendants' conducting of an ongoing RICO enterprise and conspiracy including multiple acts of bank and mail fraud, those injuries would not have been sustained.  Please also see each preceding paragraph of this Civil RICO Statement which is respectfully hereby incorporated by reference.

**q.   List the damages sustained for which each defendant is liable.**

The defendants failed to complete the Project, with plumbing, electric and fire alarms not even connected.  The cost of completion will likely exceed $400,000, this after defendants were already paid at least $2 million over what the entire Project reasonably should have cost.

As a result of defendants' misconduct and unreasonable delays in completing the Project, the Property remained unusable for almost three (3) years, and plaintiff has been forced to house its flight crew in hotels (at a cost of more than $250,000) all while paying hundreds of thousands of dollars for taxes and utilities for the vacant Property.

As a proximate result of the wrongdoing committed by defendants Jay Kopf, Nelson Li, George F. Donohue, John A. Varacchi, JMK Construction Group Ltd. and WBM-JMK, plaintiff was forced to engage the services of counsel and of Craven Corporation, a construction manager located at 150 East 42nd Street, New York, New York.

As a proximate result of defendants' fraud and misconduct, plaintiff was caused to pay Craven Corporation $136,055.46 and attorney Eliot Clauss $57,105.06, plus an additional $74,000 for utility charges and more than $103,000 for security services.

As a proximate result of defendants' misconduct, plaintiff paid $200,025 for the architectural services of IA (recommended by George F. Donohue and Nelson Li), and now faces fines of up to $10,000 a day and a bogus lien in the amount of $329,411 filed by defendants on December 26, 2007.

Pursuant to applicable law (New York Lien Law, New York General Business Law Section 349 and RICO) defendants are liable for treble damages and attorneys' fees. Pursuant to RICO, and the common law of fraud and breach of fiduciary duty of, defendants are also liable for punitive damages. Please also see each preceding paragraph of this Civil RICO Statement which is respectfully hereby incorporated by reference.

**r. List all other federal causes of action, if any, and provide the relevant statue numbers.**

NONE. However, this Court has subject matter jurisdiction based on the parties' diversity of citizenship.

**s. List all pendent state claims, if any.**

Breach of Fiduciary Duty

The individual defendants and WBM-JMK Development LLC owed plaintiff a fiduciary duty to act in plaintiffs best interest with respect to its fund they held. Defendants were bound to exercise the utmost good faith and reasonable care in the performance of the duties owed to plaintiff. By reason of these defendants' failure to serve plaintiff in a proper, skillful, prudent and diligent manner as alleged herein, defendants directly breached their fiduciary duty.

Conversion

Plaintiff entrusted defendants with funds that were used in accordance with defendants' representation. However, defendants did not actually use plaintiff's money in an appropriate manner and converted all or part of plaintiff's funds. As a proximate result of these defendants' and defendant JMK Construction and TCC Interiors' wrongful and intentional conversion of plaintiff's funds, plaintiff has been damaged.

Fraud

All defendants, other then the GMAC defendants, also fraudulently obtained funds from plaintiff.

Unjust Enrichment

Further, all defendants, other then the GMAC defendants also have been unjustly enriched in an amount to be determined at trial.

Negligence/Negligent Misrepresentation

Defendants were, at a minimum, careless in imparting words upon which plaintiff and others were expected to rely. Thus, they are liable for negligence and negligent misrepresentation.

Violation of NYGBL Section 39

By engaging and continuing to engage in practices that are materially deceptive and misleading, causing injury to plaintiff and to the general public, defendants, continue to violate New York General Business Law § 349.

Violation of Lien Law

Defendants are liable for treble damages (almost $1 million due to their filing of a bogus mechanics' lien in the amount of $329,411 on December 26, 2007.

**t. Provide any additional information potentially helpful to the Court in the adjudicating your RICO claim.**

It should be noted that all defendants (represented by the same attorney) are subject to this Court's diversity of citizenship subject matter jurisdiction, in addition to the Federal question raised in the RICO claims. Even after this action was filed and defendants were served, they continued their unlawful course of conduct (a) in refusing to provide information or

documentation regarding the Project; (b) in filing a bogus mechanics lien in the amount of

$329,411 on December 26, 2007; and (c) in continuing to violate NYGBL Sections 130 and 349.

Dated:  New York, New York
        February 1, 2008

                                        Yours respectfully,

                                        *Jacques Catafago*
                                        _____
                                        Jacques Catafago (7894)
                                        THE CATAFAGO LAW FIRM, P.C.
                                        The Empire State Building
                                        350 Fifth Avenue, Suite 4810
                                        New York, NY 10118
                                        (212) 239-9669

*AIR CHINA\CIVIL RICO STM.PLTF.*

# EXHIBIT
# 2

## Jacques Catafago

**From:** "Jacques Catafago" <catafagolaw@verizon.net>
**To:** "Jacques Catafago" <catafagolaw@verizon.net>
**Sent:** Tuesday, July 22, 2008 12:07 PM
**Subject:** Fw: Air China v. Li et al

----- Original Message -----
**From:** Jacques Catafago
**To:** Ed Weissman
**Sent:** Monday, June 30, 2008 2:23 PM
**Subject:** Re: Air China v. Li et al

Prior to your appearance, outside counsel for GMAC Real Estate offered to provide me with a copy of the agreement it has with Mr. Deutsch. I never received the document or any explanation as to why it was not forwarded. In any event, our pending FRCP 34 Request covers this item. I certainly can make no determination without seeing that document and the other documents we have requested. Also, Mr. Deutsch advised me (falsely) before he had counsel that WBM had moved back to Madison Avenue. I would need to know why he so attempted to mislead us before considering your request. Finally, I would need to know his past and present involvement with William B. May International Inc., his knowledge/involvement in the false statements regarding that company made by Messrs. Donohue and Li (whom you claim had to be introduced to Mr. Deutcsh on 6/25 notwithstanding their office sharing both past - 505 8th Ave. - and present - 522 8th Ave.) and his knowledge and involvement in the other defendants' use of the facilities and fax and phone of GMAC in connection with their scheme. Please let me know if you can address these serious concerns.
**Jacques Catafago**

> ----- Original Message -----
> **From:** Ed Weissman
> **To:** 'Jacques Catafago'
> **Sent:** Monday, June 30, 2008 1:44 PM
> **Subject:** Air China v. Li et al
>
> Mr. Catafago-----I request, in advance of any motion, that you voluntarily withdraw suit against Christian mM. Deutsch and GMAC Real Estate LLC.
> Neither had any involvement with the project in question and each is prepared to submit Affidavits to that effect. In the instance of Mr. Deutsch, when he appeared in Court last Wednesday, he had to be introduced to the other named defendants.
>
> Kindly advise if you will voluntarily discontinue as to the above defendants who are being forced to incur fees and expenses for no reason.
>
> Edward Weissman, Esq.

