UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
AIR CHINA LIMITED,

                      Plaintiff,

     - against -

NELSON LI (a/k/a SHENG LI), JOHN A.VARACCHI
(a/k/a JOHN A. DAVIS), GEORGE F. DONOHUE,
JAY KOPF (a/k/a JACOB M. KOPF)
CHRISTIAN M. DEUTSCH,
WBM-JMK DEVELOPMENT LLC (d/b/a WBM
INTERNATIONAL DEVELOPMENT),
JMK CONSTRUCTION GROUP LTD.,
TCC INTERIORS, LTD., GMAC REAL ESTATE LLC,
GMAC REAL ESTATE IPG NEW YORK,

                   Defendants.
-------------------------------------------------------------------x

**Docket No.:**
**No. 07 Civ. 11128 (LTS)(DFE)**

## PLAINTIFF'S MEMORANDUM OF LAW
## IN OPPOSITION TO MOTION TO DISMISS

Jacques Catafago, Esq. (7894)
THE CATAFAGO LAW FIRM, P.C
Attorney for Plaintiff
The Empire State Building
350 Fifth Avenue – Suite 4810
New York, New York 10118
(212) 239-9669

# TABLE OF CONTENTS

**PAGE**

Table of Authorities ........................................................... i

Preliminary Statement ........................................................ 1

Legal Standard ............................................................... 2

Facts ........................................................................ 2

THE FIRST AND SECOND CLAIMS FOR RELIEF UNDER RICO
SHOULD NOT BE DISMISSED .................................................... 16

    Sufficient Specificity .................................................. 16

    Pattern of Racketeering Activity ....................................... 17

    Distinction Between Defendants and the Enterprise ...................... 18

    Air China Has Standing to Pursue Its RICO Claims ...................... 18

THE THIRD CLAIM FOR RELIEF FOR BREACH OF FIDUCIARY DUTY
SHOULD NOT BE DISMISSED .................................................... 18

THE FOURTH CLAIM FOR RELIEF FOR CONVERSION
SHOULD NOT BE DISMISSED .................................................... 19

THE FIFTH CLAIM FOR RELIEF FOR UNJUST ENRICHMENT
SHOULD NOT BE DISMISSED .................................................... 20

THE SIXTH AND SEVENTH CLAIMS FOR RELIEF FOR NEGLIGENCE AND
NEGLIGENT MISREPRESENTATION SHOULD NOT BE DISMISSED ........ 20

THE EIGHTH CLAIM FOR RELIEF FOR FRAUD IN THE
INDUCEMENT SHOULD NOT BE DISMISSED ............................... 21

THE NINTH CLAM FOR RELIEF FOR AN ACCOUNTING
SHOULD NOT BE DISMISSED ............................................ 22

THE TENTH CLAIM FOR RELIEF UNDER NEW YORK GENERAL
BUSINESS LAW §349 SHOULD NOT BE DISMISSED............................ 23

CONCLUSION ............................................................. 24

# TABLE OF AUTHORITIES

**PAGE**

**Statutes**

Fed. R. Civ. P. 9(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Fed. R. Civ. P. 12(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-2

Fed. R. Civ. P 12(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-2

Fed. R. Civ. P. 15 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Fed. R. Civ. P. 26 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Fed. R. Civ. P. 34 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Fed. R. Civ. P. 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

18 U.S.C. § 1961, et seq . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

NYGBL § 130 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8-11

NYGBL §349 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 23, 24

New York Limited Liability Law § 204(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

NYCPLR 214 (c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

**Cases**

<u>Allen v. WestPoint – Pepperell, Inc.</u>
945 F. 2d 40 (2d Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

<u>Asian Vegetable Research and Development Center v. Institute of Intern. Education</u>
944 F. Supp. 1169 (S.D.N.Y. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

<u>ATSI Comme'n. Inc. v. Shaar Fund, Ltd.</u>
493 F. 3d 87 (2d Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

<u>Axa Versicherun, AG v. New Hampsire Insurance Company</u>
2998 WL 1849312 (S.D.N.Y. April 22, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . 22

**PAGE**

Azrielli v. Cohen Law Offices, 21 F.3d 512 (2d Cir. 1994) . . . . . . . . . . . . . . . . . . . . .     17

Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955 (2007) . . . . . . . . . . . . . . . . . . . . . . . . .     2

Bridgestone/Firestone Inc. v. Recovery Credit Svs. Inc.
98 F. 3d 13 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     21

Burns International Security Services, Inc. v.
International Union, United Plant Guard Workers of America
47 F 3d 14 (2d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     2


Calcutti v. SBU, Inc., 223 F. Supp. 2d 517 (S.D.N.Y. 2002) . . . . . . . . . . . . . . . . . . .     20

Concord Financial Corp. v. Value Line, Inc.
2004 WL 1687205 (S.D.N.Y. July 28, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     21

Cortec v. Sum Holding, 949 F. 2d 42 (2d Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . .     24

Custom Clothier, Ltd. v. Mohan's Custom Tailor, Inc.
No. 96 Civ. 6320, 1997 WL 370595 at *6 (S.DN.Y. July 1, 1997) . . . . . . . . . . . . .     21

Dayton Monetary Associates v.
Donaldson, Lufkin and Jenrette Securities
1992, WL 204347 at *3 (S.D.N.Y. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     1

Deerfield Communications Corp. v. Chesebrough – Ponds Inc.
68 N.Y. 2d 954 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     21

Dopp v. Teachers Ins. and Annuity Assn'n. of Am.,
1993 WL 404676, at *5 (S.D. N.Y. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     19

DynCorp. v. GTE Corp., 215 F. Supp. 2d 308 (S.D.N.Y. 2002) . . . . . . . . . . . . . . . .     22

El-Khoury v. Karasik, 265 A.D.2d 3 372, 373-74 (2d Dept 1999) . . . . . . . . . . . . . . .     19

Goll v. First Tennessee Capital Markets
2006 WL 2135801 (S.D.N.Y. 8/1/06, J. Baer) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     20

Great Earth Int'l Franchising Corp. v. Milks Dev.
311 F. Supp. 2d 419 (S.D. N.Y. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     22

**PAGE**

Gulf Coast Development Group, LLC  v.  Lebor
2003 WL 22871914 (S.D.N.Y., Dec. 4, 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    21

Hecht  v.  Commerce Clearing House Inc., 877 F. 2d 21, 26 fn. 4 (2d Cir. 1990) . . . . .    16

M'Baye  v. N.J. Sports Prod., Inc.
No. 06 - CV-3439, 2007 WL 43 1881 at *7 (S.D.N.Y. Feb. 7, 2007) . . . . . . . . . . . . .    17

McLaughlin  v.  Anderson, 962 F.2d 187 (2d Cir. 1992)  . . . . . . . . . . . . . . . . . . .    1

New York  v.  Fedman, 210 F. Supp. 294 (S.D.N.Y. 2002) . . . . . . . . . . . . . . . . . . .    24

New York Univer.  v.  Cont'l Ins. Co., 87 N.Y.2d 308 (1995) . . . . . . . . . . . . . . . . .    21

Oswego Laborers' Local 214 Pension Fund  v.  Marine Midland Bank, NA
85 N.Y. 2d 20, 623 N.Y.S. 2d 529, 647 N.E. 2d 741 (1995)  . . . . . . . . . . . . . . . . . .    24


