UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AIR CHINA LIMITED,

No. 07 Civ. 11128 (LTS)(DFE)

                             Plaintiff,

            -against-

NELSON LI (a/k/a SHENG LI), JOHN A. VARACCHI
(a/k/a JOHN A. DAVIS), GEORGE F. DONOHUE,
JAY KOPF (a/k/a JACOB M. KOPF)
CHRISTIAN DEUTSCH,
WBM-JMK DEVELOPMENT LLC (d/b/a WBM
INTERNATIONAL DEVELOPMENT),
JMK CONSTRUCTION GROUP LTD.,
TCC INTERIORS, LTD.,
GMAC REAL ESTATE LLC,
GMAC REAL ESTATE IPG NEW YORK,

                           Defendants.

LAURA TAYLOR SWAIN, DISTRICT JUDGE:

## MEMORANDUM OPINION AND ORDER

       In this action arising out of an alleged ongoing fraudulent scheme, Plaintiff Air

China Limited ("Air China") asserts statutory claims for violations of the Racketeer Influenced

Corrupt Organization Act ("RICO"), 18 U.S.C. §§ 1961-1968, and New York General Business

Law § 349.  Plaintiff also asserts New York state common law claims for breach of fiduciary duty,

conversion, unjust enrichment, negligence, negligent misrepresentation, fraud in the inducement and

deceit, and an accounting.  The Court has subject matter jurisdiction of Plaintiff's RICO claims

pursuant to 28 U.S.C. § 1331 and of Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

Defendants Nelson Li ("Li"), John A. Varacchi ("Varacchi"), George F. Donohue ("Donohue"), Jay

Kopf ("Kopf"), Christian M. Deutsch ("Deutsch"), WBM-JMK Development LLC ("WBM-JMK"),

JMK Construction Group Ltd. ("JMK Construction"), TCC Interiors, Ltd. ("TCC"), GMAC Real Estate LLC ("GMAC") and GMAC Real Estate IPG New York ("GMAC IPG") move for judgment on the pleadings and dismissal of the Complaint pursuant to Federal Rules of Civil Procedure 9(b) and 12(c).[1]  The Court has considered thoroughly the Plaintiff's Complaint and Civil RICO Statement (collectively, "Pleadings") as well as Defendants' Motion to Dismiss, Plaintiff's Opposition to the Motion to Dismiss, and Defendants' Reply.  For the following reasons, Defendants' motion is denied in part and granted in part.

BACKGROUND

The following facts, alleged in Plaintiff's Pleadings, are taken as true for the purposes of this motion to dismiss.  See Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004).

In early 2003, Plaintiff, an "international public company" that provides air passenger service, air cargo service, and airline related services, with a principal place of business in Beijing, China, decided to develop its property at 485 West Broadway, Long Beach, New York (the "Property"), in order to house its airline workers during their stays in New York (Compl. ¶¶ 5, 22).  To that end, Plaintiff requested that the William B. May Company ("William B. May"),[2] a long-standing participant in the New York real estate business community, submit a proposal for the

_____

[1]     Defendants' motion is denominated as one made pursuant to Rule 12(b)(6).  However, because they had filed their answer to Plaintiff's complaint before making the motion, the Court treats the motion as one for judgment on the pleadings pursuant to Rule 12(c).  Compare Fed. R. Civ. P. 12(b)(b) (2008) with Fed. R. Civ. P. 12(c) (2008).

[2]     Plaintiff alleges that the "William B. May Company" was incorporated in 1866 and employs more than 200 real estate professionals.  Other entities described herein whose name includes "William B. May" and suffixes other than "Company" allegedly are not affiliated with that entity.

renovation of Plaintiff's property (the "Air China Project") (Compl. ¶ 23).  Defendant George F. Donohue responded to Plaintiff's request in a letter written on William B. May Company letterhead and dated June 12, 2003 ("Initial Letter"), in which Donohue claimed to be "President" of William B. May and stated his intention of providing Plaintiff with a proposal (id.).[3]

In later correspondence, Defendants[4] used the name of an inactive corporation, William B. May International, Inc. ("WBMI"), which had been dissolved by the New York Secretary of State due to non-payment of franchise taxes (Compl. ¶ 24).  Defendants used the name in communications with Plaintiff in order to deceive Plaintiff into believing that Defendants were associated with William B. May  (id.).  Defendants Li, Donohue and Deutsch submitted a written proposal to provide management services to Plaintiff on June 26, 2003 ("June 2003 Proposal"), claiming that WBMI had been incorporated in 1866 and employed more than 200 real estate professionals, thereby providing the false appearance that WBMI (technically a non-entity) was William B. May  (id.).  The June 2003 Proposal represented that Deutsch, Donohue and Li were WBMI's Chief Executive Officer, President, and Managing Director, respectively (id.).