# EXHIBIT
# 3

# Proposal for Hotel Management for Air China

## at 485 West Broadway Long Beach, New York

## For: Air China – New York Office

**Submitted By:**
**Date:**

**William B. May International**
**June 26, 2003**

1

AC 01036

| Project: | **Air China Crew Transit Hotel at Long Beach, New York (Hotel)** |
|---|---|
| Owner: | **Air China (Air China)** |
| Management Company: | **William B. May International (WBMI)** |

## I. Property Description

### (1) Property Description:

1. Property Location:  485 West Broadway, Long Beach, NY
2. Floor Square Footage: Approximately 36,075 square feet
3. Property:
   Five story hotel style building with one passenger elevator.
   Floor 1 is reception, security, mechanical room and parking garage, etc.
   Floor 2 is kitchen, dining room, meeting room and recreation space, etc.
   Floors 3, 4, and 5 are the same. There are 6 single suites and 22 double/double beds suites on each floor.
   There are 84 rooms and about 140 beds in the building.
4. Property History: It was built in 1966 as a hotel. Air China bought it in 1981. Air China renovated it twice in 1988 and 1998.

### (2) Current Condition of the Property:

Poor drainage on the roofs has resulted in significant damage. The second floor roof holds water like a pool. The leakage into the property is serious, causing extensive peeling of the walls and ceilings. Most of the plumbing is rusted and damaged, accelerating the leakage. The air conditioning is inadequate. The elevator bulkhead room is falling down. Air China plans to do complete renovation of the building.

### (3) Property Usage:

1. Current Usage: There are about 15 Air China cargo crew and employees staying in the Hotel.
2. Future Usage: The passenger and cargo crews will live in the property during their transit stay in New York. It is expected there will be 75 people staying daily.

## II. Management Assignment

1. **To provide lodging, meal and transportation services to Air China crews according to the three-star hotel management standards.**

2

AC 01037

Management Contract prior expiration if WBMI makes serious mistakes or cannot improve its management after the demands from Air China.

The length of the Management Contract will be decided by Air China and WBMI.

## X. Introduction of Management Company

William B. May International (WBMI), which was incorporated in 1866, is the oldest full service real estate company in the U.S. WBMI always strikes for the combination of Old Value and New World Vision. With 8 companies in New York area, WBMI has more than 200 real estate professionals, as well as the largest well-trained, licensed, and Chinese and English bilingual team. WBMI encompasses rich experiences in real estate sales, management, consulting and management.

WBMI has long time relations with China. The president and senior executives visited China in 1998, 1999 and 2000. Working with Chinese governments, WBMI hosted "2000 China-U.S. Real Estate and Property Management Seminar" in Beijing and Shijiazhuang in December 2000 to introduce the American experience in real estate development and management. WBMI is the first American real estate company, which does this in China.

WBMI maintains good relationship with the Chinese Consulate General in New York.

## XI. Key Leaders of WBMI for China Business:

Mr. Christian Deutsch, Chief Executive Officer of WBM. Mr. Deutsch once managed a $1 billion asset fund and has close relations with American manufacturing and investment businesses.

Mr. George F. Donohue, President of WBMI. Mr. Donohue was the General Manager of New York World Trade Center. He has been to China for three times. Under his leadership, the Chinese tenants in World Trade Center increased from 2 to 127.

Mr. Jonathan Rudes, Executive Vice President of WBMI. Mr. Rudes has more than 25 years' experience in real estate. He was the inventor and idea creator of the famous real estate management projects of Wall Street Tech Center and Plug and Go.

Mr. Nelson Li, Managing Director of WBMI. Mr. Li used to work for the Chinese Ministry of Foreign Affairs. He was involved in China-U.S. economic cooperation since 1995. He helped to set up two China-U.S. joint ventures.

## XII. Confidentiality:

This Proposal is a confidential business document. Without the consent of WBMI, Air China should not disclose this information to any third party.

5

AC 01040

### XIII.  Conclusion:

WBMI is looking forward to the opportunity to serving Air China. We are willing to avail our expertise in property management serve Air China in its Long Beach project.

I look forward to your response. Please feel free to contact me if you have any further questions.

Sincerely,

George F. Donohue
President
William B. May International

6

AC 01041

# EXHIBIT
# 4

# Proposal for Turnkey Design Build Services for the Rehabilitation of

# 485 West Broadway
# Long Beach, New York

# For: Air China – New York Office

**Submitted By:**   **William B. May International**
**Date:**           **June 26, 2003**

1

AC 01017

## I.     Introduction of WBMI:

William B. May International (WMBI), which was incorporated in 1866, is the oldest full service real estate company in the United States.  We have successfully served our clients' real estate needs with integrity and value.  We have more than 200 real estate professionals, with nine offices in New York City area.  We are experienced in Real Estate Sales, Leasing, Construction Development, Property Management, Consulting and Asset Management.

We attach great importance to and value the business opportunities with China.  Our senior executives visited China three times in the past three years.  Working with several Chinese governmental agencies, we hosted "2000 China – US Real Estate and Property Management Seminar" in Beijing and Shijiazhuang in December 2000 to introduce American experience in real estate development and property management.

William B. May International Development, LLC, which will take the assignment for you is a subsidiary of WBMI. It is a multi-disciplinary company specializing in full service Project and Construction Management, as well as Design Build Projects.

Our experience as Architects, Builders and Managers gives us the unique ability to bring an in-depth understanding of both the Creative Design and Construction Process to each Project.

The Company's Architectural and Engineering staff and partners have over 100 years of experience in the Industry. Our professional personnel have actual experience in all aspects of a Project. As Consultants, Construction Managers, and Builders we have a special perspective on the process. We have written Specifications and negotiated Contracts for every aspect of Planning, Construction, and Restoration. Our Budgets and Schedules are developed with an eye to actual execution of the project and are continually reevaluated for accuracy and buildability.

The methods we have developed for the Control of Project Quality are truly interdisciplinary and draw upon the resources of our Professional Staff. Architects and Engineers, with both Design and Construction Experience, continually monitor and evaluate the design quality as the project develops. Budgets and schedules are continually reviewed with Value Engineering throughout the process.

Our development of an Integrated Team approach ensures consistency throughout the duration of the Project. Each decision including Planning, Budgeting, Construction Management, Technical Services, Estimating and Scheduling is aided by input from all members of the Team.  Our Recommendations are based on significant experience at every level, providing the highest level of expertise in the benefit of the overall Project.

2

AC 01018

- **Organize the Inspection for Air China and Deliver the renovated Property to Air China and Hotel Management Company upon the completion of rehabilitation**

### 4. SERVICE PERIOD

- **Coordinate with Air China, Management Company, Contractors, Vendors**
- **Coordinate and Carry Out Services to Project**

### IX.    Project Expense:

It will be determined through discussion by the two sides after Air China advises of the detailed rehabilitation/renovation/repair specifications and thorough inspection of the conditions of the Property.