Pani  v.  Empire Blue Cross Blue Shield
152 F. 3d 67 (2d Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    1

Patel  v.  Contemporary Classics of Beverly Hills
259 F. 3d 123 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    2

Pfizer, Inc.  v.  Stryker Corp.
2003 WL 21660339 (S.D.N.Y. July 15, 2003)  . . . . . . . . . . . . . . . . . . . . . . . . . . . .    21

Regal Custom Clothiers, Ltd.  v.  Mohan's Custom Tailors, Inc.
1997 WL 370595 (S.D.N.Y. July 1, 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    22

Regency Foundation  v.  Robson
14 Misc. 3d 1209 A, 836 N.Y.S. 2d 489 (Sup. Ct. N.Y. 2006) . . . . . . . . . . . . . . . . .    19

Ruffolo  v.  Garabin &U Sher, P.C.
239 A.D. 2d 8, 668 NYS 2d 169 (1st Dept. 1998). . . . . . . . . . . . . . . . . . . . . . . . . .    19

Ruotolo  v.  City of New York, 514 F.3d 184, 188 (2d Cir. 2008) . . . . . . . . . . . . . . .    2

Revankar  v.  Tzabar
16 Misc. 3d 1127A, 847 N.Y.S.2d 904 (Sup. Ct. Kings Co. 2007) . . . . . . . . . . . . . . .    19

**PAGE**

Sears Roebuck & Co. v. Enco, 43 N.Y. 2d 389 (1977) . . . . . . . . . . . . . . . . . . . . . .    19

Securitron Magnalock Corp. v. Schnabolk
65 F. 3d 256 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    24

Solutia, Inc. v. FMC Corporation
385 F. Supp. 2d 324 (S.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    22

Tarshis v. Riese Org., 211 F. 3d 30, 39 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . .    1

Taylor & Jennings Inc. v. Bettino Bros. Construction Company, Inc.
106 A.D. 2d 779, 483 N.Y.S. 2d 813 (3d Dept. 1984) . . . . . . . . . . . . . . . . . . . . . .    20

The Topps Company Inc. v. Cadbury Stani S.A.I.C.
380 F. Supp. 2d 250 (S.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    22

Verizon Directories Corp. v. Yellowbook USA Inc.
338 F. Supp. 2d 422 (E.D. N.Y. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    24

VTech Holdings Limited v. Lucent Technologies Inc.
172 F. Supp. 2d 435 (S.D.N.Y. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    21

Westwoods Aviation LLC v. Atlantic Aviation Flight Services Inc.
2007 WL 2454115 (S.D.N.Y. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    21

William B. May Jr. Family Limited Partnership v. GMAC Real Estate, LLC,
George F. Donohue, Christian M. Deutsch, William B. May Commercial Inc.
1051 Brant Holding Company LLC , et al (06 CV 3924) . . . . . . . . . . . . . . . . . . . . .    4

United States v. Chestman, 947 F. 2d 551 (2d Cir. 1991) . . . . . . . . . . . . . . . . . . . .    19

United States Fire Ins. Co. v. United Limousine Service, Inc.
303 F. Supp. 2d 432 (S.D.N.Y. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    17

**Ordinances**

City of Long Beach
Code, Licensing,
Chapter 14, Article II . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    14

City of Long Beach
Code, Building Code,
Chapter 7, Articles I and II . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    14

**PAGE**

## Other Authorities

60A N.Y. Jurisprudence 2d
Fraud & Deceit, Section 7 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    22

**Preliminary Statement**

Plaintiff, Air China Limited ("Air China"), respectfully submits this memorandum in opposition to the defendants' motion to dismiss. As set forth below, the motion is procedurally and substantively deficient. Erroneously labeled an FRCP 12(b) motion (Notice of Motion; Defendant's Brief at pp. 1 & 28) this in reality is an FRCP 12(c) motion. Issue was joined four (4) months ago and the parties have engaged in extensive document production. The motion is made returnable one day before the first of eight (8) depositions was to begin. Of course, FRCP 12(c) motions may be made at any time, provided they do not interfere with trial scheduling. Here, however, the timing (as discussed in the accompanying Affidavit) is very telling.

More importantly, defendants' use of Affidavits and Exhibits in support of their motion is entirely improper. See Allen v. WestPoint – Pepperell, Inc., 945 F. 2d 40, 44 (2d Cir. 1991). Conversely, because they are part of the public record and/or incorporated into the Complaint, the exhibits in opposition may be considered. Id.; Tarshis v. Riese Org., 211 F. 3d 30, 39 (2d Cir. 2000); Pani v. Empire Blue Cross Blue Shield, 152 F. 3d 67, 75 (2d Cir. 1988); Dayton Monetary Associates v. Donaldson, Lufkin and Jenrette Securities 1992, WL 204347 at *3 (S.D.N.Y. 2002) (public Court filings considered). The Court also may consider the factual allegations of the Civil RICO Statement as a supplement to the Complaint. McLaughlin v. Anderson, 962 F.2d 187, 189 (2d Cir. 1992).

In addition to moving under the wrong section of law, and improperly using affidavits and exhibits, defendants attack a Complaint not before this Court. Four pages (14 – 17) and over a dozen case citations are devoted to attacking RICO claims under 18 U.S.C. §§ 1962(a) and 1962(b). A simple review of Air China's Complaint (¶¶ 3 and 192) and Civil RICO

Statement (Sections (a), (k) and (l)) discloses that Air China did not bring claims under these provisions; rather, only claims pursuant to 18 US.C. §§ 1962 (c) and (d) are asserted.

The moving brief is rife with broad, similarly inaccurate characterizations of the Complaint and applicable law. Absolutely no detail or analysis of the Complaint is provided. For these reasons, the motion should be denied.

### Legal Standard

On a Rule 12(c) motion, the Court should review the pleadings to determine if movants are entitled to a judgment as a matter of law. Burns International Security Services, Inc. v. International Union, United Plant Guard Workers of America, 47 F.3d 14, 16 (2d Cir. 1994). Because the motion is analogous to a Rule 12(b)(6) motion (Patel v. Contemporary Classics of Beverly Hills, 259 F.3d 123, 126 (2d Cir. 2001), all factual allegations must be accepted as true and all reasonable inferences should be drawn in plaintiff's favor. ATSI Comme'n. Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007). So long as enough facts are pleaded to state a claim for relief plausible on its face, the motion should be denied. (Cf. Ruotolo v. City of New York, 514 F.3d 184, 188 (2d Cir. 2008) (following Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955 (2007).

### Facts[1]

This action arises from an ongoing fraudulent scheme carried out by defendants who have been engaged in an ongoing conspiracy to, amongst other things, convert and misappropriate over $4 million dollars belonging to plaintiff by fraudulently deceiving plaintiff and the general public into believing defendants remain part of the long esteemed William B. May Real Estate Company. Defendants also attempted to and continue to assert certain sham

---

[1] Defendants concede as they must, (Brief at p. 3) that all Complaint allegations must be accepted as true, with all inferences favoring plaintiff, but defendants then proceed to ignore virtually every single one of the allegations in the 47 page Complaint, as well as the entirety of the 78 page Civil RICO Statement. For the sake of brevity, those facts are only summarized herein.

legal positions as part of an effort to retain those converted funds, to intimidate plaintiff and to obtain additional funds from plaintiff. This case arises specifically out of defendants' violation of § 1962(c) of The Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, et seq., as well as their violations of established common law principles of fraud in the inducement to contract, conversion, breach of fiduciary duty, unjust enrichment, failure to account, negligence and violation of NY General Business Law § 349. As a result of defendants' unlawful actions, plaintiff lost more than $4 million stolen by defendants and millions more in consequential damages.