Li, Kopf, Varacchi and Donohue, on behalf of WBMI, also submitted a second proposal on June 26, 2003, the "Overhaul Plan," to provide contracting services to Plaintiff with

---

[3]     The submissions currently before the Court do not explain how or why Donohue responded to a request by Plaintiff that was intended for William B. May, an entity with which Donohue and the other defendants allegedly had no affiliation.  Nor has either party explained how, if Defendants had no association with William B. May, they managed to conduct a meeting with Plaintiff from William B. May's actual offices (Compl. ¶¶ 49, 89) and send facsimiles from William B. May's actual fax number (Compl. ¶ 95).  As the Court accepts Plaintiff's allegations as true for the purposes of resolving the instant motion, it need not concern itself with the proper resolution of these factual questions at this stage of the litigation.

[4]     Various allegations in Plaintiff's Pleadings refer to actions committed by "Defendants" without specifying the particular defendant or defendants allegedly responsible.  The Court echoes this practice only for the purposes of this background discussion.

respect to the Property.  The Overhaul Plain included a false representation that "WBMID," an entity which in fact did not exist, was a "wholly owned subsidiary of WBMI," and made false representations about WBMI in order to associate Defendants with William B. May (Compl. ¶¶ 25-26).  Donohue carried on his work from the offices of GMAC, a Delaware limited liability company controlled by Deutsch (Pl.'s Civil RICO Stmt. p. 3) with its principal place of business at 505 8th Avenue, New York, New York (Compl. ¶¶ 16, 30).  William B. May has never carried out business from that address nor has William B. May associated itself with GMAC.  GMAC lists Deutsch and Li among its sales associates, although neither is licensed by New York State Department of Licensing to sell real estate or to otherwise hold himself out as a sales agent (Compl. ¶¶ 16, 42).  Plaintiff asserts that GMAC has provided a base of operations for the alleged RICO enterprise, as Defendants have used GMAC's address and phone number in communications with Plaintiff.

Throughout 2004, Defendants continued to deceive Plaintiff into believing that they were associated with William B. May and that they would work on the Air China Project.  Li provided Plaintiff with a "February 2004 Professional Assessment Report" that repeated the false claims of association with William B. May and included additional falsehoods with respect to Defendants' qualifications (Compl. ¶ 38).  On March 4, 2005, Defendants submitted a formal bid for the Air China Project ("2005 Bid"), in which Defendants continued to use GMAC's contact information and identified themselves by the corporate name "WBM International Development LLC," which also was a non-entity (Compl. ¶ 42).  The 2005 Bid was supplemented by additional letters sent by Donohue in March 2005.

Plaintiff relied on Defendants' various false representations and executed a contract dated May 31, 2005 ("May 2005 Agreement"), by which Plaintiff agreed to pay "WBM International Development, LLC" nearly $4,000,000 for Defendants to provide "turn-key"

contracting services for the Air China Project, which was to be completed within eight months (Compl. ¶¶ 44-56).  Donohue signed the contract on behalf of Defendants.  The May 2005 Agreement included a payment schedule.  In June 2005, Plaintiff made its first two payments, totaling over $900,000, payable to the non-entity "WBM International Development, LLC" (Compl. ¶ 51).  Defendants subsequently formed a new entity, WBM-JMK Development LLC ("WBM-JMK"), and that entity filed a certificate of assumed name that enabled it to deposit Plaintiff's payments directed to non-entity WBM International Development, LLC.  The May 2005 Agreement provided that WBM International Development would perform all work as a general contractor. The provision was unlawful, as the non-entity was not licensed to perform such work.  In fact, Kopf was the only defendant licensed to perform contracting services in New York, and he obtained permits on behalf of Defendants to carry out the Air China Project through a New York corporation he controlled, Defendant JMK Construction (Compl. ¶¶ 55-76).  Defendants not only perpetrated their fraudulent scheme against Plaintiff, but they used the names of a non-existent entity in their filings with the New York State Department of Taxation and Finance (Compl. ¶ 78) and in their transactions with national banks (Pl.'s Civ. RICO Stmt. p. 14).