### X.    Project Construction Specifications:

Project Construction Specifications will be submitted to Air China once Air China approves this Proposal.

### XI.    Confidentiality:

This Proposal is a confidential business document. Without the consent of WBMI, Air China should not disclose this information to any third party.

### XII.    Conclusion:

WBMI is looking forward to the opportunity to serving Air China. We are willing to avail all of our expertise of 137 years real estate service in the U.S., integrity and prestige to serve Air China in its Long Beach project.

I look forward to your response. Should you have any questions, please feel free to contact me.

Sincerely

George F. Donohue
President
William B. May International

Attachments:   Design Plan for 485 West Broadway, Long Beach, NY
Bid Form for Areas of Work

7

AC 01023

# EXHIBIT
# 5

# Professional Assessment Report
## of the Air China Building
## at 485 West Broadway
## Long Beach, New York State

### February 2004

### WBMI

### (Confidential)

WBMI
Established 1886

AC 01080

## IV.  Local regulations and cooperation with local government

We need to remember that since this building was built, building regulations in the U.S. have changed a great deal. In the maintenance and repair of the building, it is very important to comply with current regulations and make every part inside the building comply with current regulations.  Otherwise, after the maintenance and repairs are completed, it could not pass the inspection of the local buildings department, or would be given hefty fines.

Since the summer of 2002, our professional staff and local buildings department and other officials have carried out meetings and talks. We exchanged opinions with them in regard to our various maintenance and repair options and have built a fine working relationship with the local government. We believe we can smoothly apply for and obtain engineering construction and other permits.

Another important benefit arise from the good relationship between our company and the office of the New York state governor. After its efforts, the local government has agreed that, once the maintenance and repair project is completed, they would explore giving appropriate favored treatment to that building in respect of real estate tax.

We also have a good cooperative relationship with the local electric power department. If we adopt a number of energy-conservation measures in lighting, the local power department will carry out an assessment and may provide suitable subsidy to our reconstruction investment.

WBMI
Established 1866

AC 01087

## X.  Our commitment to Air China

We guarantee best services for the optimum interest of Air China. We recognize that Air China is an important internationalized company and is continually growing in strength. The maintenance and repair and preservation of the value of its real estate asset is very important to its corporate goals.

We have already organized contingents of our best professional people to put their expertise at the service of this project.   Our senior managers shall intervene in the project to ensure its success.

14

WBMI
Established 1866

AC 01093

## XI.    WBMI

The WBMI was established in New York in 1866, being a full service real estate company with the longest history in the United States. Our principles are trust and value contribution, and we have successfully provided services to our clients in the realm of real estate. The company combines traditional values with the modern ideology of innovation. It has over 200 real estate specialists and 8 subsidiaries in New York. It is richly experienced in the sales of real estate, leasing, construction and development, property management, real estate consulting, and asset management.

We attach great importance to and treasure the opportunity to do business with China. The senior executives of our company have visited China many times. In December 2000, we cooperated with Chinese government agencies in sponsoring in Beijing and Shijiazhuang 2000 Symposium on Chinese-American Real Estate and Property Management, during which we introduced audiences to real estate development and property management in the United States.

WBMID, which will undertake the Air China project, is a wholly-owned subsidiary of WBMI.    It is a diversified and full service company providing project design, construction, and building management.

Our experience as architects and construction and management companies have given us the capacity to have an in-depth understanding of the importance of the innovative design and construction processes of each project.

WBIM architects, engineering personnel and partners add up to over 100 years of

WBMI
Established 1866

AC 01094

2. Building at 575 Madison Avenue in New York

3. Building at 55 Wall St., New York

4. Air France's New York office

5. Air India's New York office

6. Benz North America Headquarters Building

7. The New York Halin Hotel *[Transliteration]*

8. Swiss Bank

9. Goldman Sachs Investing Bank

10. Merrill Lynch Investing Bank

11. Citibank

12. Michael J. Fox Foundation

13. Hui Rui* Pharmaceuticals, NJ, project

14. Disney ESPN World

15. New York Battery Park

16. Renovation of building at 866, Third Avenue, New York

17. Renovation of GEIC HQ Building

18. Lease management consultant for the Shanghai Stock Market (1998 to 2002)

19. Development and Management consultant for Tianjin Jinhuang Building (1998-2001)

In 2002, WBMI revenues from sales, development, construction, investment and property management totaled $1.2 billion. In 2003, the total revenue was $1.3 billion.

---

**\*Translator's Note: Here and hereinafter, transliteration in Chinese pinyin system has been used for proper names, including Chinese translations of English names in XII.**

---

WBMI
Established 1866

AC 01096

# EXHIBIT
# 6

ℓ0 40 40 1 000 305     TR-56 (4/02)

# To the honorable Secretary of State of
# the State of New York:

Please take notice that pursuant to the provisions of section 203-a of the Tax Law, as amended,

the Commissioner of Taxation and Finance of the State of New York does hereby certify that

WILLIAM B. MAY INTERNATIONAL INC.

a corporation organized to do   business under the laws of the State of New York on the

date of          September 7, 1999                    , and heretofore dissolved by proclamation

published on          June 25, 2003             ,   pursuant   to the provisions of section

203-a of the Tax Law, has paid all franchise taxes, penalties, and interest charges accrued against it.

In   witness   whereof,   the   Commissioner   of

Taxation and Finance has caused this certificate to be executed

and the official seal of the Department of Taxation and Finance

of the State of New York affixed hereto

this          thirtieth         day of March

two thousand four.

Commissioner of

Taxation and Finance

by Esther Rackenstine

Deputy Commissioner

# State of New York
# Department of State } ss:

I hereby certify, that the records of this Department show that WILLIAM B. MAY INTERNATIONAL INC. the Certificate of Incorporation of which was filed on 09/07/1999

It was dissolved by proclamation of the Secretary of State published on 06/25/2003 pursuant to the Tax Law.

Such dissolution proceedings were annulled and the existence of the corporation revived, reinstated and continued by a certificate duly filed in this Department 04/01/2004 pursuant to the Tax Law.

***

*WITNESS my hand and the official seal of the Department of State at the City of Albany, this 27th day of June two thousand and eight.*

*Special Deputy Secretary of State*

*200806300234  101*

AC 01951

# EXHIBIT
# 7

# NYS Department of State

## Division of Corporations

### Entity Information

Selected Entity Name: WILLIAM B. MAY INTERNATIONAL INC.