In connection with their multi-million dollar criminal scheme against Air China, Jay Kopf, together with defendants Nelson Li, John A. Varacchi, George F. Donohue, Christian M. Deutsch and WBM-JMK Development LLC, defrauded plaintiff into believing: that an entity named "WBM International Development LLC" had existed since the 1800's, was well established and experienced in the field of general construction and real estate development, and was an existing subsidiary of, and had the backing of, the venerable real estate company William B. May; and JMK Construction Group Ltd. would simply be a sub-contractor on a contemplated construction job for plaintiff. In fact, Jay Kopf, together with these other individual defendants, secretly created the entity "WBM-JMK Development LLC" in January 2005 (with only these individuals as owners and with no history, office, employees, bank account, experience, license, insurance or backing of any kind from William B. May, or from anyone else) and defendants never provided that name to plaintiff but instead criminally used an unauthorized alias for that entity ("WBM International Development LLC") so as to continue to deceive plaintiff into thinking that William B. May was behind the venture.

JMK Construction Group Ltd. was and is a New York State corporation. This entity, controlled by Jay Kopf, was an undisclosed general contractor in dealing with plaintiff.

and thereby siphoned off millions belong to plaintiff. TCC Interiors, Ltd. was falsely represented by defendants to be an arms length sub-contractor, but in reality it too belonged to and was controlled by Jay Kopf and siphoned off well over $610,000 belonging to plaintiff. Defendant Jay Kopf, through the companies he owns (defendant TCC Interiors, Ltd. and defendant JMK Construction Group, Ltd.), is the only defendant with any general contractor experience.

GMAC Real Estate LLC was and is a Delaware limited liability company doing business at 505 8th Avenue, New York, New York. GMAC lists Christian M. Deutsch amongst its sales associates, but he is not licensed by New York State Division of Licensing to sell real estate or to otherwise hold himself out to the public as sales agent. GMAC Real Estate IPF New York was and is an unauthorized alias used by International Properties Group Inc. and doing business at 505 8th Avenue, New York, New York with Donohue as President, Deutsch as Chairman and Li as Managing Director. Donohue, Deutsch and GMAC have been enjoined by this Court [*William B. May Jr. Family Limited Partnership v. GMAC Real Estate, LLC, George F. Donohue, Christian M. Deutsch, William B. May Commercial Inc., 1051 Brant Holding Company LLC ,et al* (06 CV 3924) (Judge Sprizzo)] from using the "William B. May" name for commercial purposes, but Deutsch, self-described "Chairman" of GMAC Real Estate Group IPG New York (which also lists him amongst its real estate "sales agents" although in fact he has no such New York State license), continues to allow defendant Donohue and others to report to the GMAC defendants' New York offices (first at 505 8th Avenue, the purported office of "WBM" from which Air China was defrauded and now at 520 8th Avenue) and to use their New York real estate brokerage or sales license relating to William B. May.

In early 2003, plaintiff became interested in developing its property at 485 West Broadway, Long Beach, New York ("the Property") so that it could house its airline workers during their stays in New York. For that purpose, in June of 2003, plaintiff solicited the services

4

of the very well established real estate company, William B. May Company, which had been a fixture in the real estate community in New York since 1866. In June 2003, plaintiff specifically requested that the company submit a proposal for the renovation of plaintiff's Property. In response defendant Donohue wrote to Air China on June 12, 2003 on the letterhead of William B. May Company and as purported "President" of William B. May Company, stating as follows:

> "We are honored to have this opportunity to provide our expertise and service to you. My associates and I are reviewing the information about the property, discussing it with different parties and performing our due diligence. We will send you the proposal when we complete it.
>
> We look forward to working with you."

By this letter, with which William B. May's glossy brochure was enclosed, defendants' scheme to defraud plaintiff began. Ultimately, defendants baited plaintiff with the false and material illusion that William B. May Company would be involved and ultimately created a shell company, totally unrelated to William B. May Company, as part of an elaborate criminal bait and switch scheme designed to defraud plaintiff. As part of their scheme to defraud plaintiff, defendants initially used the name of an inactive, dissolved corporation -- William B. May International Inc., which had not incorporated until September 7, 1999 and which had been dissolved by New York State Proclamation issued by the Secretary of State on June 25, 2003 for non-payment of franchise taxes. That company remained dissolved until defendants George F. Donohue and Christian M. Deutsch sought to annul the dissolution on April 7, 2004.[2]

On or about June 26, 2003, defendant Nelson Li, acting on behalf of himself and

---

[2] Well before then, however, on June 26, 2003, while William B. May International Inc. still was dissolved, defendants Nelson Li, George F. Donohue and Christian M. Deutsch, as part of their scheme to defraud plaintiff, submitted to plaintiff a written proposal for hotel management of the plaintiff's Property, signed by George F. Donohue as President, falsely and fraudulently claiming that: the company had been incorporated in 1866, and had more than 200 real estate professionals; and Christian Deutsch was Chief Executive Officer, George F. Donohue was President and Nelson Li was Managing Director. Those and other portions of this document were knowingly false when made and were used successfully to deceive plaintiff into doing business with defendants.

individual defendants Jay Kopf, John A. Varacchi and George F. Donohue, in an effort to convince plaintiff to hire defendants to develop plaintiff's Property ("the Air China Project") presented plaintiff with a document entitled "Over-all Overhaul Plan" ("the Overhaul Plan"). This too was part of the defendants' fraudulent scheme.[3]

In his scheme to defraud Air China and the public, Donohue partnered with Jay Kopf, John A. Varacchi, Nelson Li, Christian M. Deutsch and GMAC. None of these other four men were licensed brokers. John A. Varacchi, whose field was in the sale of furniture, was an investor with George F. Donohue in working to create an illusion that Donohue controlled William B. May. Throughout their dealings with Air China, each of the individual defendants falsely and fraudulently represented that each was a legitimate representative of William B. May.

In February 2004, Nelson Li, acting on behalf of himself and Jay Kopf, John A. Varacchi and George F. Donohue, presented plaintiff with a document entitled "Professional Assessment Report" ("PAR") ostensibly prepared by "WBMI established 1886". Defendants Nelson Li and George F. Donohue in February 2004 also misrepresented to plaintiff that Burton Roslyn was a "Senior Vice President of Construction" for William B. May Commercial Real Estate" and would be involved in the Project. In fact, he never held such a post and never was involved in the Project. The February 2004 PAR submitted by defendants (through Nelson Li) to

---

[3] The Overhaul Plan falsely and fraudulently indicated that: it was being submitted by an entity named "WBMI" whose President was defendant George F. Donohue; WBMI was established in 1866 and was a "full service real estate company with the longest history in the United States" and was providing its services and "137 years of real estate experience" and its "credibility and business reputation" were at the service of the Air China Project; and a second entity known as "WBMID" (which in fact did not even exist) was a "diversified and "full service" "wholly owned subsidiary of WBMI" and WBMID undertake to "work continuously for the Project." Each and every one of these statements, as well as others in the Overhaul Plan, was knowingly and intentionally false when made and was reasonably and detrimentally relied upon by plaintiff in deciding to do business with defendants, Nelson Li, John A. Varacchi, George F. Donohue and Jay Kopf.