Throughout 2005 and 2006, Defendants held themselves out as "WBM International Development, LLC," represented to Plaintiffs that they were pursuing the Air China Project diligently but that numerous hurdles were delaying the project's completion, and demanded additional payments for a variety of reasons.  Plaintiff generally complied with the demands for payment.  These additional payments ultimately resulted in Plaintiff's payment of more money than originally contemplated in the May 2005 Agreement despite Defendants' failure to complete the project (Compl. ¶¶ 79-86, 133).  Many of the communications between the parties occurred through use of the mail (Pl.'s Civ. RICO Stmt. pp. 5-28).  Kopf directed a portion of the proceeds from

Plaintiff's payments to an entity he controlled that was purported to be a subcontractor, Defendant

TCC (Compl. ¶¶ 102-04).

        Plaintiff became suspicious of Defendants by, at the latest, July 2007, when Plaintiff

demanded an accounting from Defendants and threatened litigation (Compl. ¶¶ 131-36).

Defendants did not respond to Plaintiff's requests for explanations, and Plaintiff ordered Defendants

to stop all work on the project and terminated the relationship in August 2007 (Compl. ¶ 137).  At

that point Plaintiffs had paid Defendants over $2,000,000 above the price contemplated in the May

2005 Agreement, and hundreds of thousands of dollars of work remained necessary to complete the

project (Compl. ¶ 144).

## DISCUSSION

        A motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure

12(c) is determined under the same standard as a motion to dismiss pursuant to Federal Rule of

Civil Procedure 12(b)(6).  Shaw v. Rolex Watch U.S.A., Inc., 745 F. Supp. 982, 984 (S.D.N.Y.

1990).  To survive dismissal, the plaintiff must allege facts sufficient "to raise a right to relief above

the speculative level." ATSI Commc'ns., Inc. v. The Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir.

2007) (quoting Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007)).  The elements of

Plaintiff's RICO claim that are based on Defendants' alleged fraud are subject to the heightened

pleading standard of Federal Rule of Civil Procedure 9(b), which requires that "[i]n all averments of

fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."

Fed. R. Civ. P. 9(b).  The plaintiff must "(1) specify the statements that the plaintiff contends were

fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4)

explain why the statements were fraudulent." Stevelman v. Alias Research, Inc., 174 F.3d 79, 84

(2d Cir. 1999) (internal quotation marks and citation omitted).

                    Plaintiff's First RICO Claim: 18 U.S.C. section 1962(c)

            Plaintiff asserts a RICO claim pursuant to 18 U.S.C. § 1962(c), which makes it

unlawful "for any person employed or associated with any enterprise engaged in . . . interstate or

foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such

enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."  18

U.S.C.A. § 1962(c) (West 2000).  A "person" need not be a natural person, but rather may be any

"entity capable of holding a legal or beneficial interest in property." 18 U.S.C.A. § 1961(3) (West

2000).  To state a civil RICO claim under this provision, a plaintiff must allege injury resulting from

"defendant's (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."

Azrielli v. Cohen Law Offices, 21 F.3d 512, 520 (2d Cir. 1994) (internal quotation marks omitted).

"The focus of section 1962(c) is on the individual patterns of racketeering engaged in by a

defendant, rather than the collective activities of the members of the enterprise, which are

proscribed by section 1962(d)."  United States v. Persico, 832 F.2d 705, 714 (2d Cir. 1987).