Selected Entity Status Information

**Current Entity Name:** WILLIAM B. MAY INTERNATIONAL INC.
**Initial DOS Filing Date:** SEPTEMBER 07, 1999
**County:** NEW YORK
**Jurisdiction:** NEW YORK
**Entity Type:** DOMESTIC BUSINESS CORPORATION
**Current Entity Status:** ACTIVE

Selected Entity Address Information

**DOS Process (Address to which DOS will mail process if accepted on behalf of the entity)**
WILLIAM B. MAY INTERNATIONAL INC.
575 MADISON AVE
NEW YORK, NEW YORK, 10022
**Chairman or Chief Executive Officer**
CHRISTIAN M DEUTSCH
575 MADISON AVE
NEW YORK, NEW YORK, 10022
**Principal Executive Office**
GEORGE F DONOHUE
575 MADISON AVE
NEW YORK, NEW YORK, 10022
**Registered Agent**
NONE

NOTE: New York State does not issue organizational identification numbers.

Search Results            New Search

Division of Corporations, State Records and UCC Home Page    NYS Department of State Home Page

AC 02074

NYS DEPARTMENT OF STATE - DIVISION OF CORPORATIONS
**Biennial Statement, Part A**

| | | |
|---|---|---|
| | FILING PERIOD | |
| 2416141 | 09/2001 | $9.00 |

CORPORATION NAME
**WILLIAM B. MAY INTERNATIONAL INC.**

| 1 | FARM CORPORATION | ☐ | The corporation is a corporation engaged in the production of crops, livestock, and livestock products on land used in agricultural production (Agriculture and Markets Law Section 301). It is not required to report. |
|---|---|---|---|

| 2 | NAME AND BUSINESS ADDRESS OF THE CHIEF EXECUTIVE OFFICER | NAME Christian M Deutsch |
|---|---|---|

ADDRESS 575 Madison Avenue
CITY New York  STATE NY  ZIP+4 10022

| 3 | ADDRESS OF THE PRINCIPAL EXECUTIVE OFFICE | NAME George F. Donohue |
|---|---|---|

ADDRESS 575 Madison Avenue
CITY New York  STATE NY  ZIP+4 10022

| 4 | SERVICE OF PROCESS ADDRESS | William B May International Inc |
|---|---|---|

ADDRESS 575 Madison Avenue
CITY New York  STATE NY  ZIP+4 10022

---

NYS DEPARTMENT OF STATE - DIVISION OF CORPORATIONS
**Biennial Statement, Part B**

| | FILING PERIOD | FEE |
|---|---|---|
| 2416141 | 09/2001 | $9.00 |

CORPORATION NAME
WILLIAM B. MAY INTERNATIONAL INC.

(1)  NAME AND BUSINESS ADDRESS OF THE CHIEF EXECUTIVE OFFICER

NO ADDRESS ON FILE

(2)  ADDRESS OF THE PRINCIPAL EXECUTIVE OFFICE

NO ADDRESS ON FILE

(3)  SERVICE OF PROCESS ADDRESS

WILLIAM B. MAY INTERNATIONAL INC.
575 MADISON AVENUE
NEW YORK NY 10165

AR 0108280 02285

MAKE NO MARKS BELOW THIS LINE          (YOU MUST SIGN ON REVERSE)          DOS-1157 (06/98)

# EXHIBIT
# 8

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------x
WILLIAM B. MAY JR.                          :
FAMILY LIMITED PARTNERSHIP,                 :
        *Plaintiff*,                        :
                                            :          Judge Sprizzo
                                            :          Case No.: 06 CV 3924
        v.                                  :
                                            :
1051 BRANT HOLDING COMPANY, LLC:
a.k.a WILLIAM B. MAY MANHATTAN,  :
LLC, WILLIAM B. MAY COMMERCIAL   :
INC., GMAC REAL ESTATE, LLC,      :
GMAC REAL ESTATE INTERNATIONAL:
PROPERTIES GROUP, CHRISTIAN       :
DEUTSCH, and GEORGE DONOHUE,      :          **JURY TRIAL DEMANDED**
                                            :
        *Defendants*.                       :
-----------------------------------------------------x

## VERIFIED COMPLAINT

For its Complaint against Defendants, 1051 Brant Holding Company, LLC, ("1051

Brant"), a.k.a. William B. May Manhattan, LLC, William B. May Commercial Inc.

("Commercial"), GMAC Real Estate, LLC, GMAC Real Estate International Properties Group,

Christian Deutsch and George Donohue (collectively "Defendants"), Plaintiff, William B. May

Jr. Family Limited Partnership ("May FLP"), by its attorneys, alleges as follows:

## NATURE OF THIS ACTION

1.    Plaintiff May FLP controls the oldest real estate firm in New York. The name

and trademark WILLIAM B. MAY represents more than 135 years of quality, experience, and

prestige in the field of real estate. Plaintiff granted Defendants 1051 Brant and Commercial a

limited license to use only the name and trademark WILLIAM B. MAY, but not the right to use

any variation of the name without the approval of Plaintiff. Those limited licenses have been

cancelled. In flagrant violation of those licenses, Defendants did business as CENTURY 21

WILLIAM B. MAY, thereby giving the false impression that Plaintiff had sold its business to, or

AC 01974



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------x

WILLIAM B. MAY JR.
FAMILY LIMITED PARTNERSHIP,

              Plaintiff,

    - versus -

1051 BRANT HOLDING COMPANY, LLC,
a.k.a WILLIAM B. MAY MANHATTAN, LLC,
WILLIAM B. MAY COMMERCIAL, INC.,
GMAC REAL ESTATE, LLC,
GMAC REAL ESTATE INTERNATIONAL
PROPERTIES GROUP, CHRISTIAN
DEUTSCH, and GEORGE DONOHUE,

              Defendants.

------------------------------------------------x



Case No.: 06 cv. 3924 (JES)

**STIPULATION OF
SETTLEMENT**

    This Stipulation of Settlement Agreement (the "Agreement") made this 9th day of ~~December~~ 2006 January 2007 by and between William B. May Jr. Family Limited Partnership ("FLP"); and 1051 Brant Holding Company, LLC(1051 Brant), a.k.a. William B. May Manhattan, LLC;  William B. May Commercial Inc.("Commercial");  GMAC Real Estate, LLC ("GMAC") ;  GMAC Real Estate International Properties Group ("GMAC IPG");  Christian Deutsch;  and George Donohue (collectively "the Defendants"):

    WHEREAS, FLP has brought an action, by complaint verified on May 15, 2006, in the United States District Court for the Southern District of New York against the Defendants, Index No. 06 cv 3924 (JES), for trademark infringement and various other claims, and

    WHEREAS, the Defendants, by Answer dated August 31, 2006, deny the allegations in the Complaint and set forth various affirmative defenses, and

WHEREAS, counsel to all parties in said action appeared before the Honorable Judge John E. Sprizzo for a Pre-Trial Conference on October 17, 2006, wherein the Court considered all matters raised and encouraged the parties to settle; and

WHEREAS, the Court ordered that, in the absence of a written settlement agreement, a second Pre-Trial Conference shall occur on ~~December 5, 2006~~ January 9, 2007, at 3:00 p.m.; and

WHEREAS, all parties hereto wish to settle all issues which have arisen in the above-mentioned legal action, and all claims, issues and matters that otherwise exist between and among said parties;