plaintiff, falsely and fraudulently indicated that WBMI (which in reality was dissolved) was offering its "best services for optimum interest of Air China".[4]

The ensuing bid (submitted in English and in Chinese language versions) was on letterhead of non-entity "WBM International Development LLC" that used GMAC's address and phone number (WBM never had a separate phone or its own address) and William B. May's email address and fax numbers.[5]  In fact, the record establishes that at that time: there was no "WBM International Development LLC" in existence; and on January 13, 2005, less than two months before the bid, defendants had only just secretly formed a New York limited liability company "WBM-JMK Development LLC", a name never disclosed to plaintiff (and proceeded to use an unauthorized alias, "WBM International Development LLC").    Defendants never posted any indication at 505 8th Avenue (or anywhere else) that "WBM International

---

[4] Further, the PAR falsely and fraudulently sated that WBMI was established in 1866 and was a full service real estate company with the largest history in the United States including over 200 real estate specialists; an entity known as "WMID" (which in fact did not exist) was a "wholly – owned subsidiary of WBMI" and WBMID would undertake to "work continuously for the project;" and WBMI's principals included Nelson Li as Executive Director, John A. Varacchi as Vice President, Jay Kopf as Senior Vice President and Burton Roslyn as Senior Vice President. The Professional Assessment Report submitted by defendants (through Nelson Li) to plaintiff ostensibly for "WBMI established 1866" further falsely and fraudulently represented "[s]ince the summer of 2002, our professional staff and local building department and other officials have carried out meetings and talks"; "[a]nother important benefit arises from the good relationship between our company and  the Office of the New York Governor"; **"Our commitment to Air China:"** [w]e also have a good cooperative relationship with the local electric power department"; "[w]e guarantee best services for the optimum interests of Air China";"[w]e have already organized contingents of our best professional people to put their expertise at the service of this Project. We shall intervene in the Project to ensure its success"; that defendant George F. Donohue had previously been in charge of NY    NY Port Authority's 20 million square feet (in fact he had been forced to resign under allegations of **criminal misconduct**); that WBMI had done $1.3 billion in business that year; and that Donohue had a Ph.D. in "international business" (Pace University has no record of any such alleged degree); and that Burton Roslyn a registered designer, was Senior Vice President on the Project (in fact he only attended a single meeting at the early stages with plaintiff). Each and every one of these statements, as well as others in the Professional Assessment Plan, was knowingly and intentionally false when made and was reasonably and detrimentally relied upon by plaintiff in deciding to do business with defendants Nelson Li, John A. Varacchi, George F. Donohue, Jay Kopf and the later-formed defendant WBM.

[5] The bid was signed by George F. Donohue as "President" and falsely advised: "Our company….started efforts on this project in July 2002. The executives and professionals of our company have been to the site many times….Our company, which was established in 1866, is the oldest real estate company in the United States. We have been involved in many real estate projects…….In the past years, we have worked with many Chinese companies. We will provide all of our expertise of 139 years of real estate services in the United States to serve Air China in its Long Beach project."

Development LLC" was an alias for WBM-JMK Development LLC. That failure constituted a crime pursuant to NY General Business Law § 130.

On December 29, 2005, using the GMAC address, and on "William B. May Commercial Real Estate" letterhead, including the William B. May website address, George F. Donohue wrote to plaintiff falsely and fraudulently stating: "William B. May Commercial Inc. is now GMAC Real Estate IPG ….Our name will change, but our commitment to serve our customers is as strong as ever."(emphasis in original). Defendants never retracted or amended this false and fraudulent statement, even after George F. Donohue, GMAC and Christian M. Deutsch each had been sued by the William B. May family in this Court and consequently each had become subject to a Federal Court injunction barring them from any commercial use of the "William B. May" name.

As part of their scheme to defraud, the defendants created a purported contract dated May 31, 2005 ("the May 2005 Agreement") listing the fictitious name and entity "WBM International Development LLC" as contractor (so as to deceive plaintiff into believing that a William B. May company stood behind the Project), with George F. Donohue signing, under oath, as "President" of that purported company operating out of 505 Eighth Avenue, New York, New York (which in reality was the address for defendants GMAC and Christian M. Deutsch).

Prior to presenting plaintiff with the fraudulent May 2005 Agreement, defendants met with plaintiff at William B. May's office (575 Madison Avenue, N.Y., N.Y.) on March 28, 2005, in order to continue to fraudulently foster the false impression that that venerable company was behind the Project; and they followed up with a fax from William B. May to plaintiff (signed by George F. Donohue, "President" of WBM, but with GMAC's address) referring to the meeting "at our offices." Prior to defendants providing plaintiff with the May 2005 Agreement, defendants Nelson Li also gave plaintiff a business card identifying himself as "Managing

Director" of "William B. May International – Real Estate since 1866" and "WBM – Real Estate since 1866" with the "corporate headquarters" of 575 Madison Avenue, New York, NY, once again reinforcing the fraudulent impression that that venerable company was behind the Project.

In reasonable reliance upon the fraudulent promises set forth in all the earlier representations, documents and negotiations[6], as well as those contained in the May 2005 Agreement itself, plaintiff executed the May 2005 Agreement and made the first two (2) payments, set forth therein, by checks dated June 7, 2005 and June 14, 2005, in the amounts of $562,875 and $375,250, each payable to the fictitious "WBM International Development LLC." Even eleven days before the May 2005 Agreement was signed, George F. Donohue fraudulently represented to plaintiff in both English and Chinese (translated by defendant Nelson Li), that "[o]ur reputation has been built on 139 years of keeping our clients happy and satisfied..." He did so on non-entity WBM's letterhead, using the fax number and email address of William B. May and the office address of defendant GMAC. The May 2005 Agreement was procured by fraud and was signed by defendant George F. Donohue as purported "President" of a non-entity, "WBM Development International LLC." According to the May 2005 Agreement, George F. Donohue swore that he was then President of "WBM International Development LLC", which in fact was a perjurious statement. According to the May 2005 Agreement, WBM was to pay for all permits and to perform all work as general contractor. It was never licensed or qualified to do so and never did so. According to the May 2005 Agreement, the entire Project was required to be completed in 8 months and WBM as "contractor" was required to compensate plaintiff up to 3% of the stipulated cost of the work ($3,950,000) for delays in connection with the Project (which to date still has not been completed) but never did so.

---

[6] The dozens of mail fraud predicate acts both prior _and_ subsequent to the May 2005 signing, are carefully spelled out in Air China's pleadings. (See, e.g. Civil RICO Statement, pages 5 – 27).