 "A pattern of racketeering activity" requires at least two predicate acts of racketeering within ten

years.  18 U.S.C.A. § 1961(5) (West 2000).  Mail fraud and bank fraud are among the predicate acts

that constitute "racketeering activity."  18 U.S.C.A. § 1961(1) (West 2000).  In claims such as the

instant one in which the alleged predicate acts are frauds, "Rule 9(b) calls for the complaint to

specify the statements it claims are false or misleading, give the particulars as to the respect in

which plaintiffs contend the statements were fraudulent, state when and where the statements were

made, and identify those responsible for the statements."  Moore v. PaineWebber, Inc., 189 F.3d

165, 173 (2d Cir. 1999).

In their motion Defendants argue generally that Plaintiff "fails to adequately plead the predicate acts of mail and wire fraud; fails to establish a pattern of racketeering activity; and fails even to demonstrate its standing to assert such claims." (Def.'s Mem. Supp. Mot. Dis. 5.) However, Plaintiff's Pleadings identify over twenty instances of mail fraud that satisfy the pleading requirements of Rule 9(b). Three examples will suffice to illustrate the sufficiency of the Pleadings with regard to predicate acts.

Plaintiff alleges that the Initial Letter constituted the first act of mail fraud (Pl's Civ. RICO Stmt. p. 5). Plaintiff specifies the statements it contends were fraudulent (Donohue's claim to be President of William B. May Company); identifies the statement's speaker (Donohue); states when and where the statements were made (in the Initial Letter, dated June 12, 2003); and explains why the statements were fraudulent (because they fostered the illusion that Defendants were affiliated with William B. May). Plaintiff thus adequately pleads with specificity the first act of mail fraud as to defendant Donohue.

Plaintiff's pleading of the second alleged predicate act, the transmission through the mail of the June 2003 Proposal, similarly meets the heightened pleading standards of Rule 9(b). Plaintiff specifies the statements it contends were fraudulent (false information about the history of WBMI and the number of real estate professionals it employed); identifies the statement's speaker (the letter was signed by Donohue, as WBMI President); states the forum and date in which the statements were made (a letter dated June 26, 2003); and explains why the statements were fraudulent (e.g., WBMI was not affiliated with William B. May Company and did not have 137 years of experience) (Pl.'s Civ. RICO Stmt. pp. 5-6).

Plaintiff's pleading of the alleged fifth predicate act of mail fraud, the 2005 Bid, also satisfies Rule 9(b).  Plaintiff specifically alleges that the 2005 Bid was mailed on March 4, 2005, that Donohue signed it, and that the 2005 Bid falsely claimed that WBM International Development LLC was "established in 1866, [and] is the oldest real estate company in the United States" (Pl.'s Civ. RICO Stmt. p. 11-12).   Plaintiff explains that this statement was fraudulent because, among other things, WBM International Development LLC did not exist and was not associated with the William B. May Company established in 1866 (id.).  Accordingly, the Court concludes that Plaintiff has adequately pleaded the commission of predicate acts of racketeering by Donohue.  Plaintiff has similarly pleaded the commission of predicate acts of racketeering by Li (see Pl.'s Civ. RICO Stmt. pp. 5-26 (pleading with specificity four predicate acts of mail fraud committed by Li)) and Kopf (see Pl.'s Civ. RICO Stmt. pp. 6, 19, 27 (pleading with specificity three predicate acts of mail fraud committed by Kopf)).  Plaintiff has not, however, pleaded with specificity the commission of sufficient predicate acts of racketeering activity by defendants Deutsch, Varacchi, WBM-JMK, JMK Construction, TCC, GMAC and GMAC IPG.  Accordingly,  the motion for judgment on the pleadings is granted with respect to Plaintiff's claims under 18 U.S.C. 1962(c) against those defendants.

Plaintiff alleges that the "enterprise" whose affairs were conducted through the pattern of racketeering was an association in fact composed of the named defendants and others[5]; that all Defendants were associated with the enterprise and engaged in the particular course of fraudulent conduct alleged in the Complaint (Pl.s' Civ. RICO Stmt. p. 71); and that Defendants "work[ed] together to achieve their common goal" and their fraudulent conduct was "concerted"

---

[5]    "'[E]nterprise' includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  18 U.S.C.A. § 1961(4) (West 2000).