NOW, THEREFORE, the above-mentioned parties hereby stipulate and agree as follows:

1. That upon this Agreement being "So Ordered," 1051 Brant shall assign any and all right, title and interest it may have in the trademark "William B. May" (United States Patent and Trademark Office Service Mark Application, Serial Number 78421131) to FLP by execution of the Assignment annexed hereto as Exhibit "A." 1051 Brant shall take all other reasonably and necessary steps, as requested by counsel for Plaintiff, to effectuate said transfer;

2. That this Settlement Agreement be "So Ordered" by the Honorable Judge John E. Sprizzo;

3. That as a result of this document being "So Ordered," this Agreement shall also constitute an order of injunction (the "Order of Injunction") by the Honorable Judge John E. Sprizzo, which shall prohibit each of the Defendants

2

AC 01998

from making any commercial use of the name "William B. May" in any form whatsoever. This includes the commercial use of the name "William B. May" in any form of media, including written publication, internet or any web site, and verbal communications. Nothing contained herein, however, shall limit any Defendant's right to provide accurate historical information vis-a-vis their relationship to William B. May;

4. Only in the event of a violation of this Order of Injunction (a "Violation"), shall FLP be entitled to seek damages against the violators for any violation resulting in trademark infringement, including any Violation or an alleged violation as set forth in the aforesaid Complaint. Likewise any alleged violator, in the event Plaintiff brings a claim as set forth in the Complaint, shall have the right to assert all defenses set forth in the Answer as well as any other defense available. With respect to claims set forth in the Complaint, damages shall be payable only in the event of a Violation of this Order of Injunction is found by the Court. In addition to the foregoing, and without limiting the rights of any party to this Agreement, GMAC reserves the right in any future proceeding to assert the defense that GMAC solely by virtue of its status as a franchisor, is not a violator or otherwise liable for the conduct of any other party.

5. Absent said violation of this Order of Injunction, FLP releases each of the Defendants from any claims set forth in the Complaint and any other claims involving the use of the name and/or trademark "William B. May," which occurred prior to the date of this Agreement.

3

AC 01999

Agreed and Accepted:

William B. May Jr. Family Limited Partnership

By: _William B. May Jr.   Jeanne a. May_

1051 Brant Holding Company, LLC

By: _____

William B. May Commercial Inc.

By: _____

GMAC Real Estate, LLC

By: _____

GMAC Real Estate International Properties Group

By: _____

_____

George Donohue

5

Dec 18 06 04:55p    Computer

Agreed and Accepted:

William B. May Jr. Family Limited Partnership

By: _William B May Jr   Joanne a May_

1051 Brant Holding Company, LLC

By: _____

William B. May Commercial Inc.

By: _____

GMAC Real Estate, LLC

By: _____

GMAC Real Estate International Properties Group

By: _____

George Donohue

5

AC 02002

Christian Deutsch

So Ordered

Hon. John E. Sprizzo

1-10-07

6

AC 02004

# EXHIBIT
# 9

**STATE**

# eAccessNY Occupational Licensing Management System

New York Department of State

Logon

## License Details

Press "Search Results" to return to the Search Results list.

Press "New Search Criteria" to do another search of this type.

Press "New Search" to start a new search.

| | |
|---|---|
| Name: | **CHAE, HEE SEOK** |
| License Type: | **Salesperson:Salesperson** |
| License Number: | **40CH1033400** |
| License Status: | **Current** |
| Expiry Date: | **08/12/2008** |

**Addresses**

| **Practice Locate – Salesperson** | Address: | **505 8TH AVE STE 804 NEW YORK , NY NEW YORK 10018 US** |
|---|---|---|
| | Phone Number: | **2126202611** |

**Relation(s)**

| **Related Party Name** | **License Type** | **Address** |
|---|---|---|
| **WILLIAM B MAY COMMERCIAL INC** | **Principal Office:Princ Off** | **505 8TH AVE STE 804 NEW YORK , NY NEW YORK 10018 US** |

¦ Site Map ¦ Privacy Policy ¦ Accessibility Policy ¦ Contact Us ¦

AC 02058

# Department of State
## Division of Licensing Services
# Licensee Information

**ID Number:** 40CH1033400

**Name:** CHAE HEE SEOK

**Business Name:** WILLIAM B MAY COMMERCIAL INC

**Business Address:** 505 8TH AVE STE 804

NEW YORK NY 10018

**County:** NEW YORK

**License Type:** REAL ESTATE SALESPERSON
**Expires:** 08/12/2008

[ Name Search ] [ Business Name Search ] [ ID Search ]
[ Licensee Search Menu ]

[ Division of Licensing Services Home Page ] [ NYS Department of State Home Page ]

AC 02064

# Department of State
## Division of Licensing Services
# Licensee Information

**ID Number:** 31DO1025975

**Name:** DONOHUE GEORGE F

**Business Name:** WILLIAM B MAY COMMERCIAL INC

**Business Address:** 505 8TH AVE STE 804

NEW YORK NY 10018

**County:** NEW YORK

**License Type:** REAL ESTATE BROKER

**Expires:** 06/01/2008

[ Name Search ] [ Business Name Search ] [ ID Search ]
[ Licensee Search Menu ]

[ Division of Licensing Services Home Page ] [ NYS Department of State Home Page ]

http://appsext8.dos.state.ny.us/lcns_public/bus_name_inq_frm?p_record_id=170020304    10/19/2007

AC 02062

# Department of State
## Division of Licensing Services
# Licensee Information

**ID Number:** 40CH1089052

**Name:** CHEN KATHERINE G

**Business Name:** WILLIAM B MAY COMMERCIAL INC

**Business Address:** 505 8TH AVE STE 804

NEW YORK NY 10018

**County:** NEW YORK

**License Type:** REAL ESTATE SALESPERSON
**Expires:** 10/17/2007

[ Name Search ] [ Business Name Search ] [ ID Search ]
[ Licensee Search Menu ]

[ Division of Licensing Services Home Page ] [ NYS Department of State Home Page ]

http://appsext8.dos.state.ny.us/lcns_public/bus_name_inq_frm?p_record_id=180064853     10/19/2007

AC 02061

# EXHIBIT
# 10

# NYS Department of State

## Division of Corporations

### Entity Information

Selected Entity Name: INTERNATIONAL PROPERTIES GROUP, INC.

Selected Entity Status Information

**Current Entity Name:** INTERNATIONAL PROPERTIES GROUP, INC.
**Initial DOS Filing Date:** OCTOBER 14, 2005
**County:** NEW YORK
**Jurisdiction:** NEW YORK
**Entity Type:** DOMESTIC BUSINESS CORPORATION
**Current Entity Status:** ACTIVE

Selected Entity Address Information

**DOS Process (Address to which DOS will mail process if accepted on behalf of the entity)**
INTERNATIONAL PROPERTIES GROUP, INC.
505 8TH AVENUE
SUITE 804
NEW YORK, NEW YORK, 10018
**Chairman or Chief Executive Officer**
GEORGE DONOHUE
505 8TH AVENUE
SUITE 804
NEW YORK, NEW YORK, 10018
**Principal Executive Office**
INTERNATIONAL PROPERTIES GROUP, INC.
505 8TH AVENUE
SUITE 804
NEW YORK, NEW YORK, 10018
**Registered Agent**
NONE

NOTE: New York State does not issue organizational identification numbers.