After defrauding plaintiff into signing the May 2005 Agreement and collecting almost $1 million, defendants Nelson Li, Jay Kopf, George F. Donohue, John A. Varacchi and WBM-JMK now faced a quandary; they had deceived plaintiff into entering into the May 2005 Agreement based upon the fraudulent representations that the contractor was "WBM International Development LLC," a supposedly well established subsidiary of an 1866 company, William B. May Company. The formation of WBM-JMK in fact did not occur until 2005. The entity known as "WBM-JMK Development LLC" was created by articles of organization filed January 13, 2005 by the law firm of Ballon, Stoll, Bader & Nadler, P.C., which listed no other name for the entity and which placed its sole location for business at the home address of attorney Stephen P. Long in Westchester, New York. (The statutorily required publication did not occur until April 27, 2005.) Upon information and belief, defendants never intended to do and never did do business at that location or in that county. It was only as part of their conspiracy to defraud plaintiff, that defendants Jay Kopf, Nelson Li, John A. Varacchi and George F. Donohue caused to be formed a New York limited liability company named "WBM-JMK Development LLC" ("WBM-JMK"). WBM-JMK never had an office, employees, insurance, ties to William B. May or contracting license or experience. The never-amended articles of organization filed under New York Limited Liability Company Law § 203 for WBM-JMK expressly provided that the name of the entity was "WBM-JMK Development LLC" the office of entity was in Westchester, New York. The May 2005 Agreement was the vehicle used to convert plaintiff's monies. (According to that document, plaintiff's funds were to be placed in a bank account only in the name of the named general contractor. They were not, and could not, be so placed because that contractor simply did not exist.) As a result of their fraud, defendants thus had obtained almost $1 million in checks they could not cash; there was no legal entity in existence known as "WBM International Development LLC". Thus, they concocted a plan to

file an assumed name certificate for WBM-JMK Development LLC (a name never disclosed to plaintiff) so that plaintiff's payments to "WBM International Development LLC" could be deposited into their bank account.

In fact, in all their dealings with plaintiff, defendants Nelson Li, George F. Donouhue, Jay Kopf, John A. Varacchi and WBM-JMK (a) never used or had such an office address and (b) fraudulently and unlawfully never used the name "WBM-JMK Development LLC."[7]

As part of their scheme to defraud, using the same attorney (Stephen B. Long) who had formed WBM-JMK Development LLC in January 2005, defendants filed with the New York Secretary of State a Certificate of Assumed Name for WBM-JMK Development LLC on June 15, 2005 ("the Certificate of Assumed Name"). Any use of an assumed name by a limited liability company must comply with the mandates of N.Y. Limited Liability Company Law, § 204(a) and N.Y. General Business Law §130.[8]

The Certificate of Assumed Name was signed on June 8, 2005 (after the May 31, 2005 Agreement had been signed) by Nelson Li as "Manager" of WBM/JMK Development LLC. The Certificate of Assumed Name falsely and fraudulently represented that the alias "WBM International Development" would be used only subsequent to the filing (6/15/05) and in New York County only, although the Air China Project was to take place in Nassau County. The Certificate of Assumed Name represented that WBM/JMK Development LLC had its principal place of business at an address which was in fact the residential address of attorney Stephen A.

---

[7] Defendants never had the legal right to use the "WBM Development LLC" name. That name belonged to a New York limited liability company formed on September 23, 1996 by New York attorney Jules E. Levy, Esq., which is and was totally unrelated to the parties herein and to the Air China Project.

[8] It is a crime to fail to comply with these requirements. Here, in direct contravention of these statutory requirements: (a) no filing occurred until June 15, 2005, after the oral and written representations (including the May 2005 "Agreement") and after the collection of $1 million; (b) there was no posting anywhere of any assumed name certificate; and (c) there was no filing for Nassau County, where the Project was based.

Long. The Certificate of Assumed Name failed to state that defendants had used and would continue using the alias "WBM International Development LLC"; indeed, use of such suffix was expressly prohibited by the Secretary of State. By so doing, defendants thereby continued to deceive plaintiff into believing that a valid subsidiary of William B. May was behind the Air China Project.

By letter dated September 29, 2005, defendants responded to plaintiff's request for an accounting by providing an incomplete "WBM International Development LLC" document (using GMAC's address and phone and William B. May's email address) signed by "Managing Director" Nelson Li, which included purported payments to fictitious or inactive companies, a notable absence of invoices, invoice dates or other critical details, and clear indications of double payments and (subsequently discovered) payments to entities controlled by principals of WBM. [9]

Jay Kopf, through JMK Construction Group Ltd., was WBMID's coventurer on the Project. The May 2005 Agreement made no mention of any co-venturers. This concealment was fraudulent. It was only on April 30, 2005 that Jay Kopf, using "JMK Construction Group" as the general contractor, finally obtained any license to perform work on the Air China Project. No other defendant ever obtained or even applied for such license. Throughout the course of the parties' dealings, the work performed by defendants was substandard, shoddy, incomplete,

---

[9] The defendants' "accounting" records relating to the Project revealed payments to a defunct corporation (New Ha Ha Construction Inc.) and payments in excess of $1 million to companies (i.e., TCC Interiors, Ltd. and JMK Construction Group, Ltd.) owned and controlled by Jay Kopf. Defendants' "accounting" records in connection with the Project included incomplete checks; included no invoices; showed duplicate payments to defendants TCC Interiors, Ltd.; show what later proved to be defendants' conversion; and were faxed to plaintiff from "William B. May" on September 29, 2005, again creating the false and fraudulent impression that that company was behind the Project. According to the defendants' own "accounting" records, their alleged subcontractor ("New Generation Michael") entered into an agreement with "JMK Construction Group and WBM International Development" as general contractor. Other alleged subcontractors (i.e. "New Ha Ha Construction Inc. – which is a non-entity) signed lien waivers which (a) were notarized one month before the May 2005 Agreement (b) described their agreement with "tenant WBM International Development", and/or inexplicably indemnified "JMK and Owner." Plaintiff repeatedly has demanded of Nelson Li, George F. Donohue, John A. Varacchi, WBM and GMAC a proper accounting. To date, none has been provided.

unsatisfactory and not in compliance with the terms of the May 2005 Agreement. Throughout the parties' dealings, defendants repeatedly, willfully and materially misrepresented the facts again by falsely advising plaintiff that WBM International Development LLC was a professional U.S. construction company; and Nelson Li somehow was involved in all aspects of the Project.

On May 31, 2005, Jay Kopf signed an application for a building permit for the Air China Project to be submitted to the City of Long Beach, Department of Buildings. On the application, he listed the contractor as JMK Construction (not WBM International Development LLC, nor WBM-JMK Development LLC (d/b/a WBM) and included JMK Construction Ltd.'s address and phone number. The application (never amended) stated that the **total cost** for the Air China Project would be **$2,440,000**. (This was on the very same date that WBM International Development LLC as the purported "contractor", with George F. Donohue as "President", signed the May 2005 Agreement with plaintiff setting an all-inclusive Project cost of over $3,950,000.).

Only on September 27, 2005 did defendants finally disclose to plaintiff the existence of WBM-JMK International LLC (d/b/a WBM). In response, by letter dated November 3, 2005 addressed to George F. Donohue at the office of William B. May, 575 Madison Avenue, New York, NY, plaintiff asserted that the May 2005 Agreement was with WBMID and that "WBM-JMK International LLC" was not a party to the contract. Defendants never advised that they had secretly filed an Assumed Named Certificate for the company and that they were one and the same. Instead, they continued to fraudulently conceal that fact from plaintiff.