(Compl. ¶¶ 180-81).  The Court concludes that Plaintiff has adequately pleaded the fraudulent predicate acts of racketeering with respect to defendants Donohoue, Li and Kopf, as each has been specifically alleged to "conduct or participate, directly or indirectly, in the conduct of [the] enterprise's affairs through a pattern of racketeering activity."  18 U.S.C.A. § 1962(c) (West 2000).  See generally Pl.'s Civ. RICO Stmt.

Section 1962(c) also requires that, to establish a pattern of racketeering activity, a plaintiff must demonstrate that the defendants' predicate acts of racketeering are "related, and that they amount to or pose a threat of continued criminal activity."  H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 239 (1989).  There are two forms of continuity under RICO that may be shown in order to satisfy the "continued criminal activity" element: "open-ended continuity" or "closed-ended continuity."  Id. at 241.  In order to establish open-ended continuity, a plaintiff must show the existence of a threat of continuing criminal activity "extending indefinitely into the future."  Id. at 242.  The threat of continuing criminal activity must extend "beyond the period during which the predicate acts were performed."  Spool v. World Child Int'l Adoption Agency, 520 F.3d 178, 185 (2d Cir. 2008) (internal citations and quotation marks omitted).  "This threat is generally presumed when the enterprise's business is primarily or inherently unlawful," such as narcotics trafficking.  Id.  Where "the enterprise primarily conducts a legitimate business [] no presumption of continued threat arises," and thus Plaintiff must plead "that the predicate acts were the regular way of operating that business."[6]  Id. (internal quotation marks omitted).

Plaintiff has alleged over twenty instances of mail fraud in which Donohoe, Li and Kopf falsely represented themselves as associated with the William B. May Company in order to

---

[6]     The Spool court had "no difficulty concluding that the enterprise [at issue in that case] . . . [was] primarily legitimate given that . . . [it] managed over one thousand successful adoptions."  Spool, 520 F.3d at 185.

attract and maintain business. These allegations are sufficient to plead that fraudulent
misrepresentation constitutes the "regular way of operating business" for Donohoe, Li and Kopf,
and therefore the Court need not determine whether the enterprise primarily conducts a legitimate
business. The facts alleged by Plaintiff constitute open-ended continuity, and Plaintiff has
adequately alleged a pattern of racketeering activity.

   Finally, in order to establish standing under RICO, a plaintiff must allege injury "in
his business or property by the conduct constituting the [RICO] violation." Denney v. Deutsche
Bank AG, 443 F.3d 253, 266 (2d Cir. 2006). Donohue, Li and Kopfs' pattern of fraudulent activity
allegedly induced Plaintiff to enter into a contract, pursuant to which it has paid millions of dollars,
that was inadequately performed. Plaintiff has thus sufficiently alleged that it suffered injury by
reason of the RICO violation. Accordingly, Plaintiff has adequately stated a claim under section
1962(c) with respect to defendants Donohue, Li and Kopf, and Defendants' motion to dismiss is
denied with regard to Plaintiff's section 1962(c) claim against these three individual defendants.

   Plaintiff's Second RICO Claim: 18 U.S.C. section 1962(d)

   Plaintiff has also asserted a claim against Defendants under the conspiracy provision
of the RICO statute, 18 U.S.C. 1962(d). To state a civil RICO conspiracy claim, Plaintiff must
show that Defendants "agreed to commit the substantive RICO offense by agreeing to participate in
the racketeering acts related to the conspiracy, and that each knew the general nature of the [RICO]
conspiracy and that the conspiracy extend[ed] beyond his individual role." United States v.
Cervone, 907 F.2d 332, 344 (2nd Cir. 1990) (internal citations and quotations omitted). As "Rule
9(b) applies only to fraud or mistake, not to conspiracy," Hecht v. Commerce Clearing House Inc.,
897 F.2d 21, 26 n.4 (2d Cir. 1990), Plaintiff's pleading must merely satisfy the liberal pleading
standard of Federal Rule of Civil Procedure 8(a). Plaintiff alleges that, in furtherance of their

scheme to defraud Air China, defendant Donohue partnered with individual defendants Kopf,

Varacchi, Li, and Deutsch, that each knew of the general nature of the conspiracy, and that the

conspiracy extended beyond the individual's role (Compl. ¶¶ 25-30).[7]  Furthermore, the knowledge

of Kopf and Deutsch can be imputed to the corporate entities that they allegedly controlled and

utilized to further the conspiracy, defendants WBM-JMK, JMK Construction, TCC, GMAC, and

GMAC IPG.  See Baker v. Latham Sparrowbush Ass., 72 F.3d 246, 255 (2d Cir. 1995).  Thus

Plaintiff's RICO conspiracy claim against all defendants satisfies the liberal pleading requirements

of Rule 8(a), and Defendants' motion is denied with regard to this claim.