Search Results          New Search

Division of Corporations, State Records and UCC Home Page    NYS Department of State Home Page

AC 02080

STATE

# eAccessNY Occupational Licensing Management System

New York Department of State

Logon

## License Details

Press "Search Results" to return to the Search Results list.

Press "New Search Criteria" to do another search of this type.

Press "New Search" to start a new search.

| | |
|---|---|
| Name: | **DEUTSCH, CHRISTIAN M** |
| License Type: | **Salesperson:Salesperson** |
| License Number: | **40DE1181456** |
| License Status: | **Current** |
| Expiry Date: | **03/13/2010** |

**Addresses**

| **Practice Locate - Salesperson** | Address: | **520 8TH AVE**<br>**22ND FL**<br>**NEW YORK , NY**<br>**NEW YORK**<br>**10018**<br>**US** |
|---|---|---|
| | Phone Number: | **2126202619** |

**Relation(s)**

| **Related Party Name** | **License Type** | **Address** |
|---|---|---|
| **INTERNATIONAL PROPERTIES GROUP INC** | **Principal Office:Princ Off** | **520 8TH AVE**<br>**22ND FL**<br>**NEW YORK , NY**<br>**NEW YORK**<br>**10018**<br>**US** |

Site Map | Privacy Policy | Accessibility Policy | Contact Us

# EXHIBIT
# 11

# WILLIAM B. MAY
## COMMERCIAL REAL ESTATE
### OLD WORLD VALUES, NEW WORLD VISION, SINCE 1866

Xian Cheng Zhao
Air China
150 East 52nd Street
New York, NY 10022

December 29th, 2005

Dear Xian:

There is exciting news at William B. May Commercial, Inc. It is with great pleasure that we share with you that William B. May Commercial Inc. is now GMAC Real Estate IPG.

Effective January 1, 2006, **William B. May Commercial Real Estate** will enter a strategic partnership with **GMAC Real Estate** - one of the largest and most dynamic real estate companies in the world. We will become the GMAC Real Estate office in New York City.

Our new relationship with GMAC is designed to provide our valued customers with state of the art service and products. GMAC real estate has the highest quality of real estate related services. In addition to providing traditional real estate services we can now provide:

> Financing to Purchase Property: Residential and Commercial Mortgages
> Insurance Services: Personal Lines and Commercial Lines
> Investment Related Services
> Global Relocation Services
> Commercial Credit Lines
> And many more important services

GMAC was the #1 lender in real estate financing in 2005. We provided over $21 billion dollars in financing. This exciting partnership will enable us to anticipate and address the needs of our clients by providing a full range of services. It will also assist us in showcasing real estate properties and our real estate services to both a national and global clientele as we network with the hundreds of GMAC offices worldwide.

Our name will change, but our commitment to serve our customers is as strong as ever . We will continue to provide the same personal, professional service people have come to expect from us. I will be happy to answer any questions you may have and provide you with detailed information about our new range of services. Best wishes for a healthy and happy New Year.

Sincerely,

George F. Donohue
President

505 EIGHTH AVENUE • SUITE 804 • NEW YORK, NY 10018 • FAX: 212.265.8751
WEBSITE: williambmay.com/commercial

AC 00976

# EXHIBIT 12

# NYS Department of State

## Division of Corporations

**Entity Information**

Selected Entity Name: WM. B. MAY COMMERCIAL, INC.

Selected Entity Status Information

**Current Entity Name:** D & D COMMERCIAL, INC.
**Initial DOS Filing Date:** JULY 22, 1999
**County:** NEW YORK
**Jurisdiction:** NEW YORK
**Entity Type:** DOMESTIC BUSINESS CORPORATION
**Current Entity Status:** ACTIVE

Selected Entity Address Information

**DOS Process (Address to which DOS will mail process if accepted on behalf of the entity)**
D & D COMMERCIAL, INC.
575 MADISON AVENUE
NEW YORK, NEW YORK, 10165

**Chairman or Chief Executive Officer**
CHRISTIAN M DEUTSCH
575 MADISON AVE
23RD FL
NEW YORK, NEW YORK, 10022

**Principal Executive Office**
GEORGE F DONOHUE
575 MADISON AVE
23RD FL
NEW YORK, NEW YORK, 10022

**Registered Agent**
NONE

NOTE: New York State does not issue organizational identification numbers.

Search Results          New Search

Division of Corporations, State Records and UCC Home Page     NYS Department of State Home Page

AC 02048

NYS DEPARTMENT OF STATE - DIVISION OF CORPORATIONS

*Biennial Statement, Part B* {} {} {} {}
CORPORATION NAME {} {} {} {}
WM B MAY COMMERCIAL, INC

(1) NAME AND BUSINESS ADDRESS OF THE CHIEF EXECUTIVE OFFICER
CHRISTIAN M DEUTSCH
575 MADISON AVE
23RD FL
NEW YORK NY 10022

(2) ADDRESS OF THE PRINCIPAL EXECUTIVE OFFICE
GEORGE F DONOHUE
575 MADISON AVE
23RD FL
NEW YORK NY 10022

(3) SERVICE OF PROCESS ADDRESS
WM B MAY COMMERCIAL, INC
575 MADISON AVENUE
NEW YORK NY 10165

MAKE NO MARKS BELOW THIS LINE {} {} {} {}    [YOU MUST SIGN ON REVERSE]

| | FILING PERIOD | FEE |
|---|---|---|
| 2401007 | 07/2003 | $9.00 |

If there are no changes to the information
printed in Part B, sign Part C and return with
payment payable to the Dept. of State

DEPARTMENT OF STATE

0307 1400

DOS-1179 (07/99)

# EXHIBIT
# 13

WBM-JMK Development LLC
Transactions by Account
As of December 31, 2007

Cash Basis

| Type | Date | Num | Name | Memo | Split | Debit | Credit | Balance |
|------|------|-----|------|------|-------|-------|--------|---------|

Online at businesscenter.ml.com

Account Number: 862-02058

24-Hour Assistance: (800) MER-WCMA

WILLIAM B MAY COMMERCIAL INC
505 8TH AVE # 804
NEW YORK NY 10018-4549

**Net Portfolio Value:**    **TOTAL MERRILL**
                            **$470,832.18**

Your Financial Advisor:
THE LUPPINO GROUP
153 EAST 53RD STREET 46TH FL
NEW YORK NEW YORK 10022
(800) 333-9701