Although defendants, on September 13, 2004, submitted the Building Department permit application (no. 0096944) with the City of Long Beach to commence the Project, by January 6, 2005 the application still had not been approved because no defendant was actually licensed to perform general contracting services by the City as required. Defendants knew or should have known of this requirement and, in any event, were notified of their failure on or

about January 6, 2005, but still no license was obtained until <u>July 23, 2005</u>. Defendants also negligently allowed the Building Department permit for the Air China Project to lapse, unlawfully continuing to work without any permit in place. By allowing building permit for the Air China Project to lapse on July 22, 2006, defendants caused the issuance of Building Code Violations. Defendants did not even seek to reinstate or renew the expired permit from July 22, 2006 until October, 2006. Defendants Jay Kopf and JMK Construction Group Ltd., waited until November 8, 2006 to pay the $4,000 renewal fee and thereby renew with the City of Long Beach the long-expired permit for the Air China Project. That negligent failure resulted in a Building Code Violation (§ 7-34A) issued October 11, 2006 by the City of Long Beach. In other words, defendants unlawfully performed construction without the necessary permit in place from July 23, 2006 until November 8, 2006.[10]

It was only after violations were issued that defendants sought to renew the permit and demanded another $4,000 from plaintiff to do so (in contravention of the express terms of the May 2005 Agreement). Defendants at all times fraudulently made it appear to plaintiff that JMK Construction Group Ltd and TCC Interiors, Ltd. were arms length sub-contractors, when in fact they were owned and controlled by Jay Kopf, "the contractor" and principal in WBM ( and in fact the only individual even licensed by the City of Long Beach for this Project). Further, although the May 2005 Agreement expressly required the named contractor (non-entity "WBM International Development LLC") to provide liability insurance, defendants, even after due demand (including correspondence dated July 1, 2005), failed to do so.

---

[10] The defendants also violated numerous provisions of the City of Long Beach Code of Ordinances, including (a) *LICENSING*, Chapter 14, Article II §§ 14-31, 14-15, 14-24, 14-35, 14:38 (requiring a contractor to be licensed, rendering the absence of licensed work criminal and making a license nontransferable); (b) *BUILDING CODE*, Chapter 7, Article I §§ 7.6 and 7-38 (requiring all work be performed only by a licensed contractor and Chapter 7, Article II, Div 3 § 7.34 (requiring that a valid permit be in place).

On March 1, 2006, defendants through George F. Donohue promised that the Air China Project would be completed by August 31, 2006. It was and still is not. Instead, on March 9, 2006, defendants through George F. Donohue demanded yet more money and change orders. On October 4, 2006, George F. Donohue wrote to plaintiff and did so as "President" of "GMAC Real Estate International Group" at 505 8th Avenue, 8th Floor, New York, NY, stating that "[y]our Project is important to us..." The only thing that was "important" was to try to fleece more money from plaintiff. Further, Jay Kopf's general contractor's license (no. 2581/07) expired April 30, 2007 (yet he and the other defendants continued demanding payments) and the required Workers' Compensation coverage he obtained (policy EC007088) expired April 1, 2006 and the required general insurance (policy GLW782413-0/000) expired July 23, 2005. Thus, defendants unlawfully acted and were paid as contractors in the City of Long Beach without the required license and insurances.

By November 22, 2006, defendants had demanded $424,355 over and above the total price $3,950,000 they had set forth in the May 2005 Agreement. Each payment was made to non-entity "WBM International Development LLC" and then secretly deposited (without endorsement) by defendants. Defendants repeatedly were overpaid; as early January 2007, there had been overpayments in excess of $250,000.[11]

The defendants failed to complete the Project, with plumbing, electric and fire alarms never connected. Completion costs have exceeded $500,000, this after defendants were already paid at least $2 million more than the entire Project reasonably should have cost. As a

---

[11] Even as late as March 2007, at that point unlicensed JMK and Jay Kopf demanded a payment of $200,000, but still did not complete the Project. Defendants' fraud continues to date. By letter dated September 12, 2007 (but delivered two weeks later) George F. Donohue alleged that plaintiff somehow was guilty of "breech" (sic) of agreement with the non-entity "WBM International Development LLC" and demanded $329,411 "immediately". George F. Donohue made this demand on the letterhead of the non-entity, from the office of Christian M. Deutsch and GMAC and copied Nelson Li, John A. Varacchi and Jay Kopf. Thereafter, in December 2007, WBM-JMK, through Kopf and JMK Construction mailed and filed a bogus lien in that amount against the Property.

result of defendants' fraud and misconduct the Property remained unusable for more than three (3) years, and plaintiff has been forced to house its flight crew in hotels (at a cost of **more than $3 Million**) all while paying hundreds of thousands of dollars for security, taxes and utilities for the vacant Property. As a direct and proximate result of the negligence and fraud committed by defendants Jay Kopf, Nelson Li, George F. Donohue, John A. Varacchi, JMK Construction Group Ltd. and WBM-JMK, plaintiff also was forced to engage the services of counsel and of Craven Corporation, a construction manager and to pay Craven Corporation $136,055.46 and attorney Eliot Clauss $57,105.06, plus an additional $74,000 for utility charges and more than $103,000 for security services and $200,025 for architectural services (for a company recommended by George F. Donohue and Nelson Li).

## The First and Second Claims For Relief Under Rico Should Not Be Dismissed

### Sufficient Specificity

Defendants contend (Brief at pp. 7 and 12 – 13), with an ironic and complete absence of any specificity, detail or analysis, that "a careful review of the Complaint" simply lumps the defendants together and therefore is not sufficiently specific as to allegations of the predicate act of mail fraud.  To the contrary, dozens of specific instances of mail fraud are carefully itemized as to precise dates, addressors and content.  See e.g. Civil RICO Statement at pp. 5 – 27; 19 – 20.  Further, FRCP 9(b) is not a proper defense against a Civil RICO conspiracy claim pursuant to Section 1962(d) as pleaded in the Second Claim for Relief.  See Hecht v. Commerce Clearing House Inc., 877 F. 2d 21, 26 fn. 4 (2d Cir. 1990).  Additionally, because all the instances of mail fraud were in furtherance of one overall scheme to defraud Air China, the requirements of Rule 9(b) (which have in any event been met) should be relaxed as the scheme

itself has been particularized.  See M'Baye v. N.J. Sports Prod., Inc., No. 06 – CV-3439, 2007 WL 43 1881 at *7 (S.D.N.Y. Feb. 7, 2007).

Just as they have ignored the FRCP and the procedural posture of this case defendants have deliberately ignored the 47 page Complaint and 78 page Civil RICO Statement, as well as the entire Second Claim for Relief.  Even a cursory review of these documents reveals them to be adequately detailed.  While the defendants, based on their joint and several liability, indeed are "lumped together" for damages purposes[12], each of the allegations common to all claims for relief (Complaint ¶¶ 22 – 179) is particular as to dates and individuals.  Each defendant also is identified individually in the Civil RICO Statement at Section (B) thereof.  Further, as set forth in the accompanying affidavit, the supporting documents have been provided to defendants pursuant to FRCP 26 and 34.  There is no basis for the specificity challenge.

### Pattern of Racketeering Activity

Defendants' next challenge (Brief at pages 8 – 12) concerns the duration of their pattern of racketeering activity.  Defendants claim that they have conducted "a fair reading" of the Complaint (Id. at page 11) and contend they cannot tell when the "predicates" began and ended.  Once again, this claim is belied by the plain language of the pleadings, alleging that the scheme began in June 2003 and is ongoing and continuing to date.  (Complaint ¶¶ 1, 4, 23 and 130; Civil RICO Statement, Section 2, pages 58 - 61).  This extended period of time clearly is sufficient to satisfy the pattern requirement.  See, e.g., United States Fire Ins. Co. v. United Limousine Service, Inc., 303 F. Supp. 2d 432 (S.D.N.Y. 2004) (also cited by movants).