### Plaintiff's State Law Claims

The crux of the argument advanced by Defendants to support dismissal of all of

Plaintiff's state law claims is that there was a valid and enforceable contract between Plaintiff and

Defendants, and accordingly Plaintiff's claims should be limited to breach of contract.  A plaintiff's

claim for fraud is not redundant of a breach of contract claim, however, when the alleged fraud

relates to the defendant's inducement of the plaintiff to enter into the contract, rather than merely to

a representation made in the course of performance of the contract.  Bridgestone / Firestone Inc. v.

Recovery Credit Services, Inc., 98 F.3d 13, 20 (2d Cir. 1996).  Plaintiff alleges that defendants Li,

Donohue, Deutsch, Kopf, and Varacchi fraudulently represented themselves as associated with the

William B. May Company, and in reliance on this fraudulent representation Plaintiff entered into

the May 2005 Agreement.  Accordingly, Plaintiff is not limited to a breach of contract claim, and

---

[7]     Defendant Deutsch has submitted an affidavit in which he asserts, to the contrary,
that he had no involvement in the factual predicate of Plaintiff's complaint and
proffers that he has "no idea" why Plaintiff's counsel has not dismissed him from the
case (Deutsch Aff. ¶ 3).   However, "[b]ecause a judgment on the pleadings focuses
on the pleadings themselves, and not on matters outside of the pleadings such as
affidavits," Sears Petroleum & Transport Corp. v. Ice Ban America, Inc., 217 F.R.D.
305, 307 (N.D.N.Y. 2003), the Court will not consider the affidavit at this juncture.

the Court denies Defendants' motion to dismiss with respect to Plaintiff's eighth claim for relief,

common law fraud in the inducement and deceit, as to all defendants with the exception of WBM-

JMK, JMK Construction, TCC, GMAC, and GMAC IPG.[8]

Defendants' alleged fraudulent inducement of the contract, if proven, would render

the contract voidable.  See Continental Airlines v. Lelakis, 129 F.3d 113 (2d Cir. 1997).  Plaintiff

allegedly voided the contract once it became aware of the fraud (Compl. ¶ 137).  Defendants'

argument that Plaintiff's fourth (conversion), fifth (unjust enrichment), sixth (negligence) and

seventh (negligent misrepresentation) claims must be dismissed as duplicative of Plaintiff's breach

of contract claim fails in light of Plaintiff's allegation that there is not a valid and enforceable

contract.  Plaintiff has sufficiently pleaded that the contract was voided.  Plaintiff has sufficiently

pleaded the necessary elements of each of these causes of action with respect to all defendants, with

two exceptions: Plaintiff has not alleged that GMAC or GMAC IPG engaged in "the unauthorized

assumption and exercise of the right of ownership over goods belonging to [Plaintiff] to the

exclusion of [Plaintiff's] rights," and accordingly Plaintiff's conversion claims against these

defendants must be dismissed.  Durow v. General Motors Corp., No. 08 Civ. 085S, 2008 WL

1787736, at *3 (W.D.N.Y. Apr. 17, 2008) (citing Vigilant Ins. Co. v. Hous. Auth., 660 N.E. 2d

1121, 1126 (N.Y. 1995)).  Similarly, Plaintiff has not alleged that GMAC or GMAC IPG has been

enriched at Plaintiff's expense, and accordingly Plaintiff's unjust enrichment claims against these

defendants must be dismissed.  Briarpatch Ltd. v. Phoenix Pictures, Inc., 373 F.3d 296, 306 (2d Cir.

2004).  Defendants' motion is otherwise denied in its entirety with regard to these claims.