## ◼ WCMA® ACCOUNT

September 01, 2005 - September 30, 2005

### ASSETS

| | September 30 | August 31 |
|---|---|---|
| Cash/Money Accounts | 470,832.18 | 707.01 |
| Fixed Income | - | - |
| Equities | - | - |
| Mutual Funds | - | - |
| Options | - | - |
| Other | - | - |
| **TOTAL ASSETS** | **$470,832.18** | **$707.01** |

### LIABILITIES

| | | |
|---|---|---|
| Debt Balance | - | - |
| Short Market Value | - | - |
| **TOTAL LIABILITIES** | - | - |
| **NET PORTFOLIO VALUE** | **$470,832.18** | **$707.01** |

### CASH FLOW

| | This Statement | Year to Date |
|---|---|---|
| Opening Cash/Money Accounts | $707.01 | |
| **CREDITS** | | |
| Funds Received | 470,124.00 | 471,124.00 |
| Electronic Transfers | - | - |
| Other Credits | - | - |
| Dividends/Interest | 1.17 | 8.18 |
| Security Transactions | - | - |
| **TOTAL CREDITS** | **$470,125.17** | **$471,132.18** |
| **DEBITS** | | |
| Electronic Transfers | - | - |
| Margin Interest Charged | - | - |
| Other Debits | - | - |
| Visa Purchases(debits) | - | (300.00) |
| ATM/Cash Advances | - | - |
| Checks Written/Bill Payment | - | - |
| Security Transactions | - | - |
| **TOTAL DEBITS** | - | **($300.00)** |
| Net Cash Flow | $470,125.17 | $470,832.18 |
| Closing Cash/Money Accounts | $470,832.18 | |

4753    0019527  006869

1 of 4

D 1147

WILLIAM B MAY COMMERCIAL INC

Account Number: 862-02658.

24-Hour Assistance: (800) MER-WCMA

September 01, 2005 - September 30, 2005

## YOUR WCMA ASSETS

| CASH/MONEY ACCOUNTS Description | Quantity | Total Cost Basis | Estimated Market Price | Estimated Market Value | Estimated Annual Income | Current Yield% |
|---|---|---|---|---|---|---|
| CASH | 470,124.18 | 470,124 | | 470,124.18 | | |
| CMA NY MUNICIPAL MONEY | 708.00 | 708 | 1.0000 | 708.00 | 13 | 1.97 |
| **TOTAL** | | 470,832 | | 470,832.18 | 13 | |

A change in tier assignment will automatically convert the class of WCMA money fund shares held in your account. The WCMA Agreement and Program Description and the WCMA Fund Prospectus contain more details.

## YOUR WCMA TRANSACTIONS

### DIVIDENDS/INTEREST INCOME TRANSACTIONS

| Date | Transaction Type | Quantity | Description | Debit | Credit | Year To Date |
|---|---|---|---|---|---|---|
| 09/30 | Share Dividend | 1 | CMA NY MUNICIPAL MONEY PAY DATE 09/29/2005 | | | |
| 09/30 | Cash Dividend | | CMA NY MUNICIPAL MONEY PAY DATE 09/29/2005 FROM 08-31 THRU 09-29 | | .17 | |
| | Income Total | | CMA NY MUNICIPAL MONEY | | 1.00 | |
| | Subtotal (Non-Reportable Dividends) | | | | 1.17 | 8.18 |
| | **NET TOTAL** | | | | **1.17** | **8.18** |

4753     0330328 000859

026

D 1148

**TOTAL MERRILL**

September 01, 2005 - September 30, 2005

## YOUR WCMA TRANSACTIONS

**CASH/OTHER TRANSACTIONS**

| Date | Transaction Type | Quantity | Description | Debit | Credit |
|---|---|---|---|---|---|
| 09/30 | Funds Received | | | | 470,124.00 |
| | | | Deposit SubTotal | | 470,124.00 |
| | Subtotal (Funds Received) | | | | 470,124.00 |
| | **NET TOTAL** | | | | **470,124.00** |

## YOUR WCMA MONEY FUND TRANSACTIONS

| Date | Description | Sales | Purchases | Date | Description | Sales | Purchases |
|---|---|---|---|---|---|---|---|
| 09/01 | CMA NY MUNICIPAL MONEY | | 1.00 | | | | |
| | **NET TOTAL** | | 1.00 | | | | |

4753

016

D 1149

# Merrill Lynch

**Agreement Regarding Your Securities Account and Other Important Information**

You, the Client, and we, Merrill Lynch, Pierce, Fenner & Smith Inc. (Merrill Lynch), agree as follows:

(1) We will direct your order for a security or option to the marketplace we consider to be the primary market for that security or option.

(2) We will hold bonds and preferred stocks in bulk segregation (except for those held in custodian accounts). In the event of a call for less than an entire issue or series of those securities, the securities to be called will be randomly selected from those held in bulk.

(3) We are not responsible for the loss or destruction of securities that are placed in the custody of a non-U.S. bank or broker or other custodian, and are lost or destroyed as a result of war, civil commotion, enemy action, government acts or any other causes beyond the control of the depository or us.

(4) This statement of account shall be deemed conclusive if not objected to within ten (10) days.

(5) We receive a fee from ISA® banks of up to 2% per annum of the average daily balances. We receive a fee from our affiliated banks of up to $30 per annum for each retirement account and $65 per annum for each non-retirement account that sweeps balances to the banks under the RASP ℠ and ML bank deposit programs.

(6) You will have the right to vote full shares, and we may solicit instructions concerning the voting of full shares held in your account. The voting shares in your account will be governed by the rules and policies of the New York Stock Exchange and the Securities and Exchange Commission then in effect, or other applicable exchanges or regulatory provisions.

(7) This statement serves as a confirmation of purchases that result from automatic reinvestment transactions, as well as your AIPS transactions, during the statement period.

(8) As an option client, please advise us promptly of any material change in your investment objectives or financial condition. Individual options commission charges have been included in your confirmation; a summary of this information will be made available to you upon request.

(9) All transactions in your account are subject to the constitution, rules, regulations, customs, usages, rulings and interpretations of the exchange or market, and its clearinghouse, if any, where the transactions are executed, and if not executed on any exchange, the National Association of Securities Dealers, Inc.

(10) We trade for our own accounts as an odd lot dealer, a block positioner and/or arbitrageur. At the time of any transaction in your account, we or an affiliate may have a long or short position in the same security, and our positions may be completely or partially hedged.

(11) We can use your free credit balance in our business and such funds are not segregated. You have the right to receive, in the normal course of business, any free credit balance and any fully paid securities to which you are entitled, subject to any open commitments in any of your accounts.

(12) Merrill Lynch's financial statement is available for your inspection at our office, or a copy will be mailed upon request to: Merrill Lynch, WFC-NT, New York, N.Y. 10281.