---

[12] Joint and several liability is properly pleaded.  Civil RICO Statement, page 33; Complaint, ¶¶ 20, 138,140, 141, 170, 181, 190 and 194.  Even GMAC was involved in the fraudulent billing.  (Complaint ¶¶ 113 and 153).  Each defendant's participation in the scheme is sufficient to impose RICO liability.  See, e.g., Azrielli v. Cohen Law Offices, 21 F.3d 512 (2d Cir. 1994) (merely permitting name use on bogus contract and showing up for fraudulent property sale closing deemed sufficient).

### Distinction Between Defendants and the Enterprise

Defendants' next demonstrably bogus claim is that Air China's RICO allegations make no distinction between defendants and the RICO enterprise.   (Brief at pages 17 and 18).  A simple review of the Civil RICO Statement (Sections (c) 2 and 5; pages 32 - 43 and Section (9)) defeats this contention.  See also Complaint ¶¶ 180, 182 and 185 (describing RICO enterprise as comprised of "defendants and others").

### Air China Has Standing to Pursue Its RICO Claims

Defendants next contend (Brief at pages 18 and 19) that Air China somehow lacks standing to pursue its RICO claims due to an absence of direct/proximate cause between the RICO activity and its damages.  Here, again, the Complaint carefully and thoroughly pleads the necessary causation -- the reasonable and detrimental reliance – regarding the mail fraud at issue. (Complaint ¶¶ 23 – 25, 31, 51, 81, 87, 147 – 148, 173, 190 and 194; Civil RICO Statement, pages 33 and 61-62).  Here, again, defendants have chosen simply to ignore the Complaint.

## The Third Claim For Relief For Breach Of Fiduciary Duty Should Not Be Dismissed

Defendants assert, as if ultimate triers of fact, that the parties' relationship "is defined pursuant to an express contract . . . . "  (Brief at page 20).  Here, defendants once again ignore the essence of this case – that Air China was defrauded into entering into that very document which is voidable on account of that fraud.

Further, all elements of fiduciary breach were properly pleaded (Complaint ¶¶ 196 -198) and in fact are supported by the document attached to the Jay Kopf Affidavit, providing at Section 5.3 thereof that a single-purpose, segregated account was to be established with no comingling of any kind permitted.  Despite this prohibition, the general ledger produced

by defendants (initially with a notable absence of checks or other back-up) proves that such comingling did take place. See Catafago Aff., Exhibit "13".

The "contractor" label given to WBM in the May 2005 Agreement does not create immunity from a claim for breach of fiduciary duty. See, e.g., El-Khoury v. Karasik, 265 A.D.2d 372, 373-74 (2d Dept 1999). Under New York law, a fiduciary capacity is created when, as here, money is handled for the benefit of another in a relation implying confidence, trust and good faith. United States v. Chestman, 947 F. 2d 551, 568 – 69; Dopp v. Teachers Ins. and Annuity Assn'n. of Am., 1993 WL 404676, at *5 (S.D. N.Y. 1993); Westwoods Aviation LLC v. Atlantic Aviation Flight Services Inc., 2007 WL 2454115 (S.D.N.Y. 2007). See also Regency Foundation v. Robson, 14 Misc. 3d 1209 A, 836 N.Y.S. 2d 489 (Sup. Ct. N.Y. 2006).

## The Fourth Claim For Relief For Conversion Should Not Be Dismissed

Defendants' challenge to the conversion claim is that it somehow is redundant to a claim for breach of contract. (Brief at pages 22 – 23). Again, defendants ignore the essence of the Complaint[13], vigorously attacking the validity and enforceability of the May 2005 Agreement as having been procured by fraud; ignore that a breach of contract claim is not asserted; and ignore that all but one of the defendants were not parties to any alleged contract (and that one did not even use a legally permissible name on the May 2005 Agreement). This claim also should be sustained as having been properly pleaded. (See Complaint ¶¶ 64, 150, 200 – 203); Revankar v. Tzabar, 16 Misc. 3d 1127A, 847 N.Y.S.2d 904 (Sup. Ct. Kings Co. 2007).

---

[13] Curiously, defendants insist that the Court should look at the essence [Brief, p. 20, citing Sears Roebuck & Co. v. Enco, 43 N.Y. 2d 389 (1977), which actually was overruled by statute CPLR 214 (2); Ruffolo v. Garabin &U Sher, P.C., 239 A.D. 2d 8, 668 NYS 2d 169 (1st Dept 1998)], but then repeatedly do otherwise.

## The Fifth Claim For Relief For Unjust Enrichment Should Not Be Dismissed

Defendants assert that no claim for unjust enrichment can be sustained because there exists between the parties "a valid, enforceable contract." (Brief at page 23). Again, this is the position of the defendants; it is not the position of Air China. These repeated assertions by defendants, presuming somehow as a matter of law the validity and enforceability of the contested document, should be rejected at this time. Here, defendants rely (Brief at p. 23) on a case in which Judge Baer <u>denied</u> <u>summary</u> <u>judgment</u> in connection with unjust enrichment claims. <u>See</u> <u>Goll</u> <u>v. First Tennessee Capital Markets</u>, 2006 U.S. District Lexis. (S.D.N.Y. 8/1/06, J. Baer).

Where, as here, a contract is to be voided as having been induced by fraud, a recovery in unjust enrichment <u>is</u> appropriate. <u>Taylor & Jennings Inc.</u> <u>v. Bettino Bros.</u> <u>Construction Company, Inc.</u>, 106 A.D. 2d 779, 483 N.Y.S. 2d 813 (2 (3d Dept. 1984).

## The Sixth and Seventh Claims For Relief For Negligence and Negligent Misrepresentation Should Not Be Dismissed

Again, defendants attack these claims because a party cannot "simultaneously seek contractual relief and, at the same time, sue for negligence or negligent misrepresentation…" (Brief at p. 24). Again, in attacking these properly pleaded claims (Complaint ¶¶ 98, 152, 210 – 213; 216 – 220), defendants ignore the fact that no contract claim is being asserted (which in any event still would not be duplicative of the claims against nine of the ten defendants, as they were not party to any purported agreement).

Ironically, defendants (Brief at page 23) rely upon <u>Calcutti</u> <u>v. SBU, Inc.</u>, 223 F. Supp. 2d 517 (S.D.N.Y. 2002), a case in which this Court recognized the legitimacy of

negligence claims "if the defendant fraudulently induced the plaintiff to enter into the contract...." Id. (citing New York Univer. v. Cont'l Ins. Co., 87 N.Y.2d 308 (1995).

## The Eighth Claim For Relief For Fraud in the Inducement Should Not Be Dismissed

According to the fiction that is defendants' brief, the Eighth Claim is "essentially a claim" that false statements were made regarding their "intent to fulfill their contractual obligations." (Brief at page 25).

Here, once again, defendants deliberately or otherwise miss the point entirely. The misrepresentations at issue (a) were as to present facts; and (b) concerned defendants' ability and resources (not intention) to perform the renovations. They therefore are actionable as fraud. See Bridgestone/Firestone Inc. v. Recovery Credit Svs. Inc., 98 F. 3d 13. 20 (2d Cir. 1996) (collateral/extraneous misrepresentation may support fraud claim even if arising out of the same transaction as a contract breach claim); Custom Clothier, Ltd. v. Mohan's Custom Tailor, Inc., No. 96 Civ. 6320, 1997 WL 370595 at *6 (S.DN.Y. July 1, 1997); Gulf Coast Development Group, LLC v. Lebor, 2003 WL 22871914 (S.D.N.Y., Dec. 4, 2003).