---

[8]    Plaintiff's Pleadings do not contain sufficient allegations to state a claim for common
law fraud in the inducement and deceit against these defendants.  Plaintiff does not
allege that it relied upon specific fraudulent statements in entering into the May 2005
Agreement that can be attributed to any of them.

Plaintiff's tenth claim for relief is asserted pursuant to New York General Business Law section 349, which proscribes "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus. § 349 (McKinney's 2004).  Defendants argue that this claim must be dismissed because Air China is not a "consumer."  However, in determining whether a plaintiff may assert a claim under this statute, the "critical question . . . is whether the matter affects the public interest in New York, not whether the suit is brought by a consumer."  New York v. Feldman, 210 F. Supp. 2d 294, 301 (S.D.N.Y. 2002) (citing  Securitron Magnalock Corp. v. Schnabolk, 65 F.3d 256, 264 (2d Cir. 1995)).  Plaintiff has alleged that Donohue, Li, Deutsch and GMAC use the GMAC website to defraud an unsuspecting public (Compl. ¶ 169).  Plaintiff has also alleged that defendant GMAC IPG fraudulently announced to the public in Real Estate Weekly that it had entered into a partnership with William B. May (Compl. ¶ 47).  Therefore the claim falls within the statute's concern for the public at large. Accordingly, Defendants' motion to dismiss this claim is denied with respect to defendants Donohue, Li, Deutsch, GMAC, and GMAC IPG, and granted with respect to defendants Kopf, Varacchi, WBM-JMK, JMK Construction and TCC.

Plaintiff's third claim for relief is for breach of fiduciary duty.  A fiduciary relationship requires "great confidence and trust on the one part and a high degree of good faith on the other part."  United States v. Chestman, 947 F.2d 551, 569 (2nd Cir. 1991) (internal citation omitted).  While Plaintiff alleges that it advanced funds to Defendants or their principals for the purpose of the Air China Project, the Pleadings make it clear that Plaintiffs did so in the manner of an ordinary business transaction.  "The arm's-length relationship of parties in a business transaction is, if anything, antithetical to the notion that either would owe a fiduciary relationship to the other." Dopp v. Teachers Ins. and Annuity Assn'n. of Am., No. 91 Civ. 1494, 1993 WL 404076, at *5

(S.D.N.Y. Oct. 1, 1993).  Accordingly, the Pleadings are insufficient to state a plausible factual

basis for the fiduciary breach claim, and Defendants' motion is granted as to that claim.  As

Plaintiff's ninth claim for relief, a claim for an accounting, depends upon the existence of a

fiduciary relationship, Malmsteem v. Berdon, LLP, 477 F. Supp. 2d 655, 668 (S.D.N.Y. 2007),

Defendants' motion is granted with respect to that claim as well.

## CONCLUSION

For the foregoing reasons, Plaintiff's first claim under RICO Section 1962(c) is

dismissed with respect to defendants Varacchi, Deutsch, WBM-JMK, JMK Construction, TCC,

GMAC, and GMAC IPG.  Plaintiff's third claim for breach of fiduciary duty and ninth claim for an

accounting are both dismissed.  Plaintiff's tenth claim for relief pursuant to New York General

Business Law section 349 is dismissed with respect to defendants Kopf, Varacchi, WBM-JMK,

JMK Construction and TCC.  Plaintiff's eighth claim for common law fraud in the inducement and

deceit is dismissed with respect to defendants WBM-JMK, JMK Construction, TCC, GMAC, and

GMAC IPG.  Plaintiff's fourth and fifth claims for conversion and unjust enrichment are dismissed

with respect to defendants GMAC and GMAC IPG.  Defendants' motion for judgment on the

pleadings is denied in all other respects.

Plaintiff has requested leave to replead any dismissed counts.  The application is

granted.  Plaintiff may file an amended complaint within 21 days of the date hereof.  In the absence

of such a timely filed amended pleading, all the claims for relief dismissed herein shall be deemed

dismissed with prejudice.  This case remains referred to Magistrate Judge Eaton for general pre-trial

management.  The final pre-trial conference is scheduled for December 4, 2009.  This Memorandum

Opinion and Order resolves docket entry no. 42.

      SO ORDERED.

Dated: New York, New York
      March 31, 2009

                                  LAURA TAYLOR SWAIN
                                  United States District Judge