(13) If this statement is for a margin account, it is a combined statement of your margin account and special memorandum account maintained for you pursuant to applicable regulations. The permanent record of the separate account, as required by Regulation T, is available for your inspection upon request. You should retain this statement for use with your next statement to calculate interest charges, if any, for the period covered by this statement. The interest charge period will parallel the statement period, except that interest due for the final day of the statement period will be carried over and appear on your next statement.

(14) The Securities Investor Protection Corporation (SIPC) and our excess-SIPC bond do not cover assets that are not securities or assets that are not held at Merrill Lynch, such as cash on deposit at Merrill Lynch Bank USA, Merrill Lynch Bank & Trust Co. or other depository institutions. Those deposits are protected by the Federal Deposit Insurance Corporation. Merrill Lynch is not a bank. Unless otherwise disclosed, investments through Merrill Lynch ARE NOT FDIC-INSURED, ARE NOT BANK GUARANTEED, AND MAY LOSE VALUE.

(15) Merrill Lynch bears no responsibility or liability with respect to independent research selected by the Independent Consultant under the Global Research Settlement. Clients assume full responsibility for any trading decisions they make based upon such independent research ratings or reports.

**Prices and Valuations**

While we believe our pricing information to be reliable, we cannot guarantee its accuracy.

Managed Trust Units: Information is based on data from the Merrill Lynch Trust Company or its agent. Neither the Trust nor its units are held in your Merrill Lynch account and are not subject to SIPC.

Cost Data/Realized Capital Gains & Losses: Cost data and Realized Capital Gains/Losses are provided for informational purposes only. Please review for accuracy. Merrill Lynch is not responsible for omitted or restated data. Please consult your tax advisor to determine the tax consequences of your securities transactions. Your statement is not an official accounting of gains/losses, and Merrill Lynch does not report gains/losses to the I.R.S. Please refer to your records, trade confirmations, and the Consolidated Tax Reporting Statement (Form 1099).

Fixed-Income Securities: Values on your statement generally are based on estimates, which are obtained from various sources. The values often vary from prices achieved in actual transactions, especially for thinly traded securities, and are not firm bids or offers. The values assume no unusual market conditions and are generally for transactions of $1 million or more, which often have more favorable pricing than transactions in smaller amounts. Accordingly, you may pay more than the values if you purchase securities, or receive less if you sell securities.

Insurance Policies: Information is based on data from the insurer that issued the policy. Merrill Lynch is not responsible for the calculation of policy values. Policies are generally not held in your Merrill Lynch account. If Merrill Lynch as custodian or trustee holds a policy that is a security, SIPC protection and excess-SIPC protection applies.

**Symbols and Abbreviations**

| | | | |
|---|---|---|---|
| ¤ | Interest reported to the IRS. | N/A | Value and/or cost data not available. |
| ■ | Gross Proceeds reported to the IRS. | N/C | Not-Calculated. |
| * | Dividends reported to the IRS. | N/N | Non-negotiable securities. |
| : | Transactions reported to the IRS. | N/O | Held registered in your name. |
| OCC | Options Clearing Corporation. | N/O CUST | Non-negotiable Custodian Registration. |
| ** | Merrill Lynch maintains a fundamental opinion on this company. | | |
| # | Transaction you requested required same-day payment - Merrill Lynch retained last day's dividend to offset cost of advancing payment on your behalf. | | |
| RD | Bonds are changeable from coupon to registered and vice versa without charge. | | |
| RG | Bonds registered for both principal and interest. | | |
| ↑↓ | Indicates that our global securities research division has upgraded(↑) or downgraded(↓) its fundamental opinion on a security. | | |

00004849

*************AUTO**3-DIGIT 100
236134 0004849 T34 P38 0.517
WILLIAM B MAY COMMERCIAL INC
505 8TH AVE # 804
NEW YORK NY 10018-4549

# EXHIBIT
# 14

STATE

# eAccessNY Occupational Licensing Management System



## License Details

Press "Previous Record" to display the previous license.

Press "Next Record" to display the next license.

Press "Search Results" to return to the Search Results list.

Press "New Search Criteria" to do another search of this type.

Press "New Search" to start a new search.

| | |
|---|---|
| Name: | **LI, SHENG** |
| License Type: | **Salesperson:Salesperson** |
| License Number: | **40LI0900300** |
| License Status: | **Current** |
| Expiry Date: | **03/13/2010** |

**Addresses**

**Practice Locate – Salesperson**     Address:     **520 8TH AVE**
**22ND FL**
**NEW YORK , NY**
**NEW YORK**
**10018**
**US**

**Relation(s)**

| Related Party Name | License Type | Address |
|---|---|---|
| **INTERNATIONAL PROPERTIES GROUP INC** | **Principal Office:Princ Off** | **520 8TH AVE**<br>**22ND FL**<br>**NEW YORK , NY**<br>**NEW YORK**<br>**10018**<br>**US** |

Site Map ¦ Privacy Policy ¦ Accessibility Policy ¦ Contact Us

AC 02081

505 Eighth Avenue, Suite 804
New York, NY 10018
CELL: 917-882-3960
FAX: 212-633-2777
EMAIL: jvaracchi@aof.com

JOHN VARACCHI, A.I.A.
Principal

**GMAC** International
**Real Estate** Properties

|  |  | 22ND FL<br>NEW YORK , NY<br>NEW YORK<br>10018<br>US |
|---|---|---|
| DEUTSCH, CHRISTIAN M | Salesperson:Salesperson | 520 8TH AVE<br>22ND FL<br>NEW YORK , NY<br>NEW YORK<br>10018<br>US |
| LI, SHENG | Salesperson:Salesperson | 520 8TH AVE<br>22ND FL<br>NEW YORK , NY<br>NEW YORK<br>10018<br>US |
| CLEGG, JANE | Salesperson:Salesperson | 520 8TH AVE<br>22ND FL<br>NEW YORK , NY<br>NEW YORK<br>10018<br>US |
| RIDDELL, LEIF | Salesperson:Salesperson | 520 8TH AVE<br>22ND FL<br>NEW YORK , NY<br>NEW YORK<br>10018<br>US |
| KU, HAERAN | Salesperson:Salesperson | 520 8TH AVE<br>22ND FL<br>NEW YORK , NY<br>NEW YORK<br>10018<br>US |
| CHEN, KATHERINE G | Salesperson:Salesperson | 520 8TH AVE<br>22ND FL<br>NEW YORK , NY<br>NEW YORK<br>10018<br>US |
| JACKSON, JULIE A | Salesperson:Salesperson | 520 8TH AVE<br>22ND FL<br>NEW YORK , NY<br>NEW YORK<br>10018<br>US |
| PENAFIEL, GABRIELA S | Salesperson:Salesperson | 520 8TH AVE<br>22ND FL<br>NEW YORK , NY<br>NEW YORK<br>10018<br>US |
| GREEN, WILLIAM H | Salesperson:Salesperson | 520 8TH AVE<br>22ND FL |

AC 02069