Where, as here, (a) no contract claim is asserted; (b) all (but one) of the movants are not party to any alleged agreement; and (c) the contested agreement has a damage "cap" (See Kopf Exhibit "A" at Sections 8.3 and 10.4), then the bar to otherwise duplicative fraud claims in contract disputes has no applicability. See, e.g., VTech Holdings Limited v. Lucent Technologies Inc., 172 F. Supp. 2d 435 (S.D.N.Y. 2001); Deerfield Communications Corp. v. Chesebrough - Ponds Inc., 68 N.Y. 2d 954 (1986).

The violation of the duty to not misrepresent present existing facts is enough to sustain a fraud claim even in the presence of a contract. See Pfizer, Inc. v. Stryker Corp., 2003 WL 21660339 (S.D.N.Y. July 15, 2003); Concord Financial Corp. v. Value Line, Inc., 2004

WL 1687205 (S.D.N.Y. July 28, 2004); Great Earth Int'l Franchising Corp. v. Milks Dev., 311 F. Supp. 2d 419, 427-29 (S.D. N.Y. 2004); Solutia, Inc. v. FMC Corporation, 385 F. Supp. 2d 324 (S.D.N.Y. 2005).

Fraudulent inducement indeed is an exception to the general rule that no fraud claim may lie for breach of a contract 60 A N.Y. Jur. 2d, Fraud and Deceit §7; Axa Versicherun, AG v. New Hampsire Insurance Company, 2998 WL 1849312 (S.D.N.Y. April 22, 2008).

In this case, the "existing agreement" defendants focus upon (to the exclusion of all else) is "relevant only insofar as its existence [is proof] of [plaintiffs'] detrimental reliance on the misrepresentations." The Topps Company Inc. v. Cadbury Stani S.A.I.C., 380 F. Supp. 2d 250 (S.D. N.Y. 2005) (rejecting claim that fraudulent inducement claims intrinsically arose from subsequent contract); Complaint herein at ¶¶ 48, 51, 127 and 128.

Unlike the situation in DynCorp. v. GTE Corp., 215 F. Supp. 2d 308 (S.D.N.Y. 2002) (Defendants' Brief at p. 25), the May 2005 Agreement does not contain specific disclaimers directly at odds with the representations made prior to the document which induced Air China to sign the document. Indeed, no disclaimer of any sort and no merger clause appears in the contested document. Defendants herein thus cannot claim, as they did in DynCorp, that the reliance on all their earlier (and subsequent) misrepresentations were unreasonable as a matter of law. See also Solutia Inc. v. FMC Corp., 385 F. Supp. 2d 324 (S.D.N.Y. 2005) (cited in defendants' Brief at p. 25) (sustaining fraud claim even in the face of specific contractual disclaimer).

The fraud claim herein should stand as it concerns the resources which defendants claimed to possess in order to achieve the construction project – not their intent or failure to do so. See Regal Custom Clothiers, Ltd. v. Mohan's Custom Tailors, Inc., 1997 WL 370595 (S.D.N.Y. July 1, 1997).

## The Ninth Claim For Relief For an Accounting
## Should Not Be Dismissed

The defendants challenge this claim because of their view that no fiduciary or trust relationship existed. (Brief at pages 26 – 27). Again, however, as set forth in the Kopf Affidavit, Exhibit "A" Section 5.3 Air China's funds were to be (a) handled and (b) accounted for in an escrow type account.[14] Defendants did none of these things. (See Catafago Aff., Exhibit "13"). The resultant breach of fiduciary duty and accounting claims are properly pleaded (Complaint ¶¶ 233 – 239; 196 – 198) and should be sustained. Defendants' reliance (Brief at p. 26) on Asian Vegetable Research and Development Center v. Institute of Intern. Education, 944 F. Supp. 1169 (S.D.N.Y. 1996) is entirely misplaced; there the agreement at issue specifically disclaimed the creation of any fiduciary obligation.

## The Tenth Claim For Relief Under New York General
## Business Law §349 Should Not Be Dismissed

Accordingly to defendants, Air China somehow lacks standing to pursue its Section 349 claims because it is not a "consumer." (Brief at page 27).

Here, defendants ignore not only the detailed Complaint allegations regarding their fraud on the general public [Complaint, ¶¶ 1, 8, 30, 47, 122, 165 – 167, 169, 174 – 177; Civil RICO Statement at page 70, Section (J], but the law as well.

---

[14] "Segregation of funds: Contractor agrees to establish and utilize a separate account for the receipt and disbursement of all payments received or paid under the terms of this agreement. Contractor agrees to use all funds paid by Owner solely for payment of the costs of the Work hereunder, including reasonable periodic payments to the Contractor for its services hereunder, and further agrees not to commingle the funds paid by Owner to Contractors with any other funds of Contractor or any other person, and agrees not to spend or disburse any funds received from Owner for any purpose other than completion of the Work. At least five days before the initial down payment is due, Contractor will provide Owner in writing…with the account number, account name and name of the bank or other financial institution at which Contractor will retain funds paid hereunder, as well as wire transfer instructions to such account. Contractor also agrees to provide Owner copies of all account statements and information no more than one time monthly while the Work is ongoing, if and when requested by Owner in writing."

Corporations <u>do</u> have standing to bring Section 349 claims where the public is affected. <u>See</u> e.g., <u>Securitron Magnalock Corp. v. Schnabolk</u>, 65 F. 3d 256, 264 (2d Cir. 1995); <u>Verizon Directories Corp. v. Yellowbook USA Inc.</u>, 338 F. Supp. 2d 422 (E.D. N.Y. 2004); <u>Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, NA</u>, 85 N.Y. 2d 20, 623 N.Y.S. 2d 529, 647 N.E. 2d 741 (1995). The critical issue is whether the matter affects the public interest or causes consumer harm, not whether the suit is brought by a business. <u>See</u> <u>New York v. Fedman</u>, 210 F. Supp. 294, 301 (S.D.N.Y. 2002) (statute applies to virtually all economic activity).

Here, as alleged in the Complaint, the fraud on the public (in violation of a federal court consent injunction) is ongoing. The Section 349 claim should be stand.

## CONCLUSION

For these reasons Air China respectfully urges the Court to summarily reject consideration of the moving Affidavits and Exhibits and to deny the motion in its entirety. In the event the Court considers the evidence submitted by movants, Air China requests notice that the motion will be treated as an FRCP 56 motion and for an opportunity, in accordance with FRCP 56(f), to oppose it as such after completion of depositions. In the unlikely event any part of the motion is granted, Air China respectfully requests leave to re-plead its Complaint pursuant to FRCP 15. <u>See</u> <u>Cortec v. Sum Holding</u>, 949 F. 2d 42, 48 (2d Cir. 1991).

Dated: New York, New York
      August 4, 2008

                               Respectfully yours,

                               *Jacques Catafago*

                               JACQUES CATAFAGO (7894)
                               THE CATAFAGO LAW FIRM, P.C.
                               Attorneys for Plaintiff
                               AIR CHINA LIMITED
                               The Empire State Building
                               350 Fifth Avenue – Suite 4810
                               New York, NY 10118